UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEX GOLDMAN, Plaintiff, | : | 1:18-cv-03662-JFB-ARL |
| -v.- | : | |
| CATHERINE REDDINGTON, Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES....................iv

PRELIMINARY STATEMENT....................1

FACTUAL BACKGROUND....................3

ARGUMENT....................7

I. MR. GOLDMAN'S CAUSES OF ACTION FOR DEFAMATION AND TORTIOUS INTERFERENCE MEET THE PLEADING REQUIREMENTS....................7

II. MR. GOLDMAN HAS SUFFICIENTLY PLEADED A CAUSE OF ACTION FOR DEFAMATION AND DEFENDANT'S MOTION MUST BE DENIED....................8

A. Mr. Goldman Has Sufficiently Pleaded That Defendant's Statements Were False....................9

1. Defendant Neglects To Address The Pertinent Legal Standard For Pleading Falsity....................9

2. Defendant Perverts The Basis For Mr. Goldman's Assertion That Ms. Reddington Knowingly Made False Statements Concerning Mr. Goldman....................10

B. Defendant's Statements Concerning Mr. Goldman Are Not Substantially True....................12

1. Defendant Misapplies The Substantial Truth Defense By Blindly Relying On The Outcome Of The Title IX Investigation And The Subsequent Decision by Syracuse University To Expel Mr. Goldman....................13

C. Mr. Goldman Has Sufficiently Pleaded That Defendant's Statements Concerning Mr. Goldman Were Made With The Applicable Level Of Fault....15

1. The Gross Irresponsibility Standard Does Not Apply As Defendant's Statements Concerning Mr. Goldman Are Not A Matter Of Public Concern....................16

2. Even If The Standard Applies, Mr. Goldman Has Adequately Pleaded Gross Irresponsibility By Ms. Reddington....................18

D. All Of Ms. Reddington's Statements At Issue Constitute Actionable Defamation....................19

1. **Defendant's Defamatory Text Message To Dennis Kadric In May 2018 Referring To Mr. Goldman As A "Monster" Is Not A Matter Of Opinion**......20

2. **Defendant's Defamatory Facebook Post In The Reviews Section Of NJIT On June 6, 2018 Was "Of And Concerning" Mr. Goldman**......21

3. **Defendant Was Responsible For The Defamatory June 5, 2018 Facebook Message To Bohler**......24

**III. MR. GOLDMAN HAS SUFFICIENTLY PLEADED A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE AND DEFENDANT'S MOTION MUST BE DENIED**......24

**A. Mr. Goldman Has Sufficiently Alleged Facts Plausibly Supporting Defendant's Employment Of "Wrongful Means" As The Tortious Interference Claim Is Founded On A Viable Defamation Claim**......24

**B. Mr. Goldman Has Sufficiently Alleged Actual Injury Attributable To Defendant's Conduct**......25

**CONCLUSION**......28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004) .......... 7

*Carvel Corp. v. Noonan*,
350 F.3d 6 (2d Cir. 2003) .......... 24, 25

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 8, 10

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
38 N.Y.2d 196 (1975) .......... 15

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) .......... 13

*Doe v. Carry, et al.*,
Case No. BS163736 (Sup. Ct. CA, County of L.A. June 28, 2018).......... 14

*Doe v. HarperCollins Publishers*, LLC,
17-CV-3688, 2018 WL 1174394 (N.D. III. Mar. 6, 2018).......... 17

*Doe v. The University of Southern Mississippi, et al.*,
Case No. 18-CV-153-KS-MTP (S.D.MS. September 26, 2018).......... 14

*El Jamal v. Weil*,
116 A.D.3d 732 (2d Dept. 2014).......... 8

*Greene v. Paramount Pictures Corp.*,
138 F. Supp. 3d 226 (E.D.N.Y. 2015) .......... 15, 21, 22

*Gym Door Repairs, Inc. v. Young*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016) .......... 25

*H.J., Inc. v. Northwestern Bell Tel. Co.*,
492 U.S. 229 (1989) .......... 8

*Jacobus v. Trump*,
55 Misc. 3d 470 (Sup. Ct. New York County 2017) .......................................................... 20

*Lopez v. Univision Commc'ns, Inc.*,
45 F.Supp.2d 348 (S.D.N.Y.1999) ........................................................................... 15

*Mott v. Anheuser-Busch, Inc.*,
910 F. Supp. 868 (N.D.N.Y. 1995)........................................................................... 18

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir.1998) ........................................................................................ 7

*Pollnow v. Poughkeepsie Newspapers, Inc.*,
107 A.D.2d 10 (1985)............................................................................. 16, 17, 18

*Siben v. Am. Airlines, Inc.*,
913 F. Supp. 271 (S.D.N.Y. 1996) .......................................................................... 8

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ................................................................................................ 7

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,
864 F.3d 236 (2d Cir. 2017) ................................................................................ 9,12

*Texas 1845 LLC v. Wu Air Corp.*,
No. 11-CV-1825 JS ETB, 2012 WL 382828 (E.D.N.Y. Feb. 6, 2012)............................... 22

*Weiner v. Doubleday & Co., Inc.*,
74 N.Y.2d 586 (1989).............................................................................................. 18

**Rules**

Federal Rule of Civil Procedure 12(b)(6)...........................................................*passim*

Plaintiff Alex Goldman ("Plaintiff" or "Mr. Goldman'), by and through his undersigned counsel, Gottlieb & Janey LLP, respectfully submits this memorandum of law in opposition to Defendant Catherine Reddington's ("Defendant" or "Ms. Reddington") motion to dismiss the complaint pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. For the reasons set forth herein, the Defendant's motion (the "Motion to Dismiss") should be denied because there is no basis under the law to dismiss Mr. Goldman's well-pleaded complaint (the "Complaint").

## PRELIMINARY STATEMENT

Ms. Reddington is requesting this Court—by way of a Rule 12(b)(6) motion in which the Court must accept as true the factual allegations set for forth in the Complaint and draw all reasonable inferences in favor of Mr. Goldman—find that Mr. Goldman's Complaint, as a matter of law, should be dismissed. Simply, under the situation here, Defendant's position is absurd. Ms. Reddington's argument is predicated on three propositions, which, as described herein, are distortions of the law and twist the allegations in the Complaint. In an effort to suggest that Mr. Goldman's cause of action for defamation does not plausibly plead facts demonstrating the element of falsity, Ms. Reddington falsely states the Complaint is solely predicated on the following factual allegations: (1) Ms. Reddington's lack of memory as to what occurred between herself and Mr. Goldman; (2) the Onondaga County District Attorney's ("OCDA") refusal to bring criminal charges against Mr. Goldman; and (3) Syracuse University's decision to expel Mr. Goldman following a Title IX investigation. However, reducing the Complaint to a scenario where Mr. Goldman is only and merely making these allegations—as the essential factual matter—is misleading and wrong.

To be clear, the gravamen of Mr. Goldman's allegations, as pleaded in the Complaint, establish that Ms. Reddington's statements were "knowingly false" based on the following: **(1) on April 23, 2017, Ms. Reddington awoke in Mr. Goldman's room fully clothed (*See* Compl. ¶ 5, ECF No.1); (2) Ms. Reddington could not recall what occurred the night before and Ms. Reddington told numerous people, including her friends and law enforcement, that she could not recall (*See* Compl. ¶¶ 5,7); (3) Ms. Reddington went to the hospital 26 hours later and a Sexual Assault Nurse Examination ("SANE") concluded that there was no evidence to corroborate a sexual assault (*See* Compl. ¶ 5) (while bruising was found on Ms. Reddington's buttock and hip, she admits these injuries occurred the day prior to the incident with Mr. Goldman) (*See* Compl. Ex. A, p. 2); and (4) after thoroughly investigating Ms. Reddington's allegations against Mr. Goldman, the OCDA's report unequivocally stated that not only was there no evidence of a sexual assault but no evidence of any "*sexual conduct*" whatsoever between Mr. Goldman and Ms. Reddington. (*See* Compl. Ex. A, p. 5).** These are the factual matters as alleged by Mr. Goldman to point out that Ms. Reddington's statements were knowingly false when made.

In fact, despite Ms. Reddington's claim otherwise in her motion, Mr. Goldman's defamation claim, as pleaded in the Complaint, is **clearly** not predicated solely on the OCDA's refusal to bring charges against him but rather OCDA's conclusion that there was no sexual encounter. Ms. Reddington's attempt to pervert and recast the facts that are in dispute only accentuates her inability to meet her burden as the moving party.

More particularly, distortions and contortions rest in Ms. Reddington's argument regarding substantial truth. In other words, Ms. Reddington offers to this Court that the Complaint should be dismissed as a matter of law because she contends the "substantial truth"

defeats the Complaint at the outset. However, Ms. Reddington's statements about Mr. Goldman are not protected by the substantial truth defense as the disparity between the pleaded truth that Mr. Goldman did not rape Ms. Reddington, on the one hand, and Ms. Reddington's much later proclamations that Mr. Goldman raped her, on the other hand, is so great that the substantial truth defense simply does not apply in this case. Ms. Reddington's reliance on the substantial truth defense is undermined by the case law.

Finally, Ms. Reddington tries to use the Title IX investigation and the fact that Mr. Goldman was expelled to support her case for dismissal. As discussed herein, this argument is a red herring for the Rule 12(b)(6) argument. If nothing else, the weight to be applied to the Title IX investigation is an argument as to the merits and not an issue to be resolved at the pleading stage. This factual issue should be resolved by the trier of fact as there is a substantive question about the integrity of the Title IX investigation and report. As this Court is well aware, courts throughout the country, including most recently the Sixth Circuit, have found Title IX investigations to be unconstitutional and in violation of the accused's due process rights when the accused is denied the right to cross-examine the accuser, as was the case here. Thus, Ms. Reddington's reliance on outcome of the Title IX investigation is not dispositive of the element of falsity—or any other element of defamation—as a matter of law.

As Mr. Goldman's Complaint is well-supported by plausible facts, any factual dispute as to whether Mr. Goldman raped Ms. Reddington simply has no basis in a Rule 12(b)(6) motion. The Complaint, as pleaded, establishes all the elements for a defamation cause of action.

## FACTUAL BACKGROUND

Mr. Goldman respectfully refers the Court to, and incorporates herein, the Complaint filed on June 25, 2018 for a full and complete factual background of the case. However, for the

purposes of the instant opposition to the Motion to Dismiss, Mr. Goldman highlights the following facts:

In April 2017, Defendant and Mr. Goldman were students at Syracuse University ("Syracuse"). (*See* Compl. ¶ 5). On April 22, 2017, Defendant attended a party at the Delta Kappa Epsilon ("DKE") fraternity house. (*See* Compl. ¶ 5). Mr. Goldman was a member of DKE, resided in a room in the fraternity house, and participated at the party. (*See* Compl. ¶ 5). The party was scheduled to begin at approximately 11:00 p.m. (*See* Compl. ¶ 28). Ms. Reddington and other women from Kappa Kappa Gamma sorority arrived a few hours early to "pregame" in a room on the second floor of the DKE fraternity house. (*See* Compl. ¶ 28). Both Ms. Reddington and Mr. Goldman consumed alcohol during the pregame. (*See* Compl. ¶ 28).

After participating at the "pregame" for approximately two hours on the second floor, both Mr. Goldman and Defendant went downstairs to the party where alcohol was also being served. (*See* Compl. ¶ 29). Surveillance video from the DKE house shows that at approximately 12:30 a.m. on April 23, 2017, Ms. Reddington followed Mr. Goldman to his room. (*See* Compl. ¶ 29). Surveillance video further shows Ms. Reddington a few feet behind Mr. Goldman and entering his room. (*See* Compl. ¶ 29).

Ms. Reddington spent the night in Mr. Goldman's room. Both Mr. Goldman and Ms. Reddington recall waking in Mr. Goldman's room on the morning of April 23, 2017 fully clothed. (*See* Compl. ¶ 30). Neither Ms. Reddington nor Mr. Goldman recalled what occurred the night before. (*See* Compl. Ex. A). The room contained no evidence that the couple engaged in sexual intercourse: there was no condom or condom wrapper in Mr. Goldman's room; there were no fluids of any kind on Mr. Goldman's bed or sheets; and there was no vaginal fluid on his penis. (Goldman Aff. ECF No. 6). Nonetheless, on April 24, 2017—26 hours after leaving Mr.

Goldman's fraternity house—Defendant went to Crouse Hospital to complain of a possible sexual assault. (*See* Compl. ¶ 6; Compl. Ex. A). At that time, a SANE was conducted, and during the examination Ms. Reddington stated: "I think I might have been drugged because I don't remember much." (*See* Compl. ¶ 6; Compl. Ex. A). The SANE produced no evidence to corroborate a sexual assault; no evidence of any intoxicants in her bloodstream other than caffeine and marijuana; and DNA analysis of Ms. Reddington's vagina was negative for male DNA. (*See* Compl. ¶ 6; Compl. Ex. A).

While bruising was found on Ms. Reddington's buttock and hip, she later admitted these injuries occurred the day prior to the incident with Mr. Goldman. (*See* Compl. Ex. A). Ms. Reddington stated to numerous individuals that she did not recall the events of the night of April 22, 2017 and the morning of April 23, 2017. (*See* Compl. ¶ 7). This included statements to nurses at Crouse Hospital during the SANE; her friends in the days following the alleged occurrence, as reflected in witness statements; Detective Michael Bates ("Detective Bates") from the Syracuse Police Department ("SPD"); Assistant District Attorney Maureen Barry ("ADA Barry") of the OCDA; and Syracuse University Title IX Investigator Bernerd Jacobson ("Investigator Jacobson"). (*See* Compl. ¶ 7; Compl. Ex. A). To all these parties Ms. Reddington stated, in sum and substance, that she had no recollection of what happened that night. (*See* Compl. Ex. A).

Nevertheless, Ms. Reddington has since persistently made knowingly false statements, including repeatedly stating Mr. Goldman is a "rapist" based on the alleged events of April 22-23, 2017. It is not mere speculation that Ms. Reddington's statements were knowingly false, but rather based on the evidence: including the detailed and thorough investigation by Detective Bates of the SPD and ADA Barry of the OCDA. ADA Barry has definitively stated: "[t]here is

no corroborating evidence to support allegations of a sexual assault....There is also no physical evidence from the SANE to corroborate a sexual assault." The OCDA report issued by ADA Barry concluded:

> **After a full and thorough investigation by our office and the detectives with the Syracuse Police Department, it is impossible to determine what, if anything, occurred that evening between Ms. Reddington and Mr. Goldman. There is no credible proof of any sexual conduct in this case, consensual or non-consensual. As a prosecutor sworn to pursue justice, it would be unethical for me to charge Mr. Goldman with a crime based on these facts and circumstances.**

(*See* Compl. Ex. A) (emphasis added).

Following Mr. Goldman's expulsion from Syracuse University, Defendant celebrated Mr. Goldman's expulsion by going to the DKE fraternity house and bragging to Mr. Goldman's friends and fraternity brothers that her "rapist" was expelled. (*See* Compl. ¶ 12). In fact, she texted at least two of Mr. Goldman's friends following Mr. Goldman's expulsion calling him a "violent rapist" and "monster." (*See* Compl. ¶ 12, 38, 39; Compl. Ex. B). Nonetheless, Defendant was not satisfied with her false report to Syracuse University, Mr. Goldman's subsequent expulsion, or branding Mr. Goldman as a "rapist" to members of the Syracuse University community. Beginning in June 2018, Defendant initiated a systematic process of publicly and falsely accusing Mr. Goldman of criminal conduct—despite the OCDA and SPD finding of no evidence whatsoever to support a claim for sexual assault or even "***sexual conduct***." More particularly, Defendant made social media posts calling Mr. Goldman a "rapist" and waging a campaign to have Mr. Goldman expelled from his *new* college, New Jersey Institute of Technology ("NJIT"), and fired from his summer internship at Bohler Engineering ("Bohler"). (*See* Compl. ¶ 41-49; Compl. Ex. C,D,E,F).

On June 5, 2018, Mr. Goldman was, in fact, fired from his summer internship at Bohler based on her knowingly false statements directed to Bohler—her two social media posts on June 4, 2018 in which she "tagged" Bohler and her direct message to Bohler on June 5, 2018. (*See* Compl. ¶ 42-47; Compl. Ex. C,D,E). Following Bohler's notification to Ms. Reddington that Mr. Goldman's employment with Bohler was being immediately terminated, Ms. Reddington posted a copy of her communications with Bohler and bragged about her accomplishment. (*See* Compl. ¶ 45-46; Compl. Ex. E).

In other words, the social media posts published by Defendant against Mr. Goldman were intentionally directed to Mr. Goldman's family, friends, community, university, current employer, prospective employers, as well as the public via social media. These statements by Defendant were widely disseminated over the internet and viewed by thousands of people. These statements were false when made and Defendant knew they were false—based on, nothing else, the findings of the SPD and OCDA investigations that there was unequivocally no evidence of sexual assault or rape, or even sexual intercourse.

## ARGUMENT

### I. MR. GOLDMAN'S CAUSES OF ACTION FOR DEFAMATION AND TORTIOUS INTERFERENCE MEET THE PLEADING REQUIREMENTS

The Defendant seeks to have Mr. Goldman's Complaint dismissed in its entirety, pursuant to Rule 12(b)(6), for failure to state actionable defamation and tortious interference claims. However, Ms. Reddington is unable to meet her burden as she has not identified a viable basis demonstrating that Ms. Reddington has not pleaded enough facts to plausibly support his causes of action for defamation and tortious interference. The Supreme Court has held that for a complaint to survive a motion brought pursuant to Rule 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). The court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir.1998). This also includes any documents attached to the complaint, any statements or documents incorporated in the complaint by reference and any document on which the complaint heavily relies. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). Accordingly, Rule 12(b)(6) imposes a substantial burden of proof upon the moving party.

A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Siben v. Am. Airlines, Inc.*, 913 F. Supp. 271, 278 (S.D.N.Y. 1996); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989). Ms. Reddington fails to meet her considerable burden as the moving party by banking on the perversion of facts that are indeed categorically pleaded in Mr. Goldman's Complaint. Mr. Goldman has undoubtedly pleaded facts that plausibly support his claims for defamation and tortious interference and which entitle him to relief. For the reasons set forth herein, Ms. Reddington's motion must be denied.

## II. MR. GOLDMAN HAS SUFFICIENTLY PLEADED A CAUSE OF ACTION FOR DEFAMATION AND DEFENDANT'S MOTION MUST BE DENIED

Under New York law, "[t]o properly state a cause of action alleging defamation, a plaintiff must allege that, without privilege or authorization, and with fault as judged, at minimum, by a negligence standard, the defendant published to a third party a false statement." *El Jamal v. Weil*, 116 A.D.3d 732, 733 (2d Dept. 2014). Ms. Reddington's Motion to Dismiss

only addresses the elements of falsity and fault for Mr. Goldman's defamation claim. As described in the Complaint, Ms. Reddington made numerous false statements concerning Mr. Goldman which were published to various third parties, including the general public via social media platforms Facebook and LinkedIn. These accusations were knowingly false given Ms. Reddington's numerous prior statements to others that she did not recall what occurred between herself and Mr. Goldman, the findings of the SANE, the results of the joint Syracuse Police Department and OCDA investigation which concluded that there was no evidence to corroborate a sexual assault or any sexual encounter whatsoever.

**A. Mr. Goldman Has Sufficiently Pleaded That Defendant's Statements Were False**

Mr. Goldman has more than adequately pleaded that Defendant's defamatory statements were false. Defendant cites *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 244 (2d Cir. 2017) for the proposition that Mr. Goldman has not identified how Ms. Reddington's statements were false. (*See* Motion to Dismiss, p. 5, ECF No. 34). However, as a matter of pleading, on the facts and law, Defendant's contention does not hold water. Incredibly, Defendant not only neglects to address the pertinent legal standard on pleading the element of falsity, but blatantly perverts the pleaded facts supporting Mr. Goldman's assertion that Ms. Reddington's statements at issue were knowingly false.

**1. Defendant Neglects To Address The Pertinent Legal Standard For Pleading Falsity**

A defamation cause of action is sufficiently pleaded, as Mr. Goldman clearly has, if facts are included that "would allow a reasonable person to consider the statements false." *See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*,

864 F.3d 236, 247 (2d Cir. 2017). However, Defendant wholly fails to either apply or even state the well-settled test on pleading falsity.

The Complaint clearly pleaded Ms. Reddington's numerous statements to others that she did not recall what happened on the night of April 22, 2017 and the morning of April 23, 2017 (*see* Compl. ¶ 7) (emphasis added) and the findings by SANE, the Syracuse Police Department and the OCDA investigation which concluded that there was no evidence to corroborate a sexual assault (*See* Compl. ¶¶ 6-8). In determining the sufficiency of Plaintiff's complaint, the Court may consider documents attached to it and incorporated in it by reference. *See Chambers*, 282 F.3d at 152. In that regard, after conducting a detailed and thorough investigation, the OCDA report, annexed to the Complaint as exhibit A, concluded: "…it is impossible to determine what, if anything, occurred that evening between Ms. Reddington and Mr. Goldman. **There is no credible proof of any sexual conduct in this case, consensual or non-consensual.**" (*See* Compl. Ex. A) (emphasis added). In so far as the Complaint demonstrates that Ms. Reddington stated on numerous occasions that she did not recall what occurred between her and Mr. Goldman that night AND there is no medical evidence of any "***sexual conduct***" at the time between them, Mr. Goldman has certainly pleaded facts that would allow a *reasonable person* to consider Ms. Reddington's statements regarding Mr. Goldman to be false.

### 2. Defendant Perverts The Basis For Mr. Goldman's Assertion That Ms. Reddington Knowingly Made False Statements Concerning Mr. Goldman

Rather than precisely apply the pleaded facts to the pertinent legal standard for falsity, Defendant attempts to distort facts which are unambiguously pleaded in the Complaint. The Defendant states that "Plaintiff's theory of falsity here rests on the sum of two facts: Ms. Reddington's statements were false because (1) Ms. Reddington could not recall what occurred between herself and Plaintiff on April 23, 2017, and (2) the prosecutor could not determine what,

if anything, occurred between them for purposes of bringing criminal charges." (*See* Motion to Dismiss, p. 5). The Defendant further claims, in sum and substance, that Mr. Goldman attempts to shift the "falsity burden to Defendant" and misplaces his reliance on the OCDA's refusal to criminally prosecute. (*See* Motion to Dismiss, p. 6). These contentions by Defendant blatantly misconstrue the facts as pleaded. Here, Defendant conveniently overlooks a crucial fact: the findings by SANE of no sexual assault; Mr. Goldman does not merely rely on Defendant's memory issues, even if that were, *arguendo*, insufficient. Second, Ms. Reddington emphasizes the criminal standard as a basis for dismissal, presumably in an effort to argue Mr. Goldman has not pleaded falsity. Here, Ms. Reddington mixes apples and oranges; that the standard in a criminal case is "beyond reasonable doubt" is beyond cavil. The salient point in this instance is Mr. Goldman pleads the OCDA, based on the medical exam of Ms. Reddington, could not find any evidence of sexual encounter at all—not even a scintilla to support Ms. Reddington's allegations. Again, viewing the issue squarely and appropriately for the Motion to Dismiss, the standard of proof in a criminal case is irrelevant; the issue is whether Mr. Goldman pleads sufficient factual matter for the falsity element—that is beyond question in the affirmative.

Further, Defendant unashamedly twists Mr. Goldman's emphasis on the findings of the OCDA. While the OCDA's decision to not bring charges against Mr. Goldman is relevant, its distorted application by Defendant confounds the essence of the facts pleaded in the Complaint. Not only did the OCDA decline to bring charges against Mr. Goldman, but ADA Barry definitively stated in the OCDA report that "**[t]here is no credible proof of any sexual conduct in this case, consensual or non-consensual**." (*See* Compl. Ex. A) (emphasis added). This lack of proof is corroborated by the findings of the SANE and goes to the heart of the pleaded facts that would allow a reasonable person to consider Ms. Reddington's statements false—there is no

evidence whatsoever that Mr. Goldman sexually assaulted Ms. Reddington. Like Ms. Reddington's lack of memory, Defendant attempts to warp facts that are indeed decidedly pleaded in Mr. Goldman's Complaint.

Despite Defendant's misguided attempt to muddle both the legal standard for falsity and the relevant pleaded facts, Mr. Goldman has evidently pleaded facts that would allow a reasonable person to consider Ms. Reddington's statements calling him a "rapist" to be false and plausibly support a cause of action for defamation.

### B. The Defendant's Statements Concerning Mr. Goldman Are Not Substantially True

It is indisputable that Ms. Reddington's statements at issue are not protected by the substantial truth defense. The Second Circuit crystalized that "a statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced. **When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done**." *Tannerite*, 864 F.3d at 242-243 (internal citations omitted) (emphasis added). Here, the disparity between the pleaded truth and Ms. Reddington's statements at issue is so immense that the substantial truth defense simply does not apply in this case. It is without doubt that Mr. Goldman's insistence that he did not sexually assault the Defendant, on the one hand, and Ms. Reddington's later proclamations that Mr. Goldman raped her, on the other hand, would have a dramatically different effect on the mind of the reader. Despite Defendant's claims otherwise, the outcome of the Title IX investigation conducted by Syracuse University and the subsequent decision to expel Mr. Goldman is of no avail on this issue.

**1. Defendant Misapplies The Substantial Truth Defense By Blindly Relying On The Outcome Of The Title IX Investigation And The Subsequent Decision by Syracuse University To Expel Mr. Goldman**

In an attempt to gloss over the substantial truth defense's inconsequence in this case, Defendant clings to Mr. Goldman's expulsion from Syracuse University following a predisposed Title IX investigation. Particularly, Defendant argues that Mr. Goldman's expulsion demonstrates that there are only "fine and shaded distinctions between Defendant's statements and the acknowledged truth" and thus, "no legal harm to the Plaintiff has been done." (*See* Motion to Dismiss, p. 7). However, this contention by the Defendant falls flat and ignores the degradation of the Title IX investigatory process. Considering the pleaded facts—the OCDA and SANE produced no evidence to corroborate a sexual assault and the Defendant's admitted lack of memory—Mr. Goldman's expulsion from Syracuse University, without more, would surely not cause a reader of Ms. Reddington's statements that Mr. Goldman raped her to merely find "fine and shaded distinctions" from the pleaded truth that Mr. Goldman did not rape her.

Further, Defendant's dependence on the reliability of findings from the Title IX investigation is misplaced as the flaws of the Title IX investigatory process at colleges have been increasingly scrutinized by courts throughout the country.[1] Just last month, the Sixth Circuit issued a significant rebuke to the veracity of Title IX proceedings. *See Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). In denying a motion to dismiss a student's claims that his university's

[1] *See* Emily Yoffe, *Reining In the Excesses of Title IX*, The Atlantic (Sept. 4, 2018) (https://www.theatlantic.com/ideas/archive/2018/09/title-ix-reforms-are-overdue/569215/) (noting "the use of Title IX to protect female students, however well-intentioned, has resulted in the over-policing of sex between young adults…adjudications that assume guilt, rely on junk science, gut fundamental fairness, engage in racial animus, and disregard the effects of ending men's education and crushing futures."); Emily Yoffe, *The Uncomfortable Truth About Campus Rape Policy* (September 6, 2017) https://www.theatlantic.com/education/archive/2017/09/the-uncomfortable-truth-about-campus-rape-policy/538974/ (students accused of sexual assault have lost their Due Process rights and an accusation of wrong doing can derail a young person's entire college education)

disciplinary proceedings violated the Due Process Clause and Title IX, the Sixth Circuit held that in conducting Title IX investigations, colleges and universities are required to provide parties an opportunity to cross-examine witnesses in the presence of a neutral fact-finder in cases hinging on the credibility of such witnesses. *Id.* at 584. More importantly, the court held that if the determination of culpability is predicated upon a party's or a witness' credibility—as it almost always is—the hearing must include the right of cross-examination, which the court called "the greatest legal engine ever invented for uncovering the truth." *Id.* at 581 (internal citation and quotation omitted). "Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted." *Id.*

Following the Sixth Circuit's decision in *Doe*, the United States District Court for the Southern District of Mississippi held with regards to a university Title IX investigation that the University of Southern Mississippi violated the accused's procedural due process rights when not only was Doe not allowed to be present during anyone else's interview, but he was not allowed to submit questions for others. *See Doe v. The University of Southern Mississippi, et al.*, Case No. 18-CV-153-KS-MTP (S.D.MS. September 26, 2018). Likewise, the University of Southern California was recently ordered to repay an accused's attorney fees following the accused's expulsion based on an "improperly biased Title IX investigation." *See Doe v. Carry, et al.*, Case No. BS163736 (Sup. Ct. CA, County of L.A. June 28, 2018).

Moreover, the Sixth Circuit's ruling in *Doe* appears consistent with Education Secretary Betsy DeVos's increased focus on due process protections for parties in Title IX proceedings.[2]

---

[2] *See* Erica Green, *New U.S. Sexual Misconduct Rules Bolster Rights of Accused and Protect Colleges*, The New York Times (Aug. 29, 2018)

Most notably, like *Doe*, Mr. Goldman was not afforded the opportunity to cross-examine Ms. Reddington during the flawed Title IX investigation by Syracuse University following Ms. Reddington's sudden recollection of the night in question. Given the well-documented blemishes of a Title IX investigation, little credence should be given to Syracuse University's decision to expel Mr. Goldman. Even if it is relevant as to whether the Complaint is properly pleaded—which we submit it is not—at a minimum, Ms. Reddington's reliance on outcome of the Title IX investigation for issues of "falsity" or "substantial truth" cannot support dismissal as a matter of law.

### C. Mr. Goldman Has Sufficiently Pleaded That Defendant's Statements Concerning Mr. Goldman Were Made With The Applicable Level Of Fault

"[T]he plaintiff in a libel case must also demonstrate that the defendant culpably published the alleged false and defamatory statements." *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 236 (E.D.N.Y. 2015). If the plaintiff is a "private figure," he or she "must show at least that the defendants were negligent with respect to the truth if the statement complained of bears on a matter of public concern." *Id.* (quoting *Lopez v. Univision Commc'ns, Inc.*, 45 F.Supp.2d 348, 360 (S.D.N.Y.1999)). However, if the private figure complains of defamation with respect to a matter that is "arguably within the sphere of legitimate public concern," which Mr. Goldman has not, plaintiff may not recover unless he or she establishes that the defendant "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible

(https://www.nytimes.com/2018/08/29/us/politics/devos-campus-sexual-assault.html) (describing new policies the Department of Education is preparing which include: giving institutions a choice between using the "preponderance of evidence" or "clear and convincing" evidence in weighing guilt, enabling schools to decide whether to implement an appeals process, narrowing the definition of sexual harassment, holding schools accountable only for formal complaints filed through proper authorities and for conduct said to have occurred on their campuses).

parties." *Id.* at 236-237 (quoting *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975)).

Mr. Goldman has sufficiently pleaded that Ms. Reddington's statement were made with culpability that was at least negligent as, in fact, Mr. Goldman has pleaded that Ms. Reddington's statements were intentional. (*See* Compl. ¶ 2, 15) Yet, Defendant erroneously argues that Ms. Reddington's statements are a "matter of significant public concern" (*See* Motion to Dismiss, p.10) and that Mr. Goldman "cannot show that Ms. Reddington's statements were made with gross irresponsibility" (*See* Motion to Dismiss, p.11-12). This argument is without merit as Defendant fails to cite any legal authority supporting this case to be a matter of public concern, as required for the "gross irresponsibility" pleading requirement. Furthermore, even assuming, *arguendo*, that this case involves a matter of public concern, Mr. Goldman has adequately pleaded gross irresponsibility by Ms. Reddington.

**1. The Gross Irresponsibility Standard Does Not Apply As Defendant's Statements Concerning Mr. Goldman Are Not A Matter Of Public Concern**

The Defendant is unable to demonstrate that the "gross irresponsibility" standard of fault applies to Ms. Reddington's statements as the case law cited in the Motion to Dismiss fails to establish that private individuals accusing other private individuals of sexual assault are a matter of public concern. Defendant first cites *Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10 (1985), *aff'd*, 67 N.Y.2d 778 (1986) for the proposition that Ms. Reddington's "account of the aftermath following the reporting process, are matters of public concern." (*See* Motion to Dismiss, p. 11). However, Defendant misapplies the holding in *Pollnow* to Ms. Reddington's statements.

In *Pollnow*, after a man had been arrested and arraigned for assault, the mother of the assault victim wrote a series of letters in the local paper criticizing the law enforcement process.

*Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10, 12 (1985), *aff'd*, 67 N.Y.2d 778 (1986). Specifically, the letters disparaged a "lax" police investigation and "faulty" grand jury proceedings in connection with the attack on her daughter. *Id.* The letters **did not** specifically mention the accused assailant by name and focused on generally condemning the legal process surrounding her daughter's assault. *Id.* Subsequently, the accused assailant brought a defamation claim against the mother of the victim. In finding that the mother's letters were a matter of public concern and the gross irresponsibility standard applied, the Appellate Division recognized that "a private person's alleged criminal conduct and the operation of the criminal justice system with respect to the disposition of the charges against such an individual are matters of legitimate public concern." *Id.* at 15.

In stark contrast to *Pollnow*, Mr. Goldman was neither arrested, arraigned or investigated by a grand jury but was specifically branded in Ms. Reddington's statements as a "rapist." (*See* Compl. ¶¶ 38, 42, 44, 49). The holding of *Pollnow* does not apply to Ms. Reddington's statements as her statements were clearly **not** intended to condemn the handling of her sexual assault complaint by law enforcement and prosecutors but to publicly designate Mr. Goldman as a "rapist" and harm him.

The Defendant next cites to *Doe v. HarperCollins Publishers*, LLC, 17-CV-3688, 2018 WL 1174394 (N.D. III. Mar. 6, 2018) for the assertion that "investigation of sexual assaults on college campuses constitute matters of legitimate public concern." (*See* Motion to Dismiss, p. 10). Yet, again, Defendant misapplies the holding of the case law cited in her motion. In *Doe*, the plaintiff sued the author and publisher of a book entitled "*Unwanted Advances: Sexual Paranoia Comes to Campus*." *Doe v. HarperCollins Publishers*, LLC, 17-CV-3688, 2018 WL 1174394, at *1 (N.D. III. Mar. 6, 2018). However, the court's finding that sexual assault

investigations on college campuses are a matter of public concern related to plaintiff's claim for public disclosure of private facts and not defamation. *Id*. at *5. Further, the statements that were recognized as matters of public concern in *Doe* were in conjunction with the more general issues surrounding the Title IX process and investigation of sexual assaults on college campuses, and **not** in connection with individualized allegations of sexual assault. Thus, *HarperCollins Publishers* is inapplicable as the statements in that case centered on social issues far broader than the pinpointed allegations made by Ms. Reddington against Mr. Goldman.

The Defendant fails to cite, because she cannot, a single case holding that instances of private individuals accusing other private individuals of sexual assault to be a matter of public concern in a defamation context. Simply, the gross irresponsibility standard of fault is inapplicable here.

**2. Even If The Standard Applies, Mr. Goldman Has Adequately Pleaded Gross Irresponsibility By Ms. Reddington**

Even assuming *arguendo* that the gross irresponsibility standard applies, Mr. Goldman has adequately pleaded that Ms. Reddington acted with gross irresponsibility. In this context, gross irresponsibility signifies a level of fault greater than negligence. *Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 875 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) (citing *Weiner v. Doubleday & Co., Inc.*, 74 N.Y.2d 586, 595 (1989)). Mr. Goldman has undoubtedly pleaded that Ms. Reddington's statements were made with culpability greater than negligence as, in fact, Mr. Goldman has pleaded that Ms. Reddington's statements were intentional.

Throughout the Complaint, Mr. Goldman repeatedly asserted that Ms. Reddington made statements regarding Mr. Goldman that were "knowingly false." (*See* Compl. ¶¶ 1, 3, 10, 14, 38). The Complaint further specifies that Ms. Reddington's statements were knowingly false based on the lack of any evidence whatsoever of sexual assault in addition to Ms. Reddington's

admitted inability to recall what occurred with Mr. Goldman during the evening of April 22, 2017 and the morning of April 23, 2017. (*See* Compl. ¶¶ 8, 9). Not only has Mr. Goldman pleaded that Ms. Reddington acted with a higher degree of culpability than gross irresponsibility, but the very case law cited by Ms. Reddington demonstrates that her argument fails. In citing *Pollnow*, the Defendant fittingly ignores the court's holding on whether the plaintiff sufficiently pleaded gross irresponsibility. In *Pollnow*, the court held that although the causes of actions did not specifically use the term" gross irresponsibility," the pleadings which stated "defendant acted negligently, maliciously and with a reckless disregard for the truth" satisfied the pleading requirements. *Pollnow*, 107 A.D. 2d at 18 (internal citations omitted). Despite Defendant's baseless contentions, Mr. Goldman is not required to conclusively prove that Ms. Reddington's statements were made with gross irresponsibility at this stage in the proceedings. Rather, by repeatedly emphasizing that Ms. Reddington made statements regarding Mr. Goldman that were "knowingly false," and alleging facts that plausibly demonstrate such culpability, Mr. Goldman has adequately pleaded that Ms. Reddington acted with gross responsibility and met the requirements for stating a cause of action for defamation.

**D. All Of Ms. Reddington's Statements At Issue Constitute Actionable Defamation**

In addition to Mr. Goldman sufficiently pleading falsity and fault, all of Ms. Reddington's statements at issue constitute actionable defamation. These defamatory statements include: (1) a text message to Thomas Aiello, a friend of Plaintiff, referring to Mr. Goldman as a "violent rapist." (Compl. ¶¶ 38, 56; Compl., Ex. B.); (2) the June 4, 2018 Facebook post, referring to Mr. Goldman as a "rapist." (Compl. ¶¶ 42, 56; Compl, Ex. C.); (3) the June 4, 2018 LinkedIn post in which Ms. Reddington called Mr. Goldman a "rapist." (Compl. ¶¶ 44, 56; Compl., Ex. D.); (4) a text message to Dennis Kadric, a friend of Mr. Goldman, referring to Mr.

Goldman as a "monster." (Compl. ¶¶ 39, 56.); (5) the June 6, 2018 post on Facebook reviews section of NJIT that stated "[a] school that accepts recently expelled rapists, despite it being marked on their transcript." (Compl. ¶¶ 49, 56; Compl., Ex. F.); and (6) the June 5, 2018 contact to Bohler via Facebook messaging, which was reposted on Facebook stating, "…syracuse did when they deemed him dangerous and expelled him. Thank you for your time." (Compl. at ¶¶ 45-46, 56; Compl., Ex. E.). **As Defendant only specifically challenges the last three of Ms. Reddington's statements—each of which is addressed in turn herein—Defendant presumably acknowledges and concedes that the other statements by Ms. Reddington in the Complaint do not fail due to independent reasons. Thus, Mr. Goldman's defamation claim, even taking Defendant's argument at face value, cannot be dismissed.**

**1. Defendant's Defamatory Text Message To Dennis Kadric In May 2018 Referring To Mr. Goldman As A "Monster" Is Not A Matter Of Opinion**

First, Defendant claims that her text message in May 2018 to Dennis Kadric, a friend of Mr. Goldman, referring to Mr. Goldman as a "monster" (*See* Compl. ¶¶ 39, 56.), is a protected opinion and relies on the holding in *Jacobus v. Trump*, 55 Misc. 3d. 470 (Sup. Ct. 2017). (*See* Motion to Dismiss, p. 12). However, Defendant presents only a superficial, and ultimately, faulty analysis of the holding and reasoning in *Jacobus*. The court in *Jacobus* held that a statement of opinion becomes an actionable mixed opinion when it suggests that it is based on unstated facts that are detrimental to the person toward whom the communication is directed. *Jacobus v. Trump*, 55 Misc. 3d. 470, 476 (Sup. Ct. 2017). Give the chronology of events surrounding the text message, Mr. Kadric's friendship to Mr. Goldman and other similar statements made by Ms. Reddington, the full context of the text message would certainly imply that Ms. Reddington's opinion was based on unstated facts harmful to Mr. Goldman. The

unstated fact, in the context of the statement, is that Mr. Goldman is a "monster" because Defendant contends he raped her.

In the spring and summer of 2017, Ms. Reddington made false accusations regarding Mr. Goldman to Syracuse University, Syracuse Police Department, and Onondaga County District Attorney. (*See* Compl. ¶¶ 10, 31,). In November 2017, following Mr. Goldman's expulsion from Syracuse University, Defendant celebrated Mr. Goldman's expulsion by going to the DKE fraternity house and bragging to Mr. Goldman's friends and fraternity brothers that her "rapist" was expelled. On November 17, 2017, Ms. Reddington sent a text message to Thomas Aiello, a friend of Mr. Goldman and repeatedly referred to Mr. Goldman as a "violent rapist." (*See* Compl. ¶ 38). In June 2018, Ms. Reddington commenced a systematic campaign of publicly describing Mr. Goldman as a "rapist" on various social media platforms to further destroy Mr. Goldman's reputation, as well as educational and career prospects. (*See* Compl. ¶¶ 42, 44, 49). Specifically, on June 5, 2018, Ms. Reddington posted on Facebook that Mr. Goldman is a "monster" and that he "has now lost his position at Bohler Engineering" implying her opinion was based on unstated facts harmful to Mr. Goldman (*see* Compl. ¶ 47); and on June 4, 2018, Ms. Reddington posted on LinkedIn again calling Mr. Goldman a "monster" but in clear conjunction with the false statement that Mr. Goldman is a "rapist" (*see* Compl. ¶ 44). The full context of Ms. Reddington's text message to Mr. Kadric in May 2018 must be analyzed given the sequential proximity of Ms. Reddington's social media campaign against Mr. Goldman and the text message at issue. Ms. Reddington's repeated use of "monster" to describe Mr. Goldman in communications that were both explicitly and implicitly based on facts harmful to Mr. Goldman surely implied that Ms. Reddington's opinion was based on unstated facts harmful to Mr. Goldman and is an actionable mixed opinion.

**2. Defendant's Defamatory Facebook Post In The Reviews Section Of NJIT On June 6, 2018 Was "Of And Concerning" Mr. Goldman**

Second, Defendant claims that Ms. Reddington's post on June 6, 2018 in the Facebook reviews section of NJIT, which stated "[a] school that accepts recently expelled rapists, despite it being marked on their transcript," is not actionable because it is not "of and concerning" Plaintiff. (*See* Motion to Dismiss, p. 12). While this statement by Ms. Reddington was made with no further commentary, based on the surrounding context of the message and Ms. Reddington's previous defamatory statements tagging NJIT, the Complaint establishes a reasonable connection between Ms. Reddington and the pleaded statement to determine that this Facebook post was "of and concerning" Mr. Goldman. Defendant relies on *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 234 (E.D.N.Y. 2015) in support of her argument; Defendant, again, misleads the Court about applicability of that case to the matter before the Court.

The court in *Greene* held that "[t]he Court properly may dismiss an action pursuant to Rule 12(b)(6) where the statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff." *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 234 (E.D.N.Y. 2015) (internal citation and quotation omitted). The court added, that the complaint must only allege facts that demonstrate a reasonable connection between the plaintiff and the alleged libel. *Id.* Ms. Reddington's other social media posts sent shortly before the Facebook post at issue clearly exhibit a reasonable connection between Ms. Reddington's statement and Mr. Goldman. On June 4, 2016, just two days before the Facebook post at issue, Ms. Reddington posted on Facebook, with her location at NJIT, that her "rapist has an internship with Bohler Engineering and will be graduating from a different college, New Jersey Institute of Technology." (*See* Compl. ¶ 42). Ms. Reddington concluded the post with "#MeToo

#NewJerseyInstituteofTechnology #NJIT # Bohler Engineering" with a link to Mr. Goldman's Facebook profile, his LinkedIn profile, and a picture of Mr. Goldman. *Id.* On the same date, June 4, 2018, Ms. Reddington posted an almost identical post on LinkedIn, in which she once again referred to Mr. Goldman numerous times as a "rapist." (*See* Compl. ¶ 44). Ms. Reddington concluded the post by tagging "New Jersey Institute of Technology; Bohler Engineering; #MeToo." *Id.*

The Defendant further cites to *Texas 1845 LLC v. Wu Air Corp.*, No. 11-CV-1825 JS ETB, 2012 WL 382828, at *5 (E.D.N.Y. Feb. 6, 2012) for the proposition that an allegedly defamatory statement is found to be not "of and concerning" the plaintiff where the speaker did not mention the plaintiff and there was no indication that any listener understood that the speaker was referring to the plaintiff. (*See* Motion to Dismiss, pg. 13). On both Facebook and LinkedIn, when a user tags another user, that user receives a notification of the tagging and can access the post.[3] As NJIT was certainly aware of Ms. Reddington's social media posts on June 4, 2018 explicitly branding Mr. Goldman as a "rapist," it is without doubt that NJIT understood Ms. Reddington's post in its Facebook reviews section on June 6, 2018 to be about Mr. Goldman. This Facebook post by Ms. Reddington was only two days following her earlier posts tagging NJIT and consistently referenced a "rapist" attending the school. Indubitably, NJIT recognized that the "rapist" mentioned in Ms. Reddington's post in their Facebook reviews section was Mr. Goldman. Mr. Goldman has clearly demonstrated that Ms. Reddington's post on Facebook on June 6, 2018 was "of and concerning" Mr. Goldman.

---

[3] *See* LinkedIn Help, *Mention People in Your Posts* (https://www.linkedin.com/help/testing/answer/34936/mention-people-in-your-posts?lang=en); Facebook Help Center, *How do I mention people, Pages or groups in a post or comment?* (https://www.facebook.com/help/218027134882349/)

### 3. Defendant Was Responsible For The Defamatory June 5, 2018 Facebook Message To Bohler

Finally, ***incredibly***, Defendant claims that Mr. Goldman incorrectly attributes the June 5, 2018 contact to Bohler via Facebook messaging to Defendant. As Ms. Reddington makes this claim without submitting any evidence that Catherine Schay contacted Bohler (*See* Motion to Dismiss, p. 13), it is not plainly obvious that Ms. Schay is the author of the Facebook message to Bohler. Ms. Schay does not explicitly state in her comment to Ms. Reddington's Facebook post of the Bohler message that she sent this message. The Defendant has also not submitted any independent evidence supporting that Ms. Schay authored this Facebook message to Bohler. Finally, Ms. Reddington appears to take ownership of the Facebook message to Bohler by reposting a copy of the Bohler message and stating: "**Thank you to everyone for reposting and spreading the word on the monster that Alex Goldman is. Thank you to Bohler Engineering for taking a stand against this disgusting excuse of a man. Alex Goldman has now lost his position at Bohler Engineering. --☺ feeling happy**." (*See* Compl. Exhibit E) (emphasis added). Ms. Reddington played an active role in Mr. Goldman losing his job and rejoices over this occurrence. Given Ms. Reddington's well-established intention and history of harming Mr. Goldman, Ms. Reddington's argument that another person messaged Bohler on Facebook on June 5, 2018 is unsupported by any evidence. Therefore, as pleaded in the Complaint, Mr. Goldman sufficiently establishes a cause of action for defamation in connection with this particular statement.

## III. MR. GOLDMAN HAS SUFFICIENTLY PLEADED A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE AND DEFENDANT'S MOTION MUST BE DENIED

Mr. Goldman's tortious interference claim prevails as a matter of law. Under New York law, to state a cause of action for tortious interference with prospective economic advantage or

business relations requires the following elements: (1) that the plaintiff had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) that the defendant's interference caused injury to the relationship. *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). The Defendant claims that the tortious interference cause of action fails because Mr. Goldman has neither identified any wrongful interference nor any harm from such interference. However, Mr. Goldman has pleaded facts plausibly supporting both elements of his tortious interference claim.

### A. Mr. Goldman Has Sufficiently Alleged Facts Plausibly Supporting Defendant's Employment Of "Wrongful Means" As The Tortious Interference Claim Is Founded On A Viable Defamation Claim

Mr. Goldman has sufficiently pleaded wrongful interference by Defendant. The third element for a tortious interference cause of action requires a showing that the defendant acted with a wrongful purpose or employed wrongful means. *Gym Door Repairs, Inc. v. Young*, 206 F. Supp. 3d 869, 908 (S.D.N.Y. 2016) (citing *Carvel Corp. v. Noonan*, 785 N.Y.S.2d 359, 359 (2004)). The defendant's conduct must amount to a crime or an independent tort, except that, where the defendant engages in conduct "for the sole purpose of inflicting intentional harm on plaintiffs," then the wrongful means element of the test is satisfied. *Id.* As Mr. Goldman's tortious interference claim is founded on a viable defamation claim discussed in the preceding section, Mr. Goldman has sufficiently alleged that Ms. Reddington's statements constituted "wrongful means."

### B. Mr. Goldman Has Sufficiently Alleged Actual Injury Attributable To Defendant's Conduct

Mr. Goldman has adequately alleged cognizable injury to his "business relationship" with Bohler and Syracuse University. Notably, Defendant just ignores the fact that based on Ms.

Reddington's actions; Mr. Goldman was fired from his summer internship with Bohler. Presumably, Defendant concedes and recognizes that the Complaint sufficiently alleges that Mr. Goldman's termination from his internship at Bohler was a cognizable injury directly resulting from Ms. Reddington's defamatory statements. Instead, Defendant claims, in sum and substance, that Mr. Goldman cannot attribute his expulsion from Syracuse University to Ms. Reddington's defamatory statements as his expulsion was within the terms of his defined relationship with Syracuse University. Undoubtedly, Mr. Goldman's expulsion from Syracuse University is directly caused by Ms. Reddington's statements to the school and Ms. Reddington fails to identify any legal support for her erroneous assertion.

In or about June 2017, Defendant filed a knowingly false complaint with Syracuse University, which, in turn, conducted its own Title IX investigation, pursuant to Syracuse University's Code of Student Conduct. (*See* Compl. ¶ 10). Upon information and belief, Defendant also told Syracuse University that Mr. Goldman sexually assaulted her—despite earlier conversations in which she detailed her lack of memory. (*See* Compl. ¶¶ 8, 10, 36). It is evident that the only reason Syracuse University conducted a Title IX investigation and subsequently expelled Mr. Goldman was Defendant's filing of a false complaint with the school. In other words, without Defendant's false complaint to Syracuse University, Mr. Goldman would never have been expelled, at least for these particular events. This causal link between Defendant's conduct and harm suffered by Mr. Goldman is plainly stated in the Complaint.

Further, Defendant's argument rings hallow as Defendant concocts requirements for pleading a cognizable injury. Specifically, Defendant claims that Mr. Goldman has failed to allege that any harm was caused to him by his expulsion from Syracuse University as this action was within the terms of his defined relationship with the school. However, Defendant provides

no legal support for the constraint that a student's expulsion from their respective school must depart from the school's normal policies and procedures to be a cognizable injury. In the absence of any legal support, Defendant's argument falls flat.

Finally, in arguing Mr. Goldman has no injury as it pertains to NJIT, Defendant undercuts her own argument that Mr. Goldman has not set forth any injury to his relationship with Syracuse University. The Defendant states, "[w]ithout alleging a specific cognizable injury to his 'business relationship' with NJIT (**such as that he was terminated from his program**), his tortious interference claim with respect to his alleged relationship with that school cannot stand." (*See* Motion to Dismiss, p. 17) (emphasis added). Here, Defendant clearly acknowledges the legitimacy of the injury that Mr. Goldman suffered when he was expelled from Syracuse Injury by specifically identifying the termination from a scholastic program as the benchmark for cognizable injury. Mr. Goldman clearly pleaded a cognizable injury, recognized by Defendant, in attributing his expulsion from Syracuse University to Ms. Reddington's false accusations to the school.

**CONCLUSION**

For the reasons set forth above, Mr. Goldman respectfully submits that the Court must deny the Defendant's motion to dismiss.

Dated: New York, New York
October 19, 2018

Respectfully submitted,

GOTTLIEB & JANEY LLP

By: ______________________
Derrelle M. Janey, Esq.
Seth J. Zuckerman, Esq.

The Trinity Building
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506
Email: djaney@gottliebjaney.com
Email: szuckerman@gottliebjaney.com
*Attorneys for Plaintiff Alex Goldman*

To: All counsel of record (via ECF)