UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALEX GOLDMAN,

                Plaintiff,

    - against -

CATHERINE REDDINGTON,

                Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CV-3662 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Alex Goldman filed this action, pursuant to this Court's diversity jurisdiction, alleging defamation and tortious interference with prospective economic advantage and business relations by defendant Catherine Reddington. The complaint focuses on statements Reddington made via text messages and social media, claiming, *inter alia*, that Goldman raped her when they were university students. (Compl. (Doc. No. 1)).) Goldman seeks damages and injunctive relief enjoining Reddington from propagating the alleged falsities. Before the Court is Reddington's motion to dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def.'s Mot. (Doc. No. 34).) For the reasons explained below, Reddington's motion is denied in part, and granted in part.

## BACKGROUND[1]

In 2017, Reddington and Goldman were both students at Syracuse University ("Syracuse"). (Compl. at ¶ 5.) Goldman was a civil engineering student, on track to graduate

---

[1] The following facts are drawn from the complaint unless otherwise noted. The Court also considers exhibits attached to the complaint, including the report of the Onondaga County District Attorney's Office ("OCDA"). (OCDA Rpt., Ex. A to Compl. (Doc. No. 1-2).) *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (The complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (internal quotation marks omitted) (citations omitted)).

with a bachelor's degree in 2018 and a master's in Business Administration ("MBA") in 2019. (*Id*. at ¶ 23.)

Both Goldman and Reddington participated in Greek life on campus. (*Id*. at ¶¶ 24, 28.) On April 22, 2017, Goldman's fraternity and Reddington's sorority hosted a joint party at the Delta Kappa Epsilon ("DKE") fraternity house, where Goldman resided. (*Id*. at ¶¶ 24, 28.) After the party, Reddington spent the night in Goldman's room. Goldman alleges that surveillance footage shows him walking to his room at approximately 12:30 a.m., with Reddington following a few feet behind. (*Id*. at ¶ 29.) When Goldman and Reddington awoke on April 23, 2017, it is undisputed that they were fully clothed, and that neither could remember what transpired after midnight. (*Id*. at ¶ 30.)

The next day, on April 24, 2017, Reddington visited Crouse Hospital in Syracuse, New York, complaining of a possible sexual assault. (*Id*. at ¶ 6.) She believed that she may have been drugged given her lack of memory. (*Id*.) A Sexual Assault Nurse Examination ("SANE") was conducted, which showed no intoxicants present in her bloodstream other than caffeine and marijuana. (*Id*. at ¶¶ 6, 33.) She submitted items of clothing – specifically underwear, which had no visible blood, and a white leotard, which had a "blood stain in [the] crotch area." (OCDA Rpt., Ex. A to Compl. (Doc. No. 1-2) at ¶ 4.) The examination found two "tears" to Reddington's labia, but "there were no internal cuts or abrasions to vaginal walls and she had smooth hymen edges." (*Id*. at ¶ 1.) A DNA analysis indicated that her vagina was negative for male DNA. (*Id*. at ¶ 2.)

In May 2017, Reddington reported the alleged sexual assault to the Syracuse Police Department ("SPD"). (Compl. at ¶ 3.) Following an investigation, Detective Michael Bates of the SPD closed the case, given the absence of any physical evidence and Reddington's

2

statements in interviews that she had no recollection of the night in question after 12:30 a.m. (*Id*. at ¶¶ 31, 34.) Bates forwarded his report to the Onondaga County District Attorney's Office ("OCDA"), which conducted its own investigation, memorialized in a report by Assistant District Attorney Maureen Barry. (*Id*. at ¶¶ 34, 35.) Based on Barry's review of the evidence and the OCDA's own independent investigation, Barry concluded that there was "no corroborating evidence" and "no physical evidence from the SANE" to support allegations of sexual assault. (OCDA Rpt. at ¶ 1.) The report also noted, "Ms. Reddington has stated repeatedly that she has no direct knowledge of any sexual acts that she may have engaged in," (*id*. at ¶ 7), and that her "lack of memory and the lack of any witnesses . . . make it impossible to prove," (*id*. at 5). The report recognized that sexual assaults are "inherently difficult" to prove, but ultimately concluded: "There is no credible proof of any sexual conduct in this case, consensual or non-consensual." (*Id*. at 4–5.)

In approximately June 2017, Reddington filed a complaint with Syracuse, and the school's Title IX Investigator Bernerd Jacobson conducted an investigation. (Compl. at ¶¶ 10, 36.) While Reddington initially told Jacobson that she could not recall the night in question, weeks later she reported experiencing "sudden flashes of memories following a visit to a therapist." (*Id*. at ¶ 36.) Reddington told Jacobson that she had sexual intercourse with Goldman and was sodomized by him without her consent. (*Id*.) Jacobson concluded that Goldman had violated the Student Code of Conduct, and he was expelled in November 2017. (*Id*. at ¶ 37.) Reddington celebrated by visiting the DKE house the day after Goldman was expelled, "bragging" that "her 'rapist' was expelled." (*Id*. at ¶ 12.) Goldman notes that he was seven credits shy of graduation at the time. (*Id*. at ¶ 25.)

Following his expulsion, Goldman moved to New Jersey, enrolled in a new school (the

3

New Jersey Institute of Technology ("NJIT")), and obtained an internship for the summer of 2018 with Bohler Engineering ("Bohler"). (*Id*. at ¶ 26.)

I. **The Alleged Defamation Campaign and Tortious Interference**

Goldman alleges that Reddington embarked on a campaign of defamation in a "systematic process of publicly and falsely" branding him a rapist. (Compl. at ¶¶ 13, 41.) She texted two of Goldman's friends, calling him a "monster" and "a violent rapist." (*Id*. at ¶¶ 12, 56; 11/17/2017 Text, Ex. B to Compl. (Doc. No. 1-2) at 8.) Goldman attaches to the complaint several social media posts made by Reddington. The complaint identifies six specific statements as defamatory:

1. November 17, 2017, text message to one of Goldman's friends, referring to Goldman as a "violent rapist." (*Id*. at ¶¶ 38, 56; 11/17/2017 Text at 8.)

2. May 2018 text message to another one of Goldman's friends, repeatedly referring to him as a "monster." (Compl. at ¶¶ 39, 56.)

3. June 4, 2018, Facebook post, referring to Goldman as a "rapist" and stating that this was not the first time he "has raped someone and I want to make sure that it is the last." Reddington included a picture of Goldman, marked the location as NJIT, and tagged NJIT and Bohler. (*Id*. at ¶¶ 41, 42, 56; 6/4/2018 Facebook Post, Ex. C to Compl. (Doc. No. 1-2) at 10–12.)[2]

4. June 4, 2018, LinkedIn post, referring to Goldman as a "rapist," which tags NJIT and Bohler. (Compl. at ¶¶ 44, 56; 6/4/2018 LinkedIn Post, Ex. D to Compl. (Doc. No. 1-2) at 14–19.)

5. June 5, 2018, Facebook post, which includes a screenshot of a direct Facebook message to Bohler. Only a portion of the message to Bohler is displayed, but the post shows Bohler's response, which states that Bohler "elected to immediately terminate the employment relationship" with Goldman upon learning of the "allegations." (Compl. at ¶ 46.) Reddington posts that she is "feeling happy" that Goldman lost his position, and calls him a "monster" and "a disgusting excuse for a man." (*Id*. at ¶¶

---

[2] To "tag" another user on a social media platform means to mention that user and create a link to his profile. The user tagged will generally receive a notification of the tag and the tag will be associated with his profile. *See e.g.*, *How do I mention people, Pages or groups in a post or comment?*, FACEBOOK, https://www.facebook.com/help/218027134882349/ (last visited July 11, 2019); *Mention People In Your Posts*, LINKEDIN, https://www.linkedin.com/help/linkedin/answer/34936/mention-people-in-your-posts?lang=en (last visited July 11, 2019).

45, 46, 56; 6/5/2018 Facebook Post, Ex. E to Compl. (Doc. No. 1-2) at 21.)

6. June 6, 2018, Facebook review of NJIT, stating: "A school that accepts recently expelled rapists, despite it being marked on their transcript . . . ." (Compl. at ¶¶ 49, 56; 6/6/2018 NJIT Facebook Review, Ex. F to Compl. (Doc. No. 1-2) at 23.)

The Facebook and LinkedIn posts were viewed and "liked" by thousands of people, and the posts have also been shared. (Compl. at ¶¶ 2, 15.) Individuals commented on Reddington's posts, expressing their disdain for Goldman. One user wrote, "[h]opefully they'll catch this animal. I will share this post[] in hopes that someone out there who knows him sees it . . . ." (*Id*. at ¶ 43.) Another individual commented, "This person needs to be off the streets" and "he will get his, it's only the beginning!!!!" (*Id*. at ¶ 48.)

Goldman maintains that Reddington's accusations are "utterly unfounded" and that there is "unequivocally no evidence of sexual assault or rape." (*Id*. at ¶ 16.) Goldman alleges that Reddington's charges of rape were "false when made" and that she "knew they were false." (*Id*. at ¶¶ 10, 15, 16.) He alleges that Reddington made these "knowingly false statements," (*id*. at ¶¶ 3, 4, 8), in order to "devastate [his] educational and career prospects; destroy his personal relationships . . . ; destroy his academic relationship with institutions of higher education; destroy his employment opportunities; publicly tarnish his reputation; and wreak havoc on his personal life and that of his family," (*id*. at ¶ 1). He states that Reddington's objective was to "wag[e] a campaign to have" him expelled from NJIT and fired from his summer internship. (*Id*. at ¶ 13.) Goldman was in fact terminated by Bohler. Accordingly, he seeks damages and injunctive relief to remedy the harm caused by Reddington's "campaign of aggressive public harassment." (*Id*. at ¶¶ 1, 4, 17.)

Reddington now moves to dismiss the complaint on the ground that Goldman fails to state a claim for relief. She argues that the defamation claim must be dismissed because: (1)

Goldman fails to meet his burden of alleging that the statements were false; (2) he does not plead facts showing that she made the statements with gross irresponsibility; and (3) certain statements are not actionable because they are either matters of opinion, or do not sufficiently identify Goldman. Reddington also claims that she did not Facebook message Bohler, and therefore cannot be held responsible for that message; she claims that she merely reposted an exchange between Bohler and another individual. Reddington further takes issue with Goldman's request for injunctive relief, arguing that it is "likely to violate (her) First Amendment rights." (Def.'s Mot. at 13.) With respect to the tortious interference claim, Reddington argues that Goldman fails to allege that she used "wrongful means," and he does not claim any injury attributable to her conduct.

Goldman urges the Court to accept his allegations as true for the purpose of evaluating Reddington's motion to dismiss. He argues that he has sufficiently pleaded facts satisfying the elements of both the defamation and tortious interference claims. Construing all factual inferences in Goldman's favor, the Court largely agrees. For the reasons set forth below, Reddington's motion to dismiss is denied in part, and granted in part.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) requires a court to evaluate the legal, rather than factual, sufficiency of a complaint. The Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Detailed facts are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). The determination of whether "a complaint states a plausible claim for relief" is "a context-specific task that requires" the court to "draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## DISCUSSION

### I. Defamation

Defamation, "consisting of the twin torts of libel and slander," is "the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). Defamatory words expressed in writing are classified as libel, and this generally includes social media and text messages. *See Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *see also Conti v. Doe*, No. 17-CV-9268 (VEC), 2019 WL 952281, at *2 (S.D.N.Y. Feb. 27, 2019) (treating text messages as libel); *Torati v. Hodak*, 147 A.D.3d 502, 504 (1st Dep't 2017) (Facebook message actionable as libel).

To state a claim for libel under New York law, a complaint must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm," unless the statement is defamatory *per se*, in which case harm is presumed. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34 (1st Dep't 2014)). Statements that falsely charge plaintiffs with "serious" criminal activity are defamatory *per se*. *See Hayashi v. Ozawa*, No. 17-CV-2558 (AJN), 2019 WL 1409389, at *2 (S.D.N.Y. Mar. 28, 2019); *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018

WL 1466770, at *4 (E.D.N.Y. Mar. 26, 2018). A crime is "serious . . . if it is (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Conti*, 2019 WL 952281, at *7 (internal quotation marks omitted) (citation omitted).

With respect to the first element, plaintiffs have the burden of alleging that a defamatory statement is false, or at least "not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017); *see also Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019). While "minor inaccuracies" do not give rise to defamation, a statement is substantially true, and thus not actionable, if it would have the same effect "on the mind of the reader" as the "pleaded truth." *Tannerite Sports, LLC*, 864 F.3d at 242 (internal quotation marks omitted) (citations omitted); *see also Cabello-Rondon v. Dow Jones & Co., Inc.*, No. 16-CV-3346 (KBF), 2017 WL 3531551, at *4 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018). In other words, "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn . . . to sustain a charge of libel, no legal harm has been done." *Tannerite Sports, LLC*, 864 F.3d at 243. To survive a motion to dismiss, plaintiffs must do more than "perfunctorily state that a statement is false," *Cabello-Rondon*, 2017 WL 3531551, at *6; they must "identify how the defendant's statement was false" and "plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports, LLC*, 864 F.3d at 245–47 (citations omitted).

Under New York law, statements that express opinions or hyperbole, rather than facts, do not constitute actionable defamation. *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 202 (2d Cir. 2015) (citing *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (1993)). However, an exception to the general rule exists for "mixed opinion-fact defamation"; in such

8

cases, an opinion "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015) (summary order) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)); *see also Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016). New York courts consider the following non-exclusive list of factors in determining whether a statement is one of fact or opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Elias*, 872 F.3d at 110 (internal quotation marks omitted) (citation omitted); *see also Frascatore v. Blake*, 344 F. Supp. 3d 481, 494 (S.D.N.Y. 2018). Context is central to this analysis, and the ultimate question is whether "a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 159 (S.D.N.Y. 2016); *see also Bellavia Blatt & Crossett, P.C.*, 151 F. Supp. 3d at 295 ("[C]ourts are required to take into consideration the larger context in which the statements were published." (internal quotation marks omitted) (citation omitted)); *Brahms v. Carter*, 33 F. Supp. 3d 192, 198 (E.D.N.Y. 2014).

Additionally, the complaint must allege that a defamatory statement was "of and concerning" the plaintiff. In other words, the plaintiff must show that the statement refers to him such that those who know him would recognize he was the target of the libel. *See Elias*, 872 F.3d at 105; *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398–99 (2d Cir. 2006). "It is not necessary that the world should understand the libel; it is sufficient if those who know the plaintiff can make out that she is the person meant." *Elias*, 872 F.3d at 105 (internal quotation

marks omitted) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)); *see also Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 629 (E.D.N.Y. 2018) (noting that courts in the Second Circuit require a "reasonable connection" between the plaintiff and the libel (internal quotation marks omitted) (citation omitted)). While the "of and concerning" requirement is generally an issue of fact for the jury to decide, the court may properly dismiss an action where the libelous statement is "incapable of supporting a jury's finding" that it refers to the plaintiff. *Greene v. Paramount Pictures Corp.*, 138 F. Supp. 3d 226, 234 (E.D.N.Y. 2015) (quoting *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001)); *see also Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 172–73 (E.D.N.Y. 2006).

Finally, the plaintiff in a libel case must establish that the defendant published the statement culpably. The requisite level of fault varies depending on the status of the parties and the content of the statement. Where the plaintiff is a private individual, but the content of the statement is "arguably within the sphere of legitimate public concern," the defendant will not be liable unless she "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016). If the plaintiff is a private individual and the statement does not concern the public, the gross irresponsibility standard does not apply, and negligence will suffice. *See Greene*, 138 F. Supp. 3d at 236.

Here, Reddington published numerous statements, viewed by hundreds or thousands of people, accusing Goldman of rape. Rape is a sufficiently "serious" crime to support a claim for defamation *per se*. *See Franco v. Diaz*, 51 F. Supp. 3d 235, 244–45 (E.D.N.Y. 2014). If, as

Goldman claims, Reddington did in fact knowingly lie about the events of April 22 and 23, 2017, she could be liable, for the reasons explained below. While it is not yet clear whether Goldman will prevail on the merits, construing all facts in his favor, as the Court must at this juncture, the complaint plausibly alleges defamation *per se*.

Reddington posits several arguments as to why the complaint should be dismissed, but none of them defeat the defamation claim at this early stage of litigation.

      a. Falsity

First, Reddington argues that the complaint fails to adequately allege that her statements were false. While plaintiffs must offer more than a conclusory statement of falsity, Reddington attempts to impose a heightened standard contrary to New York law. Goldman unambiguously disavows the accusation of rape as "utterly unfounded," and presents specific facts through the OCDA report to plausibly allege that Reddington's claims are not true. (Compl. at ¶ 16.) Thus, Goldman's case is distinguishable from other cases that have warranted dismissal. *See Primiani v. Vintage 185 Inc.*, No. 2:18-CV-2237 (ADS) (AYS), 2019 WL 486087, at *3 (E.D.N.Y. Feb. 6, 2019) (dismissing claim where "vague assertions" failed to identify "what, if any, parts of" allegedly defamatory Google reviews were false); *see also Cabello-Rondon*, 2017 WL 3531551, at *5 (Plaintiff failed to plead falsity where he did not challenge "the accuracy" of the statement.).

Reddington cautions the Court against the use of the OCDA report, noting that the District Attorney's decision not to bring criminal charges "does not conclusively establish that no sexual assault occurred." (Def.'s Mot. at 7.) However, the criminal standard of proof is immaterial here. The Court does not read Barry's report as conclusively establishing anything; rather, the Court reads Barry's findings as alleged facts incorporated into the complaint. In

particular, Goldman relies on Barry's determination that there was no "credible proof of any sexual conduct in this case, consensual or *non-consensual*." (OCDA Rpt. at 5 (emphasis added).) He also points to the absence of any male DNA evidence, and the fact that Reddington initially did not recall the incident. (Compl. at ¶¶ 6, 7, 8, 15, 35.) Goldman has pled "facts that, if proven, would allow a reasonable person to consider" Reddington's accusation false. *Tannerite Sports, LLC*, 864 F.3d at 245–47 (citations omitted). While the Court is sensitive to the exceedingly difficult task of corroborating claims of sexual assault, and has questions about the SANE examination and Title IX investigation, a motion to dismiss is an inappropriate forum to deal with these concerns. Reddington is free to renew her arguments regarding falsity in a motion for summary judgment following discovery.

Reddington also asks this Court to find that her statements were "substantially true" because there are merely "fine . . . distinctions" between her statements and "the truth" that Goldman acknowledges. (Def.'s Mot. at 7 (quoting *Tannerite Sports, LLC*, 864 F.3d at 243).) This theory falls flat – her statement that Goldman raped her, on the one hand, and his contention that the accusation is a deliberate lie, on the other hand, are worlds apart. Their narratives of what transpired would not have the same effect on any reader. On a motion to dismiss, without the benefit of discovery, and considering the Court's duty to read the allegations in the complaint as true, this Court cannot find that Reddington's statements were substantially true; that is, it cannot find that Goldman raped Reddington, especially when the OCDA arrived at a contrary conclusion. Instead, the Court finds that the facts alleged in the complaint and its attachments allow Goldman to satisfy the liberal pleading standard and plausibly allege that Reddington published false statements.

b. Actionable Mixed Opinion

Reddington next argues that the defamation count should be dismissed because the text message she sent to Goldman's friend in May 2018 referring to him as a "monster" is an opinion, and therefore constitutes protected speech. While hyperbole is typically not actionable, the Court finds that this statement survives as an actionable mixed opinion because it implies that it is based on facts, not disclosed to the reader, which support the opinion. *See Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (Conjecture may be actionable if it "impl[ies] that the speaker's opinion is based on [her] knowledge of facts that are not disclosed to the reader." (citations omitted)); *see also Daniels v. Kostreva*, No. 15-CV-3141 (ARR) (LB), 2017 WL 519227, at *5 (E.D.N.Y. Feb. 8, 2017) (statement that plaintiff is "not to be trusted" actionable); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 462 (S.D.N.Y. 2012) (statement that plaintiff was a "con man" actionable). In *Conti*, the court found that a "reasonable reader could discount the erratic and emotional tone" of text messages containing hyperbole and "nevertheless, view them as expressing underlying" statements of fact. 2019 WL 952281, at *5. Even if a reader could also reach the opposite conclusion, at this stage, the Court is tasked with assessing whether "*any* reading of the complaint supports a defamatory connotation." *Id*. (emphasis in original) (internal quotation marks omitted) (citation omitted). Here, given "the broader social context and surrounding circumstances," the recipient of the text could infer that Reddington called Goldman a monster to convey a fact, namely that he raped her. *Elias*, 872 F.3d at 110. The fact that the text predated her larger social media campaign is of no consequence, as Reddington was allegedly vocal about her accusations offline too, and this text message was sent after she "bragged" about Goldman's expulsion at the DKE house. (Compl. at ¶ 12.) The Court declines to bar Goldman from pursuing his claim with respect to the text because it may plausibly be read

as actionable mixed opinion.

### c. "Of and Concerning" Goldman

Reddington further argues that her June 6, 2018, Facebook review of NJIT is not actionable because it was not "of and concerning" Goldman. The post stated: "A school that accepts recently expelled rapists, despite it being marked on their transcript . . . ." (*Id*. at ¶¶ 49, 56.) Reddington argues that there was "no surrounding context," (Def.'s Mot. at 13), yet the review followed other social media posts, made two days earlier, in which she called Goldman a rapist, tagged NJIT, added a picture of Goldman, and linked to his social media pages. (*See* Compl. at ¶¶ 41, 42, 44, 56.) Because NJIT was tagged, it received a notification of her posts, and therefore, when it saw the review two days later, it presumably would have known that it referred to Goldman. While the review does not identify Goldman by name, it is plausible that those who knew him at the time would have known about the rape accusation and recognized that he was the subject of the review. The Court concludes that, drawing all reasonable inferences in his favor, a reasonable jury could conclude that the review on NJIT's Facebook page was "of and concerning" Goldman.

### d. Requisite Level of Fault

The parties dispute whether the statements at issue are "arguably within the sphere of legitimate public concern," and thus whether the gross irresponsibility standard applies. However, the Court need not reach the issue because even if gross irresponsibility is the requisite level of fault, Goldman satisfies that standard. The complaint repeatedly alleges that Reddington "knowingly" and intentionally made false statements. (*Id*. at ¶¶ 1, 3, 10, 14, 38.) On a motion to dismiss, the Court accepts this assertion as true, considering the additional facts pleaded by Goldman, such as the insufficiency of evidence to corroborate sexual assault and Reddington's

14

lack of memory. *See Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10, 18 (2d Dep't 1985) (plaintiff satisfied the "minimum requirements for stating a cause of action" by alleging that "defendant acted negligently, maliciously and with a reckless disregard for the truth"), *aff'd*, 67 N.Y.2d 778 (1986). Intentional lies not only satisfy, but surpass, the culpability of "gross irresponsibility," which signifies "something more than . . . negligence." *Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 875 (N.D.N.Y. 1994), *aff'd*, 112 F.3d 504 (2d Cir. 1996); *see also Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 255 (S.D.N.Y. 2014) (regarding knowing falsities as a level of fault "[b]eyond gross irresponsibility"); *Lopez v. Univision Commc'ns, Inc.*, 45 F. Supp. 2d 348, 362 (S.D.N.Y. 1999) (observing that at least one court has equated gross irresponsibility with "gross negligence"). Accordingly, the complaint sufficiently alleges that Reddington acted with the requisite level of fault and it cannot be dismissed on this basis.

   e. Facebook Message to Bohler

  Reddington also asserts that she cannot be held liable for the Facebook message to Bohler because she did not send the message. Goldman alleges that she did send the message, and that regardless, she "appears to take ownership" of it by posting a screenshot of the message and adding her own commentary "in celebration," stating that she felt "happy" that he was fired. (Compl. at ¶ 47.) Whether or not Reddington contacted Bohler directly or only reposted the exchange, it is widely recognized that "one who republishes a libel is subject to liability just as if he had published it originally . . . ." *Enigma*, 194 F. Supp. 3d at 287 (quoting *Cianci v. New York Times Publ'g Co.*, 639 F.2d 54, 60–61 (2d Cir. 1980)); *see also Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000); *Moritz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2017 WL 4785462, at *7 (S.D.N.Y. Oct. 19, 2017); *Biro*, 883 F. Supp. 2d at 461. Thus,

even if Reddington merely reposted the message, which a reader could infer repeated allegedly false accusations of rape, and included a caption calling Goldman a "monster," a reasonable jury could find that the Facebook post is defamatory. Because those who repeat another's defamatory statements are not sheltered from liability, Reddington's argument fails and her alleged lack of involvement in composing the message to Bohler is not a reason to dismiss the claim. Accordingly, Goldman may pursue his defamation claim with respect to republication of the message to Bohler.

    f. Injunctive Relief

Reddington also seeks dismissal of Goldman's request for injunctive relief, arguing that an injunction may violate her constitutional rights under the First Amendment. (Def.'s Mot. at 13–14.) However, a plaintiff's request for improper relief is an inappropriate basis for dismissal. *See Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 925–26 (2d Cir. 1968) ("[I]f the complaint was dismissed on the basis that the relief requested was inappropriate . . . the Court moved too quickly. . . . [A] complaint should not be dismissed for legal insufficiency except where there is a failure to state a claim on which some relief, not limited by the request in the complaint, can be granted."). The Court declines to entertain Reddington's argument on remedies at this time, because a "motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007).

As Reddington fails to articulate any theory that might preclude Goldman from having his day in court, she fails to defeat the allegations of defamation in the complaint.

## II. Tortious Interference

To survive a motion to dismiss a claim for tortious interference with prospective

economic advantage or business relations, a plaintiff must allege that he was "actually and wrongfully prevented from entering into or continuing in a specific business relationship." *Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, No. 17-CV-2913 (NGG) (RER), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017) (emphasis omitted) (quoting *Korn v. Princz*, 641 N.Y.S.2d 283, 283 (1st Dep't 1996)). In New York, a plaintiff must establish: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 114 (2d Cir. 2010) (internal quotation marks omitted) (citation omitted); *see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 241 (S.D.N.Y. 2018) (interference "must be direct"), *recons. denied*, No. 15-CV-4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018). The third element of "wrongful means" is satisfied where the defendant's conduct amounts to an independent tort. *See Gym Door Repairs, Inc.*, 331 F. Supp. 3d at 241; *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91 (2004).

Goldman has adequately pled all elements of tortious interference with prospective economic advantage or business relations. Reddington "specifically targeted" Goldman's relationships with Syracuse and Bohler, allegedly making "knowingly false statements designed to interfere" with his standing. (Compl. at ¶ 71.) Her direct communications with these institutions "evidence a calculated purpose . . . to convince these third parties to cease their business relationships with" him. (*Id*. at ¶ 72.) Although Reddington argues that her statements were driven by a desire to prevent further sexual assaults, (Def.'s Mot. at 15), Goldman satisfies the requirement of "wrongful means" by plausibly alleging that she committed the independent

17

tort of defamation.

Reddington also argues that Goldman has not suffered any injury attributable to her conduct, but he was expelled from his university and fired from his internship. If Reddington reported false accusations, and Goldman was subsequently expelled and fired, these amount to cognizable injuries. *See e.g.*, *Shah v. Lumiere*, No. 13-CV-2975 (LGS), 2013 WL 6283585, at *2 (S.D.N.Y. Dec. 3, 2013) (where plaintiff was terminated after defendants emailed false statements to his employer "designed to cause his termination"). Moreover, contrary to Reddington's theory, the fact that Syracuse conducted its own investigation does not eviscerate the complaint; if the investigation was premised on lies she propagated, then her interference would still be the primary cause and the "but for" cause of his expulsion. *See Gym Door Repairs, Inc.*, 331 F. Supp. 3d at 244–45 (stating that tortious interference with prospective business relations requires "but for" causation (citation omitted)).

Still, Goldman has failed to allege any injury related to his standing at NJIT. Reddington raised this issue in her motion, and Goldman failed to respond, essentially conceding the point by not contesting it. *See Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) (A plaintiff's "failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims." (internal quotation marks omitted) (citation omitted)); *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 354 (E.D.N.Y. 2013) (citing cases). In an affidavit submitted in connection with his Order to Show Cause, (Doc. No. 3), Goldman stated, "now I am nervous about my situation at NJIT as they are evaluating my standing at the university." (Aff. (Doc. No. 6) at ¶ 41.) However, the affidavit is not properly considered on this motion, as the Court "must limit its review to allegations raised or otherwise incorporated in the four corners" of the pleading. *Primiani*, 2019 WL 486087, at *4

(citations omitted); *see also In re Agape Litig.*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011). Moreover, the vague statement that Goldman is "nervous" does not allege any concrete harm, and thus fails to meet the threshold requirement of pleading injury. *See Primiani*, 2019 WL 486087, at *5 (finding vague speculation of harm inadequate). Accordingly, while Goldman is not foreclosed from pursuing his claim with respect to Syracuse and Bohler, his claim that Reddington interfered with his relationship with NJIT is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Reddington's motion to dismiss (Doc. No. 34) is denied in its entirety, except with respect to the tortious interference claim concerning NJIT, which is dismissed.

This case is recommitted to Magistrate Judge Lindsay for supervision of all pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York
September 27, 2019

*Roslynn R. Mauskopf*

---
ROSLYNN R. MAUSKOPF
United States District Judge