UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
                                                    :     Case No. 1:18-cv-03662-RPK-ARL
ALEX GOLDMAN,                                       :
                                                    :
                    Plaintiff,                      :     **ORAL ARGUMENT
                                                    :      REQUESTED**
        -against-                                   :
                                                    :
CATHERINE REDDINGTON,                               :
                                                    :
                    Defendant.                      :
-------------------------------------------------- x
```

**DEFENDANT CATHERINE REDDINGTON'S MEMORANDUM OF LAW
IN SUPPORT OF HER FEDERAL RULE OF CIVIL PROCEDURE 15(A)
MOTION FOR LEAVE TO FILE COUNTERCLAIMS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT  ...................................................................................................................... 4

   I.   STANDARDS GOVERNING FEDERAL RULE OF CIVIL PROCEDURE RULE
       15 MOTIONS ................................................................................................... 4

  II.   PLAINTIFF'S OPPOSITION FAILS BECAUSE HE CANNOT SHOW
       PREJUDICE. ..................................................................................................... 5

 III.   PLAINTIFF CANNOT POINT TO UNDUE DELAY, WHICH IS INSUFFICIENT
       TO DENY AMENDMENT. ................................................................................. 8

 IV.   DEFENDANT'S COUNTERCLAIM IS LEGALLY VIABLE, SUPPORTED BY
       EVIDENCE, AND NOT FUTILE. ..................................................................... 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
　47 F.3d 47 (2d Cir. 1995) .................................................................................. 4

*Benoit v. Com. Cap. Corp.*,
　No. 03-CV-5328 (PKL), 2008 WL 39110070 (S.D.N.Y. Aug. 25, 2008) .............................. 6, 7

*Block v. First Blood Associates*,
　988 F.2d 344 (2d Cir. 1993) ................................................................................ 6

*Campbell v. Mercury Cas. Co.*,
　No. 17CV0618SJFARL, 2018 WL 3135850 (E.D.N.Y. June 26, 2018) ................................ 9

*City of New York v. Grp. Health Inc.*,
　649 F.3d 151 (2d Cir. 2011) ................................................................................ 5

*Ferring B.V. v. Serenity Pharm., LLC*,
　No. 17 CIV. 9922, 2019 WL 117316 (S.D.N.Y. Jan. 7, 2019) ...................................... 5, 13, 15

*Foman v. Davis*,
　371 U.S. 178 (1962) ...................................................................................... 4, 5

*Green v. Wolf Corp.*,
　50 F.R.D. 220, 223 (S.D.N.Y.1970)........................................................................ 9

*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973) ............................................... 8, 9

*Innomed Labs, LLC v. Alza Corp.*,
　No. 01-CV-8095, 2002 WL 1628943 (S.D.N.Y. July 23, 2002) .................................... 15

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ............................ 9

*Lease Acceptance Corp. v. Bank of Am. Corp.*,
　No. 08-CV-4673 (JS)(ETB), 2010 WL 11629607 (E.D.N.Y. Jan. 14, 2010)...................... 4, 6

*Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06CV1446 (ADS)(ETB), 2008
　WL 11435690 (E.D.N.Y. July 1, 2008) ................................................................. 15

*Middle Atlantic Utilities Co. v. S.M.W. Development Co.*,
　392 F.2d 380 (2d Cir. 1968) ........................................................................... 8, 9

*Primetime 24 Joint Venture v. DirecTV, Inc.*,
　No. 99CIV.3307(RMB)(MHD), 2000 WL 426396 (S.D.N.Y. Apr. 20, 2000)................... 7, 13

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
　46 F.3d 230 (2d Cir.1995)................................................................................. 8

*Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647 (2d Cir. 1987) ...................................... 9

*State Teachers Retirement Bd. v. Fluor Corp.,*
654 F.2d 843 (2d Cir. 1981) ..................................................................... 5, 8, 9

*Sumitomo Electric Research Triangle v. Corning Glass Works*,
109 F.R.D. 627 (S.D.N.Y. 1986) ............................................................... 15

*Zeigan v. Blue Cross and Blue Shield,*
607 F.Supp. 1434 (S.D.N.Y.1985) ............................................................ 9

**Statutes**

C.P.L.R. 213-c ....................................................................................... 11, 12, 16

C.P.L.R. 215(3) ............................................................................................. 11

Fed. R. Civ. P. 15(a)(2) ................................................................................... 4

Fed. R. Civ. P. 16(b) ............................................................................... 1, 8, 15

## INTRODUCTION

Defendant Catherine Reddington seeks leave pursuant to Federal Rule of Civil Procedure 15(a) to amend her pleadings in this matter and add counterclaims against Plaintiff Alex Goldman for intentional assault and battery and intentional infliction of emotional distress ("IIED") based on his sexual assault of Ms. Reddington.[1] Plaintiff opposes the proposed amendment, but supplies no factually or legally supportable reasons for his opposition. Ms. Reddington seeks this amendment in good faith and in the interest of justice, pursuant to Federal Rule of Civil Procedure 16(b). Because Plaintiff cannot meet his burden to show he will be unfairly prejudiced by the proposed amendment, or that Ms. Reddington has acted in bad faith, the amendment should be allowed.

## FACTS

On April 22, 2017, Plaintiff and Ms. Reddington attended a party at Plaintiff's fraternity house at Syracuse University, where they both consumed alcohol prior to and during the party. At approximately 12:30 am on April 23, 2017, Ms. Reddington and Plaintiff went to Plaintiff's room together, where they remained until approximately 10:30 am on April 23, 2017. No one else entered the room during that time. When Ms. Reddington awoke, she was lying on Plaintiff's bed with her clothing on, but her shoes and other items had been neatly placed in his room. Plaintiff had his hand on her genital area, rubbing near her clitoris but not actually reaching her vagina. The leotard she was wearing had been torn. She initially did not know where she was and felt frightened, mentally cloudy, and extremely confused about what had occurred during the previous 10 hours while in Plaintiff's room. She got up and left Plaintiff's room to return home at

---

[1] A copy of the proposed Amended Answer and Affirmative Defenses to Complaint, Demand for Jury Trial, and Counterclaims is attached as Exhibit A.

approximately 10:30 am on April 23, 2017.  Ms. Reddington felt pain in her vagina and soreness throughout her body, felt unsteady on her feet, and had difficulty walking and sitting.

When she got home, she took off her clothes and noticed that her underwear and the crotch of her leotard were stained by what appeared to be a large amount of blood.  Feeling that she may have been sexually assaulted by Mr. Goldman while she was incapacitated, the next day, on April 24, 2017, Ms. Reddington went to Crouse Hospital complaining of vaginal pain and bleeding and seeking treatment and testing.  She told hospital staff she believed she may have been sexually assaulted at the fraternity house and she was initially confused by her lack of memory and suspected that she may have been involuntarily drugged.  During this hospital visit, hospital staff observed that Ms. Reddington had injuries including bruises to her body and tears to her labia.  A nurse at the hospital administered a Sexual Assault Nurse Examination ("SANE") and a toxicology screening exam to Ms. Reddington.  Ms. Reddington subsequently sought further medical and psychiatric treatment for the physical and psychological injuries that she suffered while in Mr. Goldman's room during the early morning of April 23, 2017, including post-traumatic stress disorder ("PTSD"), trauma to her anus, and contusions to her head.  And over time, with treatment, Ms. Reddington became more able to process and articulate her fragmented memories of what Plaintiff had done to her.

Ms. Reddington reported the alleged sexual assault to the Syracuse Police Department ("SPD") in May 2017. In June 2017, Ms. Reddington also reported the alleged sexual assault to Syracuse University's Title IX office. The SPD "believed there was no evidence a sexual assault occurred," and the Onondaga County District Attorney's Office ("OCDA") thereafter declined to charge Plaintiff with a crime.  The Syracuse University Title IX office, however, conducted its own investigation into Ms. Reddington's sexual assault complaint and determined that the

preponderance of the evidence demonstrated that the Plaintiff, Alex Goldman, violently sexually assaulted Ms. Reddington while she was incapacitated and unable to give consent. After a hearing, Syracuse University determined that Plaintiff had inserted an unknown object in Ms. Reddington's vagina and expelled him from the university.

Plaintiff alleges that after he was expelled from Syracuse University, in June 2018, Ms. Reddington made defamatory statements about him, most notably in a Facebook post (and duplicate LinkedIn post) from Ms. Reddington's social media accounts. Plaintiff believes "[t]hese statements were false when made and Defendant knew they were false – based on her repeated inability to recall the events of the night in question and the findings of the SPD and OCDA investigations…." (DE 1, at ¶ 15). On June 25, 2018, Plaintiff sued Ms. Reddington for defamation and tortious interference. (DE 1, at ¶¶ 51-79). Ms. Reddington's primary defenses to Plaintiff's claims relate to the truthfulness and good faith of the statements at issue – in particular, that Plaintiff forcibly raped and sodomized her while she was incapacitated in his room on April 23, 2017.

Since January 2020, the parties have been diligently conducting discovery. Document discovery has been voluminous, and the scope of discovery broad. Ms. Reddington has already provided virtually all of the relevant, non-privileged documents in her possession, custody, and control related to the relevant events, including the sexual assault itself. Ms. Reddington has produced over 700 emails, hundreds of social media communications, over 4,600 text messages, her medical and therapy records, all law enforcement and OCDA documents obtained from her Freedom of Information Law requests, and dozens of photographs of her injuries after the sexual assault. See Declaration of Sandra Musumeci ("Musumeci Declaration") at ¶2. Ms. Reddington has even provided Plaintiff with written authorizations to speak with her therapists. *Id*. at ¶4.

Plaintiff has in his possession the police reports, the lead detective's handwritten notes, the OCDA file and forensic reports, and the full Syracuse University Title IX investigation report. Plaintiff has also deposed the prosecutor, detective, and Syracuse University Title IX investigator, extensively questioning each of them regarding Ms. Reddington's sexual assault allegations. *Id*. at ¶¶5-6. The parties have also deposed three fraternity members who were present at the party about their observations and knowledge of the events leading up to and occurring after the assault, as well as another female student who told Ms. Reddington that she too had been raped by Plaintiff. *Id*. at ¶5.d. On July 28, 2020, Ms. Reddington provided over 7 hours of sworn testimony at her deposition, during which counsel for Plaintiff subjected her to extensive questioning regarding her interactions with Plaintiff, the sexual assault, and the aftermath. *Id*. at ¶¶7-8. Ms. Reddington testified in detail as to her traumatic memories of being dragged, held down, and vaginally and anally penetrated while in Plaintiff's room.

## ARGUMENT

I. STANDARDS GOVERNING FEDERAL RULE OF CIVIL PROCEDURE RULE 15 MOTIONS.

Federal Rule of Civil Procedure 15(a) states that "a court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has made clear that "this mandate is to be heeded," and that leave to amend should be given in the absence of undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "Amendment is therefore typically permitted." *Lease Acceptance Corp. v. Bank of Am. Corp.*, No. 08-CV-4673 (JS)(ETB), 2010 WL 11629607, at *2 (E.D.N.Y. Jan. 14, 2010), (*citing Foman*, 371 U.S. at 182 (1962)). "[T]here must be good reason to deny the motion.'" *Id*. (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

"The court should consider whether (1) the moving party unduly delayed or acted in bad faith, (2) the amendment would be futile, or (3) the amendment would cause the non-moving party unfair prejudice." *Id*. (*citing Foman*, 371 U.S. at 182). Delay alone, however, "absent a showing of bad faith or undue prejudice does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (district court abused its discretion in denying leave where "[t]he amended claim was obviously one of the objects of discovery and related closely to the original claim").

"The rule in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011). "When the non-moving party asserts that the movant is acting in bad faith, 'there must be something more than mere delay or inadvertence for the court to refuse to allow amendment, such as seeking to derive some unique tactical advantage through their amendment." *Ferring B.V. v. Serenity Pharm., LLC*, No. 17 CIV. 9922, 2019 WL 117316, at *2 (S.D.N.Y. Jan. 7, 2019) (internal citation omitted).

## II.    PLAINTIFF'S OPPOSITION FAILS BECAUSE HE CANNOT SHOW PREJUDICE.

Trial has not been set. The parties have not yet filed their summary judgment motions. Ms. Reddington has already provided virtually all of the relevant documents in her possession, custody, or control related to the sexual assault, the subsequent investigations, and her alleged defamatory statements. Yet Plaintiff insists – in the vaguest of terms – he will somehow suffer unfair prejudice by permitting Ms. Reddington to file counterclaims which are supported by the discovery that has already been conducted. This is not sufficient to meet his burden of demonstrating prejudice.

In determining what constitutes "prejudice," courts in this circuit consider whether the assertion of the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the

dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). "Whereas a party's motion to amend may be denied if the scope of additional discovery would be significant . . . it should be granted where it 'does not call for a new set of facts, but rather largely stems from the discovery that has already occurred[.]'" *Lease Acceptance*, 2010 WL 11629607, at *2 (*citing Benoit v. Com. Cap. Corp.*, No. 03-CV-5328 (PKL), 2008 WL 3911007, at *10 (S.D.N.Y. Aug. 25, 2008)).

Plaintiff argues (but does not show) that amendment would require significant additional resources on his part to conduct additional discovery and significantly delay the resolution of the dispute. He is wrong on both accounts.

First, given the expansive scope and vast amount of discovery already conducted in this litigation – as well as Plaintiff's focus on the validity of and evidence supporting Ms. Reddington's sexual assault allegations – Plaintiff's argument that amendment would require "significant" additional resources strains credibility. In response to Plaintiff's written discovery requests, Ms. Reddington conducted an exhaustive (and costly) search and review of her records and turned over virtually everything she had related to the sexual assault. As noted above, this included over 700 emails, 4,600 text messages, hundreds of social media communications, dozens of photographs, obtained FOIL records, medical records, and therapy records. Ms. Reddington submitted to 7-and-a-half hours of in-person deposition questioning, at which she provided extensive testimony regarding her recollection of the sexual assault. Plaintiff has also deposed SPD Detective Michael Bates and Assistant OCDA Maureen Barry, focusing primarily on the evidence they collected and reviewed regarding the sexual assault. He did the same with Syracuse University Title IX investigator Bernerd Jacobson. The parties have deposed three DKE fraternity members who provided first-hand accounts of their recollections of the events leading up to and following the

sexual assault. What additional discovery could Plaintiff possibly wish to conduct at this point which would cause him to incur "significant" additional resources? Other than possibly financial records to substantiate Ms. Reddington's damages, Plaintiff can provide no credible answer. *See Benoit*, 2008 WL 3911007, at *10 (S.D.N.Y. Aug. 25, 2008) (finding no prejudice where defendant's proposed amendment "does not call for a new set of facts, but rather largely stems from the discovery that has already occurred," also noting plaintiff "does not specify how the scope of his discovery would have changed").

Second, Plaintiff does not show how the litigation's resolution will be "significantly" delayed by permitting Ms. Reddington's proposed amendment. No trial date has been set, the parties have not yet filed summary judgment motions, and as noted above, nearly all of the relevant discovery has already been conducted. Plaintiff will no doubt argue a need for time to conduct additional discovery related to Ms. Reddington's proposed counterclaims, but again, he will be unable to credibly demonstrate precisely what more he will require that will cause significant delay. A central issue in this case has been the truth of Ms. Reddington's statements that Plaintiff sexually assaulted her; as explained above, Plaintiff has already conducted extensive discovery focusing on the sexual assault. Axiomatically, that same discovery also supports Ms. Reddington's proposed counterclaim that Plaintiff sexually assaulted her. To the extent Plaintiff can articulate a specific basis for additional discovery, such additional discovery would be minimal at best and could not plausibly result in "significant" delay. *See Primetime 24 Joint Venture v. DirecTV, Inc.*, No. 99CIV.3307(RMB)(MHD), 2000 WL 426396, at *6–7 (S.D.N.Y. Apr. 20, 2000) (finding "additional discovery, although possibly necessary, will not materially delay the completion of pretrial proceedings in this case" where plaintiff argued there will be more time needed to obtain

expert and fact discovery, "and even if additional depositions are necessary, there is time to complete them.").

Prejudice resulting from a proposed amendment is the "most important" factor in determining whether to allow an amendment of pleadings, such as the addition of counterclaims here. *State Teachers*, 654 F.2d at 856 (2d Cir. 1981). Though he will undoubtedly try to assert prejudice, Plaintiff cannot genuinely demonstrate any actual prejudice from the proposed amendment. The Court should permit the proposed amendment and allow the counterclaims.

III. **PLAINTIFF CANNOT POINT TO UNDUE DELAY, WHICH IS INSUFFICIENT TO DENY AMENDMENT.**

Unable to demonstrate prejudice, Plaintiff's opposition (as set forth in his letter response to Defendant's request for a pre-motion conference (DE 72)) instead focuses on the delay in bringing the proposed counterclaims, baselessly arguing that Ms. Reddington has acted in bad faith. As with prejudice, Plaintiff cannot meet his burden to show Ms. Reddington has unduly delayed or acted in bad faith to attain some unfair advantage.

First, it is well-established that "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers*, 654 F.2d at 856 (citing *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973); *Middle Atlantic Utilities Co. v. S.M.W. Development Co.*, 392 F.2d 380, 384 (2d Cir. 1968)). *See also See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339 (2d Cir.2000) (same); *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234-35 (2d Cir.1995) (same). Although Ms. Reddington's request comes 7 months after the time for pleading counterclaims set in the Scheduling Order (DE 48-1),[2] "[t]he interval between the filing of the original answer and

---

[2] Pursuant to Fed.R.Civ.P. 16(b)(4), good cause exists to modify the Scheduling Order for purposes of allowing this amendment. As set forth herein, the defense has demonstrated diligence in developing the evidence to support the counterclaims, no prejudice will result to Plaintiff, and

the attempt to amend is no greater in the present case than in many cases in which amendments to the pleadings have been allowed." *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (citing *State Teachers,* 654 F.2d at 845–46 (amendment allowed after three-year interval); *Howey,* 481 F.2d at 1188–89 (amendment allowed after five-year interval and on second day of trial); *Middle Atl. Utils.,* 392 F.2d at 383 (2d Cir.1968) (amendment allowed after three-year interval and notice of trial readiness); *Zeigan v. Blue Cross and Blue Shield,* 607 F.Supp. 1434, 1438 (S.D.N.Y.1985) (amendment allowed after three-year interval); *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970) (amendment allowed after four-year interval)). *See also Campbell v. Mercury Cas. Co.*, No. 17CV0618SJFARL, 2018 WL 3135850, at *3 (E.D.N.Y. June 26, 2018) (adopting Magistrate Judge Lindsay's recommendation to permit amendment and the addition of a counterclaim, over plaintiff's claims of undue delay and prejudice.).  In other words, the timing of the motion to amend the pleadings should not be determinative in and of itself.

Plaintiff also argues that Ms. Reddington was aware of the facts supporting her proposed counterclaims earlier. But Ms. Reddington's ability to file counterclaims earlier does not provide a reason to deny leave to amend, as "parties in such cases have been permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims." *Richardson Greenshields*, 825 F.2d at 653 n.6 (citing *Middle Atl. Utils.,* 392 F.2d at 385 (plaintiff was aware of facts supporting new claims two years before filing of original complaint); *Green,* 50 F.R.D. at 223 (plaintiff was aware of facts asserted in amended complaint from outset of case); *see generally Howey,* 481 F.2d at 1191 ("the mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend")).

---

allowing the counterclaims to proceed would serve the interest of justice.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

The reasons why the defense has not sought to file counterclaims until now do not bespeak bad faith or an attempt to gain an unfair tactical advantage. To the contrary, the delay speaks to the defense's prudence and attention to the evidence. First of all, Ms. Reddington did not ask to be involved in this situation at all. She certainly did not seek to be sexually assaulted, and then, after she bravely voiced her story about that traumatic assault and its aftermath as a matter of public concern, she did not ask to be dragged into litigation that would subject her to further scrutiny, invade her privacy, deplete the time and resources of her and her family, and force her to revisit and recount the most painful experiences of her life again. Plaintiff's lawsuit has had the effect of re-victimizing Ms. Reddington and impeding her ability to heal from the trauma of her assault and move on with her life. Throughout this litigation, Ms. Reddington has steadfastly maintained the truth of her allegations that Plaintiff Alex Goldman raped and sodomized her. But as the defendant in this litigation, she did not bear the burden of once again having to prove that she was sexually assaulted. The burden of proving the falsity of Ms. Reddington's sexual assault claims fell solely upon the Plaintiff, Mr. Goldman. Given the documented psychological trauma that Ms. Reddington endured at the hands of Plaintiff, compounded by the disillusionment she experienced from her negative interactions with law enforcement officials, asking Ms. Reddington to take on, once again, the battle of proving that Plaintiff sexually assaulted her has been a challenging prospect.

Indeed, it has not always been clear that Ms. Reddington could actually assert viable counterclaims against Mr. Goldman given statute of limitations issues. *See* Musumeci Declaration ¶12. At the time that Plaintiff first brought his defamation and tortious interference claims against Ms. Reddington, in July 2018, more than one year had elapsed since the sexual assault itself in April 2017. In general, civil claims for assault and battery and IIED in New York must be brought

within one year after the causes of action accrue, C.P.L.R. 215(3), unless they fall within a narrow range of serious sexual assault offenses as defined by the Penal Law. *See* C.P.L.R. 213-c. If a civil claim for "physical, psychological or other injury or condition suffered" is based on conduct that would constitute, *inter alia*, Rape in the First Degree or Aggravated Sexual Abuse in the First Degree under the Penal Law, then the claims may be brought within twenty years of the time that they accrued.[3] Defense counsel only recently determined that the provable facts regarding Plaintiff's sexual assault of Ms. Reddington satisfied the more generous statute of limitations provided by C.P.L.R. 213-c. *See* Musumeci Declaration at ¶12.

In fact, as discovery has progressed, the defense's ability to prove Ms. Reddington's sexual assault claims against Plaintiff has gotten stronger. First, Ms. Reddington's ability to describe what Plaintiff did to her on April 23, 2017 has improved as she has continued treatment for PTSD. As amply documented in the psychiatric records that have been produced to Plaintiff, Ms. Reddington experienced severe PTSD following the sexual assault. Her disassociated memories – along with potentially having been involuntarily drugged at the fraternity house – impeded her ability to process and articulate the details of Plaintiff's actions toward her in the early morning of April 23, 2017. But through continued therapy and treatment,[4] Ms. Reddington has made

---

[3] Previously, C.P.L.R. 213-c provided for a five-year statute of limitations for civil actions based on injuries resulting from conduct that would constitute certain serious sexual offenses. In late 2019, New York State passed the highly-touted S.6574/A.8412 that extended the statute of limitations for such conduct to twenty years.

[4] Plaintiff has consistently sought to mischaracterize Ms. Reddington's psychiatric treatment as an effort to "recapture" or "recreate" memories. But the psychiatric records produced document that Ms. Reddington has been treated by credentialed professionals, including a respected clinical psychologist who specializes in treating post-traumatic stress disorder, using non-suggestive clinically and forensically sound approaches to help her accept and process traumatic memories with a lesser degree of emotional charge and without the dissociative reflex. Moreover, the focus of therapy has been Ms. Reddington's mental and emotional health, not trying to "recapture" memories for purposes of litigation.

significant progress in being able to process, confront, and now articulate the traumatic memories that she had previously suppressed. *See* Musumeci Declaration, at ¶9. At her deposition on July 28, 2020, Ms. Reddington was able to testify about the details of Plaintiff's conduct toward her, including physically dragging her by the arms, penetrating her anally with an unknown object, and raping her vaginally with his penis while holding her arms down. These are details that support her proposed counterclaims and place them squarely within the realm of C.P.L.R. 213-c.

In addition, discovery has revealed that the physical evidence that Ms. Reddington provided to law enforcement officials in April 2017 supports her sexual assault allegations much more than police and prosecutors ever disclosed. Laboratory records produced by the OCDA (and never previously disclosed to Ms. Reddington because they were dated after law enforcement declined to prosecute her sexual assault complaint) indicate the presence of male DNA inside Ms. Reddington's underwear, and discovery has confirmed that the prosecutor never submitted the DNA for further testing. *See* Musumeci Declaration at ¶10-11 and Exhibit 2 attached thereto. Defense counsel has been working for several months with the OCDA, the Onondaga County lab, and a private laboratory to complete further testing of this DNA evidence, which Ms. Reddington believes will provide further evidence that Plaintiff sexually assaulted her. *Id*. Moreover, the defense just recently was able to secure Ms. Reddington's leotard and shorts from Onondaga County authorities so that they also could be forensically tested (because they never were), and preliminary results suggest that they too contain stains of bodily fluids with male DNA. *Id*. These factors make Ms. Reddington's counterclaims more viable than they might have been several months ago.

In his August 11, 2020 letter to the Court (DE 72), Plaintiff asserts Ms. Reddington has acted in bad faith by waiting until now to assert counterclaims. She has not. As noted above,

Plaintiff has the burden of demonstrating bad faith, and he must assert something more than mere delay, "such as seeking to derive some unique tactical advantage through [the] amendment." *Ferring*, 2019 WL 117316, at *2. *See also Primetime 24*, 2000 WL 426396, at *6 ("Absent such a strategic purpose for withholding the defense, PrimeTime is only pointing to DirecTV's delay, and delay standing alone is insufficient to warrant denying a party leave to amend."). The closest Plaintiff comes is his attempt to point to Ms. Reddington's recently completed deposition, but this rings hollow. As described above, Plaintiff's counsel extensively questioned Ms. Reddington about her recollection of the sexual assault, and she answered fully and truthfully during her 7-and-a-half hours of sworn testimony. Even if Plaintiff could articulate some need for additional deposition testimony to explore facts which uniquely relate to the proposed counterclaims – highly unlikely, given the extensive scope of discovery and disclosure in this case – there is still time to do so.[5] *See Primetime 24*, 2000 WL 426396, at *6 ("even if additional depositions are necessary, there is time to complete them.").

The discovery demanded by Plaintiff in this litigation has been overly broad, ranging far beyond the alleged defamatory statements or the elements necessary to prove his claims. Plaintiff has effectively sought to relitigate the sexual assault itself and treated Ms. Reddington's defense that her challenged statements were true as if it were an affirmative counterclaim. For example, in mid-June Plaintiff demanded that Ms. Reddington produce all of her therapy records previously withheld on the basis of physician-patient privilege, arguing (incorrectly) that she, not Plaintiff,

---

[5] It bears noting that the defense's deposition of Plaintiff had been scheduled for August 11, 2020. When the defense first disclosed its intent to seek leave to file counterclaims on August 5, Plaintiff's counsel immediately sought to postpone Plaintiff's deposition. In another show of good faith, defense counsel consented to Plaintiff's request (making clear that it was not waiving Ms. Reddington's right to depose Plaintiff Goldman). This deposition will be rescheduled at an appropriate and mutually convenient time.

had put her trauma at issue in this litigation. *See* Musumeci Declaration, at ¶¶3-4, and appended Exhibit 1 ("Ms. Reddington claims she is traumatized from the alleged sexual assault and visited therapists for memory retrieval—both of which are relevant and put into controversy by Ms. Reddington and her defense that her statements regarding Mr. Goldman are truthful.").  Of course, for his defamation and tortious interference claims, Plaintiff bears the burden of proving that the challenged statements were false, and Ms. Reddington disagrees that she "put at issue" her traumatization as a result of the sexual assault.  Although she never intended to waive her patient-physician privilege and provide records post-dating the filing of the complaint, Ms. Reddington voluntarily agreed to provide her records to avoid motion practice on this issue. *See id*. at ¶¶3-4. The fact that Ms. Reddington voluntarily turned over these very sensitive privileged therapy records at Plaintiff's request further demonstrates a lack of bad faith and further supports permitting Ms. Reddington to bring her counterclaims of sexual assault and battery and IIED.

Ms. Reddington's sexual assault at the hands of Mr. Goldman – as well as the instigation of this vexatious lawsuit against her – has come at a profound emotional cost for Ms. Reddington and her family.  She never wanted to be embroiled in litigation with Plaintiff; she only wanted the opportunity to speak openly about what happened to her so that she could shed light on systemic issues with sexual violence and law enforcement's treatment of victims, prevent further assaults by Plaintiff, empower other women who had been victimized, and help herself heal.  But she finds herself at this juncture.  Her resilience has been tested through this litigation – including most recently at her deposition where she was compelled to recount (and reexperience) the trauma she has suffered – but Ms. Reddington has remained strong and resolute.  The proposed counterclaims and the decision to file them now are not a gambit to seek an unfair tactical advantage; Ms. Reddington has good cause for asserting these counterclaims now because the evidence that has

developed supports that she has viable claims that are not time-barred, and she seeks justice from the person who has taken so much away from her. Given the lack of prejudice, the diligence of the defense, and Ms. Reddington's right to seek to hold Plaintiff accountable for the injuries he caused her, there is good cause to grant the proposed amendment and allow the counterclaims. *See* Fed.R.Civ.P. 16(b)(4); *see also Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06CV1446 (ADS)(ETB), 2008 WL 11435690, at *2 (E.D.N.Y. July 1, 2008) (good cause under Fed. R. Civ. P. 16(b) exists where, as here, the moving party has been diligent and there is no demonstrated prejudice to the nonmoving party).

## IV.  DEFENDANT'S COUNTERCLAIM IS LEGALLY VIABLE, SUPPORTED BY EVIDENCE, AND NOT FUTILE.

Finally, there is no sound argument that the proposed counterclaims would be futile. "Futility ... is a minimal standard to overcome – perhaps the lowest bar." *Innomed Labs, LLC v. Alza Corp.*, No. 01-CV-8095, 2002 WL 1628943, at *2 (S.D.N.Y. July 23, 2002). The court must only "satisfy itself that it is colorable and not frivolous." *Sumitomo Electric Research Triangle v. Corning Glass Works*, 109 F.R.D. 627, 628 (S.D.N.Y. 1986). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." *Ferring*, 2019 WL 117316, at *2 (internal citations omitted).

The evidence supports Ms. Reddington's proposed counterclaims stemming from conduct which would constitute Rape in the First Degree and Aggravated Sexual Abuse in the First Degree[6] if charged criminally under the New York Penal Law.  The proposed counterclaims against

---

[6] In its letter seeking a pre-motion conference regarding this motion for leave to file counterclaims (DE 71), the defense inadvertently cited the offense of Criminal Sexual Act in the First Degree rather than the offense that actually fits Plaintiff's conduct of inserting an unknown object into Ms. Reddington's anus, Aggravated Sexual Abuse in the First Degree.

Plaintiff for assault and battery and IIED based on his sexual assault are well within the 20-year period of limitations, as recently amended. *See* C.P.L.R. 213-c (authorizing "a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant" constituting various, enumerated sex crimes.)

Both of Ms. Reddington's proposed counterclaims, set forth in the attached Exhibit A, are properly pled, factually supported by the evidence, and permitted under C.P.L.R. 213-c, which authorizes civil actions stemming from sexual assaults. Ms. Reddington's claims are therefore not futile and should be permitted.

## CONCLUSION

For the foregoing reasons, Defendant Catherine Reddington asks this Court to grant her Federal Rule of Civil Procedure 15(a) Motion for Leave to Plead Counterclaims, and grant any other further relief the Court deems just.

Date: September 3, 2020

Respectfully Submitted,

*/s/ Sandra L. Musumeci*
Sandra L. Musumeci
Brittney L. Denley
RILEY SAFER HOLMES & CANCILA LLP
200 Vesey Street, 24th Floor
New York, New York 10281
Phone: 212-660-1000
Fax: 212-660-1001
Email: smusumeci@rshc-law.com
         bdenley@rshc-law.com

Matthew P. Kennison (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
121 W. Washington, Suite 402
Ann Arbor, Michigan 48104
Phone: 734-773-4911
Fax: 734-773-4901

Email: mkennison@rshc-law.com

*Attorneys for Catherine Reddington*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on September 3, 2020, she caused a true and correct copy of the foregoing document to be served using the Court's electronic filing system on all registered e-filers, which will send electronic notification of such filing to all parties that have appeared in this action.

*/s/ Sandra L. Musumeci*
Sandra L. Musumeci
