```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALEX GOLDMAN,

                          Plaintiff,                     REPORT AND
                                                         RECOMMENDATION
            -against-                                    18-CV-3662 (RPK) (ARL)

CATHERINE REDDINGTON,

                          Defendant.
-------------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

Before the Court, on referral from District Judge Kovner, are the defendant's motions for leave to file counterclaims. On October 2, 2020, the defendant, Catherine Reddington ("Reddington"), sought leave to add counterclaims against the plaintiff, Alex Goldman ("Goldman"), for assault and battery and intentional infliction of emotional distress based on his alleged 2017 sexual assault of Reddington.[1] That motion was referred to the undersigned on August 12, 2020. However, before the Court could address the first motion, Reddington filed a second motion seeking leave to supplement her first motion to add an additional counterclaim and an affirmative defense against Goldman pursuant to New York's Anti-SLAPP ("Strategic Lawsuits Against Public Participation") statute, N.Y. Civ. Rights Law §§ 70-a and 76-a. Goldman opposes the motions. For the reasons stated below, the undersigned recommends that the motions be granted, in part, and denied, in part.

## BACKGROUND

### A. Factual Averments

On June 25, 2018, Goldman commenced this action against Reddington alleging that Reddington had engaged in a pattern and campaign of aggressive public harassment and made

---

[1] Reddington withdrew the request to add a counterclaim for intentional infliction of emotional distress in her reply.

knowingly false statements against him in an attempt to destroy his educational and career prospects, his personal relationships with members of the community, his academic relationship with institutions of higher education and his employment opportunities. ECF No. 1. Specifically, Goldman alleges that Reddington publicly tarnished his reputation and wreaked havoc on his personal life and that of his family when she made numerous posts on social media platforms accusing Goldman of sexual assault. *Id.*

According to Reddington, on April 22, 2017, she and Goldman attended a party at Goldman's fraternity house at Syracuse University, where they both consumed alcohol prior to and during the party. Def.'s Mem at 1, ECF No. 78-1. At approximately 12:30 a.m., on April 23, Goldman and Reddington went to Goldman's room where Reddington alleges that she was sexually assaulted. Notably, Reddington claims that she woke up ten hours later in Goldman's room and was extremely confused about what had occurred during the previous hours. *Id.* at 2. However, her leotard had been torn and she felt pain in her vagina. When she got home, Reddington also noticed that her underwear and the crotch of her leotard were blood-stained. *Id.*

Feeling that she may have been sexually assaulted while she was incapacitated, Reddington went to Crouse Hospital seeking treatment and testing. *Id.* Reddington subsequently sought further medical and psychiatric treatment for the physical and psychological injuries that she says suffered while in Goldman's room, including post-traumatic stress disorder ("PTSD"), trauma to her anus, and contusions to her head. Sometime in May 2017, Reddington reported the alleged sexual assault to the Syracuse Police Department ("SPD"). *Id.* In June 2017, Reddington also reported the alleged sexual assault to Syracuse University's Title IX office. *Id.* The SPD found that "there was no evidence a sexual assault occurred." Accordingly, the Onondaga County District Attorney's Office ("OCDA") declined to charge Goldman with a

crime. *Id.* 2-3. The Syracuse University Title IX office conducted its own investigation and concluded that Goldman had assaulted Reddington while she was incapacitated and unable to give consent. *Id.* at 3. As a result, Goldman was expelled from the university. *Id.* Goldman claims that after he was expelled, Reddington continued to make defamatory statements about him, most notably in Facebook and LinkedIn posts. Goldman maintains that the statements were false and highlights the fact that Reddington has consistently acknowledged her inability to recall the events. *Id.*

### B. Procedural History

As noted above, Goldman commenced the instant action against Reddington in June 2018 asserting claims of defamation and tortious interference with prospective economic advantage and business relations. ECF No. 1. In October 2018, Reddington filed a motion to dismiss the complaint. In September 2019, Judge Mauskopf denied the motion except as to Goldman's claim that he suffered an injury with respect to his standing at New Jersey Institute of Technology. ECF No. 44. Accordingly, on October 11, 2019, Reddington filed an answer to the complaint. Her primary defenses relates to the alleged truthfulness and good faith of her statements, particularly that she was raped and sodomized on April 23, 2017.

On October 15, 2019, the undersigned scheduled an initial conference for November 13, 2019. During the November conference, the Court established January 17, 2020 as the deadline for filing motions to amend or join new parties. ECF No. 52. Since then, the parties have been diligently conducting discovery. Although the deadline for conducting discovery and commencing dispositive motion practice has been extended several times, the parties never sought to extend the deadline for seeking to amend the pleadings.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07–CV–3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (*per curiam*) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."). Nevertheless, where, as here, a Court has issued a scheduling order, pursuant to Rule 16, such an order "may be modified only for good cause." Fed. R. Civ. P. 16(b). Thus, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

In this case, the defendant, as the movant, has the burden of proving good cause. *Ahmed v. Astoria Bank*, No. 14-CV-4595, 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "A party has not acted diligently where the proposed amendment to the pleading is based on information that the party knew, or should have known, in advance of the deadline sought to be extended. *Ahmed,* 2015 WL 4394072, at *2 (citations and internal quotation marks omitted). "Although diligence is the primary focus of a 'good cause' analysis, a court may, in its discretion, also consider other factors, such as whether 'allowing the amendment of the pleading

at this stage of the litigation will prejudice defendants.'" *Id*. (quoting *Kassner v. 2nd Ave Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007)). Once a court determines that good cause has been satisfied, the court then turns to whether the liberal standards of Rule 15 have been met. *Id*.

As noted above, in this case, Reddington's deadline to amend her Answer was January 17, 2020. Almost nine months later, Reddington filed the first motion to amend seeking leave to add counterclaims for assault and battery and intentional infliction of emotional distress. As such, the first motion squarely implicates Rule 16, and Reddington has not established good cause for the late amendment. Nothing in Reddington's papers suggest that her counsel was lacking the information needed for the proposed amendment. In fact, the plaintiff's defamation claim is based on the fact that Reddington published numerous statements, viewed by hundreds or thousands of people, accusing him of rape. Indeed, Reddington does not attempt to argue that the facts giving rise to her new legal theories were unknown to her. Instead, she notes that the interval of time between the filing of her answer and her attempt to amend is no greater than in many cases in which amendments to the pleadings have been allowed. While that may be the case, Reddington has not established the type of good cause that is contemplated by those courts. *Williams v. Town of Hempst*ead, No. 16 CV 1992 ADS AYS, 2017 WL 4712219, at *2 (E.D.N.Y. Oct. 18, 2017) ("Good cause is not present 'when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.'").

Reddington's primary explanation as to why she failed to file this motion before the deadline is that her defense counsel was being prudent and paying attention to the evidence. Among other things, Reddington argues that her defense counsel only recently determined that she possesses provable facts regarding the alleged sexual assault, which satisfy the more

generous statute of limitations provided by C.P.L.R. 213-c.  However, law office failure or attorney error is not a basis of good cause.  *Williams*, 2017 WL at *3.  While discovery may have revealed additional evidence to bolster Reddington's proposed claims, the fact remains that Reddington possessed all of the information she needed in advance of the deadline to assert a claim for assault and battery.  Accordingly, the undersigned recommends that her motion seeking leave to add the counterclaim be denied.

The undersigned does, however, recommend that the second motion to amend, which seeks leave add an additional counterclaim and affirmative defense pursuant to New York's Anti-SLAPP ("Strategic Lawsuits Against Public Participation") statute, N.Y. Civ. Rights Law §§ 70-a and 76-a, be granted.  Unlike the defendant's proposed counterclaim for assault and battery, the proposed counterclaim/affirmative defense premised on the expanded Anti-SLAPP law could not have been asserted prior to November 10, 2020.  Although Reddington waited an additional three months to file her second motion to amend, the Court finds that Reddington acted diligently in this context and turns its attention to the futility of the proposed amendment as well as to the potential prejudice to Goldman should the amendment be permitted.

"On November 10, 2020, New York amended its anti-SLAPP law." *Palin v. New York Times Co*., No. 17-CV-4853 (JSR), 2020 WL 7711593, at *2 (S.D.N.Y. Dec. 29, 2020) (citing A.B. 5991-A).  As indicated by its name, the statute generally addresses actions involving public petition and participation.  *See* N.Y. Civ. Rights Law § 76-a (McKinney).  The prior version of the law defined "an action involving public petition and participation" narrowly to include only claims "brought by a public applicant or permittee, and . . . [the] efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." *Palin*, 2020 WL at *2

(citing *Intl. Shoppes v. At the Airport*, 131 A.D.3d 926, 928, 16 N.Y.S.3d 72 (2d Dep't 2015)). In other words, before the amendment, the Anti-SLAPP statute only applied to cases initiated by persons or business entities that were involved in controversies over a public application or permit. *See id.* (citing *Chandok v. Klessig*, 632 F.3d 803, 819 (2d Cir. 2011) ("Uniformly, the New York courts have found that the persons properly alleged to be public applicants within the meaning of the anti-SLAPP statute were persons whose proposed actions required government permission.")).

The recent amendment expanded the statute's terms and now protects defendants from meritless lawsuits based upon "public petition and participation," now defined in the statute as "any communication in a place open to the public or a public forum in connection with an issue of public interest." *Id.* Specifically, for purposes of the statute, "[a]n action involving public petition and participation" now includes a claim based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

*Id.* Moreover, the new law provides, in pertinent part:

> A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:
>
> (a) costs and attorney's fees may be recovered *upon a demonstration that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law* and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

*Id.* (emphasis added).

In this case, Reddington published statements on several social media platforms about her alleged sexual assault by Goldman and her negative interactions with law enforcement officials assigned to investigate her sexual assault complaint. Reddington also posted a statement in the "reviews" section of the public Facebook page for the New Jersey Institute of Technology: "A school that accepts recently expelled rapists, despite it being marked on their transcript," and posted to Facebook an exchange involving a third party and Bohler Engineering, along with her own commentary. There is no question that "Facebook is a public forum within the meaning of New York's anti-SLAPP law." *Coleman v. Grand*, No. 18 CV 5663 ENV RLM, 2021 WL 768167, at *13 (E.D.N.Y. Feb. 26, 2021).

Whether Reddington's statements were a matter of public interest is less clear. "Public interest" is defined as any subject other than a purely private matter. *Id*. Certainly Reddington's postings involve a private matter – the events of April 22 and 23, 2017. However, Reddington posts can also be read liberally to address sexual assault on college campuses, the #MeToo movement, and the manner in which law enforcement handles sexual assault allegations and treats complainants. The Court agrees that those issues could be construed as having a public interest especially given the public's recent engagement in widespread conversations about sexual misconduct and what constitutes inappropriate behavior on college campuses. *See e.g., Coleman*, 2021 WL, at *13 ("Coleman's post addresses the #MeToo movement which is an issue of public interest."). This interpretation is also supported by the fact that courts have been directed to construe "public interest" extremely broadly, as encompassing all but *purely* private matters. *Coleman*, 2021 WL at *8 ( citing S52A Sponsor Mem.)

(emphasis added).

Nevertheless, Goldman argues that proposed amendment should not be permitted because the anti-SLAPP statute only protects defendants from meritless lawsuits, and Reddington has not demonstrated how this lawsuit is meritless. He points out, in this regard, that Reddington has published numerous statements, viewed by hundreds or thousands of people, accusing him of rape and, Judge Mauskopf has already ruled that "[r]ape is a sufficiently "serious" crime to support a claim for defamation *per se*." ECF No. 44. This argument misses the mark. While Goldman maintains that Reddington has knowingly lied about the events of April 22 and 23, 2017, it is not yet clear whether he'll prevail on the merits of his defamation claim, or if he'll be able to show that Reddington acted without a substantial basis for doing so.

Finally, the Court agrees with Reddington that the proposed inclusion of a claim under the Anti-SLAPP statute is unlikely to require additional discovery as it is based on the same facts and subject matter that already exists in the lawsuit. Accordingly, at this juncture, the undersigned believes that the proposed amendment should be permitted.[2]

---

[2] It warrants mention that Courts in this district have already found that the anti-SLAPP amendment constitutes remedial, retroactive legislation. *Coleman*, 2021 WL at *8. In addition, the undersigned finds the ruling in *La Liberte v. Reid*, 966 F.3d 79, 88 (2d Cir. 2020) to be inapplicable to this motion In *La Liberte,* the Second Circuit found that California's anti-SLAPP statute was inapplicable in federal courts because it increases a plaintiff's burden to overcome pretrial dismissal, and thus, conflicts with Federal Rules of Civil Procedure 12 and 56. Among other things, the California statute provides a defendant 60 days from service of the complaint to file a "special motion to strike," which must be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. *La Liberte*, 966 F.3d at 85. The Second Circuit found the provision to be in conflict with the pleading burden under Rule 12(b)(6), which allows litigants to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* That issue is not before the Court. Moreover, the undersigned declines to address whether the recently amended New York anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure at this juncture in the litigation.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. Any requests for an extension of time for filing objections must be directed to Judge Kovner prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal of the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        April 21, 2021

                                              _____/s_____
                                              ARLENE R. LINDSAY
                                              United States Magistrate Judge