UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- x
                              :      Case No. 1:18-cv-03662-RPK-ARL

ALEX GOLDMAN,               :
                              :
                Plaintiff,    :
                              :
       -against-        :
                              :
CATHERINE REDDINGTON,  :
                              :
                Defendant.  :

---------------------------------------------------- x

**DEFENDANT CATHERINE REDDINGTON'S**
**AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT, DEMAND**
**FOR JURY TRIAL, AND COUNTERCLAIM**

Defendant Catherine Reddington ("Ms. Reddington"), through her attorneys Riley Safer Holmes & Cancila LLP, answers the Complaint as follows:

## NATURE OF THE ACTION

1.     Ms. Reddington admits that this is an action for damages.  Ms. Reddington denies the remaining allegations in Paragraph 1.

2.     Ms. Reddington admits that in June 2018 she made posts on Facebook and LinkedIn accusing Mr. Goldman of sexual assault. Answering further Ms. Reddington admits that the posts described in the previous sentence stated that Mr. Goldman is a rapist and included tags to New Jersey Institute of Technology ("NJIT"), #MeToo, and #BohlerEngineering. Ms. Reddington further admits that she made a post on Facebook that included a picture of Mr. Goldman. Ms. Reddington denies that she made a post on LinkedIn that included a picture of Mr. Goldman.  Ms. Reddington lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 2.

1

3.      Ms. Reddington denies the allegations in Paragraph 3.

4.      Ms. Reddington admits that this action purports to seek damages and injunctive relief.  Ms. Reddington denies the remaining allegations in Paragraph 4.

5.      Ms. Reddington admits the allegations in the first four sentences of Paragraph 5. Answering further, Ms. Reddington admits to waking up next to Mr. Goldman in his room on the morning of April 23, 2017.  Ms. Reddington denies the remaining allegations in Paragraph 5.

6.      Ms. Reddington admits that on April 24, 2017, approximately 26 hours after leaving Mr. Goldman's fraternity house, she went to Crouse Hospital to complain that she was sexually assaulted. Answering further, Ms. Reddington admits the allegations in the second sentence of Paragraph 6.  Ms. Reddington also admits that the DNA analysis of Ms. Reddington's vagina at the time of the SANE was negative for male DNA. Ms. Reddington denies the remaining allegations in Paragraph 6.

7.      Ms. Reddington admits that she initially stated to Detective Bates that she did not recall the events of the night of April 22, 2017.  Ms. Reddington denies the remaining allegations in Paragraph 7.

8.      Ms. Reddington admits to stating Mr. Goldman is a rapist. Ms. Reddington denies that the statement is false. Ms. Reddington further denies that she made "knowingly false statements." Ms. Reddington admits that a letter from ADA Maureen Barry from OCDA is attached as Exhibit A to the Complaint. To the extent the allegations of Paragraph 8 seeks to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms.  Reddington denies the allegations to the extent that they are inconsistent with the language of that document.  Answering further, Ms. Reddington denies that the contents of ADA Barry's letter accurately reflect the encounter between Ms. Reddington and Mr. Goldman or the events

2

that form the basis of this Complaint, and Ms. Reddington further denies that ADA Barry's letter accurately speaks to the truth or falsity of the statements Mr. Goldman alleges to be defamatory. Further, Ms. Reddington denies the allegations in Paragraph 8 that were excerpted from ADA Barry's letter.

9.      Ms. Reddington denies the allegations in Paragraph 9.

10.     Ms. Reddington admits the allegations in the first sentence of Paragraph 10. Ms. Reddington further admits that she told Syracuse University that Mr. Goldman sexually assaulted her.  Ms. Reddington denies the remaining allegations in Paragraph 10.

11.     Ms. Reddington admits that Mr. Goldman was expelled by Syracuse University. Ms. Reddington denies the remaining allegations in Paragraph 11.

12.     Ms. Reddington admits that that she sent a text message to one of Mr. Goldman's fraternity brothers, referring to Mr. Goldman as a "violent rapist."  Ms. Reddington denies the remaining allegations in Paragraph 12.

13.     Ms. Reddington admits that she made postings on social media that referred to Mr. Goldman as a rapist. Ms. Reddington denies the remaining allegations in Paragraph 13.

14.     Ms. Reddington denies the allegations in Paragraph 14.

15.     Ms. Reddington denies the allegations in Paragraph 15.

16.     Ms. Reddington denies the allegations in Paragraph 16.

17.     Ms. Reddington admits that Mr. Goldman's lawsuit seeks injunctive relief against Ms. Reddington. Answering further, Ms. Reddington denies that Mr. Goldman is entitled to any relief whatsoever and denies the remaining allegations in Paragraph 17.

## PARTIES

18.     Ms. Reddington is without knowledge or information sufficient to form a belief as to truth of the allegations in Paragraph 18.

19.     Ms. Reddington admits the allegations in Paragraph 19 but notes that during some of the relevant times in the Complaint she also resided in Onondaga County.

## JURISDICTION AND VENUE

20.     The allegations in Paragraph 20 state legal conclusions to which no response is required. To the extent a response is required, Ms. Reddington admits that Mr. Goldman purports to assert jurisdiction pursuant to 28 U.S.C. § 1332. Ms. Reddington admits the allegations concerning her residency in New York. Ms. Reddington is without knowledge or information sufficient to form a belief as to Mr. Goldman's residency. Ms. Reddington denies that the amount in controversy exceeds $75,000.

21.     Ms. Reddington admits this Court has personal jurisdiction over her. Ms. Reddington denies the remaining allegations in Paragraph 21.

22.     Paragraph 22 contains legal conclusions to which no response is required.

## FACTS

23.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.     Ms. Reddington admits the allegations in Paragraph 28.

29.     Ms. Reddington denies the allegations in the first sentence of Paragraph 29. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.

30.     Ms. Reddington admits that she left Mr. Goldman's room at approximately 10:30 a.m. on April 23, 2017.  Ms. Reddington denies the remaining allegations in Paragraph 30.

31.     Ms. Reddington admits the allegations in the first sentence of Paragraph 31. Ms. Reddington further admits the allegations in the second sentence of Paragraph 31 insofar as Detective Bates first interviewed Ms. Reddington on May 1, 2017 and the quoted portion in Paragraph 31 is taken from Detective Bates' report and paraphrases one part of what Ms. Reddington reported to Detective Bates. Ms. Reddington denies the allegations in the second sentence of Paragraph 31 insofar as they suggest that the quoted portion in Paragraph 31 was the totality of what Ms. Reddington told Detective Bates about the events of April 22-23, 2017.

32.     Ms. Reddington admits that she was interviewed by Detective Bates on May 4, 2017 but denies the remaining allegations in the first sentence of Paragraph 32. Ms. Reddington admits the allegations in the second sentence of Paragraph 32 except insofar as it refers to midnight; Ms. Reddington told Detective Bates with respect to the video surveillance that they reviewed that she did not recall what happened after 12:30 a.m. (and not midnight) of the night in question.

33.     Ms. Reddington admits that there is a toxicology report showing results of an analysis of a urine sample that she provided at Crouse Hospital on April 24, 2017, and to the extent the allegations of Paragraph 33 seek to paraphrase or characterize the contents of that written report, the document speaks for itself.  Ms. Reddington denies that the toxicology report indicated that caffeine and marijuana were the only items present in her bloodstream at the time of the analysis. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33.

34.     Ms. Reddington denies that there was no physical evidence of sexual assault.  Ms. Reddington is without knowledge or information sufficient to form a belief as to truth of the remaining allegations in Paragraph 34.

35.     Ms. Reddington admits that ADA Barry wrote a letter purporting to be based on the investigation by OCDA and SPD and that such report from ADA Barry is attached as Exhibit A to the Complaint.  To the extent the allegations of Paragraph 35 seek to paraphrase or characterize the contents of ADA Barry's letter, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document. Answering further, Ms. Reddington denies that the contents of ADA Barry's letter accurately reflect the encounter between Ms. Reddington and Mr. Goldman or the events of that forms the basis of this Complaint, and Ms. Reddington further denies that ADA Barry's letter accurately speaks to the truth or falsity of the statements Mr. Goldman alleges to be defamatory.

36.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 36. Ms. Reddington admits the allegations in the second sentence of Paragraph 36. Answering further, Ms. Reddington admits that she initially informed Investigator Jacobson that she had no memory of entering Mr.

Goldman's room that night or anything that followed until she awakened several hours later.  Ms. Reddington further admits that after seeing a therapist, she subsequently experienced memories of Mr. Goldman subjecting Ms. Reddington to sexual contact without her consent. Ms. Reddington denies the characterization of the return of her memories in Paragraph 36 as "sudden" or "miraculous."

37.    Ms. Reddington admits that Syracuse University determined that Mr. Goldman violated the Student Code of Conduct and expelled him in or around November 2017. Ms. Reddington denies the remaining allegations in Paragraph 37.

38.    Ms. Reddington denies the allegations in the first sentence of Paragraph 38. Ms. Reddington admits that the text message that she sent Thomas Aiello on November 17, 2017 is attached as Exhibit B to the Complaint. To the extent the allegations of Paragraph 38 seek to paraphrase or characterize the contents of that written text message, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document. Ms. Reddington denies that she "branded" Mr. Goldman as a "violent rapist," and admits the remaining allegations in Paragraph 38.

39.    Ms. Reddington admits the first sentence of Paragraph 39.  Ms. Reddington denies the remaining allegations in Paragraph 39.

40.    Ms. Reddington denies the allegations in Paragraph 40.

41.    Ms. Reddington denies the allegations in Paragraph 41.

42.    Ms. Reddington admits that her Facebook post dated June 4, 2018 concerning Mr. Goldman is attached as Exhibit C to the Complaint. To the extent the allegations of Paragraph 42 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that

document. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 42.

43.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44.     Ms. Reddington admits that her LinkedIn post dated June 4, 2018 concerning Mr. Goldman is attached as Exhibit D to the Complaint. To the extent the allegations of Paragraph 44 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document.

45.     Ms. Reddington denies the allegations in Paragraph 45.

46.     Ms. Reddington admits that her Facebook post dated June 5, 2018 concerning Mr. Goldman is attached as Exhibit E to the Complaint. To the extent the allegations of Paragraph 46 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document.

47.     Ms. Reddington admits that her Facebook post dated June 5, 2018 concerning Mr. Goldman is attached as Exhibit E to the Complaint. To the extent the allegations of Paragraph 47 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document. Answering further, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of Paragraph 47.

48.     Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.

49.     Ms. Reddington admits that her Facebook post dated June 6, 2018 concerning Mr. Goldman is attached as Exhibit F to the Complaint. To the extent the allegations of Paragraph 49 seek to paraphrase or characterize the contents of a written document, the document speaks for itself and Ms. Reddington denies the allegations to the extent that they are inconsistent with that document.

50.     Ms. Reddington denies the allegations in Paragraph 50.

## AS FOR A FIRST CAUSE OF ACTION
## DEFAMATION- LIBEL PER SE

51.     Ms. Reddington realleges all of the foregoing answers in Paragraphs 1-50 above.

52.     To the extent Paragraph 52 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 52.

53.     To the extent Paragraph 53 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 53.

54.     To the extent Paragraph 54 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 54.

55.     To the extent Paragraph 55 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without

knowledge or information sufficient to form a belief as the truth of the allegations in Paragraph 55.

56.     Ms. Reddington denies the allegations in Paragraph 56 and all of its subparts. To the extent the allegations of Paragraph 56 seek to paraphrase or characterize the contents of written documents, the documents speak for themselves and Ms. Reddington denies the allegations to the extent that they are inconsistent with those documents.

57.     Ms. Reddington admits the allegations in Paragraph 57 insofar as they relate to her postings to Facebook and LinkedIn. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 with respect to statements that she made via text message.

58.     To the extent Paragraph 58 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington denies having made any defamatory statements regarding Mr. Goldman, and Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 58.

59.     To the extent Paragraph 59 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington denies having made any defamatory or false statements regarding Mr. Goldman. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 59.

60.     To the extent Paragraph 60 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington denies having made any defamatory or false statements regarding Mr. Goldman. Ms. Reddington is

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60.

61.     To the extent Paragraph 61 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent the Court determines a response is required, Ms. Reddington denies having made any defamatory or false statements regarding Mr. Goldman. Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61.

62.     Ms. Reddington denies the allegations in Paragraph 62.

63.     Ms. Reddington denies having made any "false statements" regarding Mr. Goldman.  Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 63.

64.     Ms. Reddington denies the allegations in Paragraph 64.

## AS FOR A SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## AND BUSINESS RELATIONS

65.     Ms. Reddington realleges all of the foregoing answers in Paragraphs 1-64 above.

66.     To the extent Paragraph 66 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.

67.     To the extent Paragraph 67 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     To the extent Paragraph 68 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     To the extent Paragraph 69 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69.

70.     To the extent Paragraph 70 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent a response is required, Ms. Reddington is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.     Ms. Reddington admits that Mr. Goldman was previously a student at Syracuse University.  Ms. Reddington is without knowledge or information sufficient to form a belief as to the remaining allegations relating to Mr. Goldman's internship with Bohler Engineering and status as a student at NJIT. Ms. Reddington denies the remaining allegations in Paragraph 71.

72.     Ms. Reddington denies the allegations in Paragraph 72.

73.     Ms. Reddington admits that she made a complaint to Syracuse University that Mr. Goldman sexually assaulted her; Ms. Reddington denies that her complaint to Syracuse University was false. Ms. Reddington further admits that she referred to Mr. Goldman as a rapist in her social media posts. Ms. Reddington denies the remaining allegations in Paragraph 73.

74.     To the extent Paragraph 74 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent the Court determines a response is required, Ms. Reddington denies the allegations in Paragraph 74.

75.     To the extent Paragraph 75 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent the Court determines a response is required, Ms. Reddington denies the allegations in Paragraph 75.

76.     To the extent Paragraph 76 of the Complaint states conclusions or characterizations of the law, no response is required. To the extent the Court determines a response is required, Ms. Reddington denies the allegations in Paragraph 76.

77.     To the extent Paragraph 77 of the Complaint states conclusions or characterizations of the law, no response is required.  To the extent the Court determines a response is required, Ms. Reddington denies the allegations in Paragraph 77.

78.     Ms. Reddington denies the allegations in Paragraph 78.

79.     Ms. Reddington denies the allegations in Paragraph 79.

## JURY DEMAND

Ms. Reddington denies Plaintiff's Prayer for Relief and denies that Mr. Goldman is entitled to any relief whatsoever.

Ms. Reddington demands a jury trial.

## AFFIRMATIVE DEFENSES

80.     The Complaint fails to state a claim upon which relief could be granted.

81.     Plaintiff's claims are barred because the statements made by Ms. Reddington were non-defamatory statements of fact.

82.     Plaintiff's claims are barred because the statements made by Ms. Reddington were true or substantially true.

83.     Plaintiff's claims are barred because the statements made by Ms. Reddington were non-actionable opinions.

84.     Plaintiff's claims are barred because the statements made by Ms. Reddington were not made with actual malice.

85.     Plaintiff's claims are barred because the statements made by Ms. Reddington were not made with gross irresponsibility.

86.     Plaintiff's claims are barred because the statements made by Ms. Reddington were not negligently made.

87.     Plaintiff's claims are barred because the statements at issue were not made by Ms. Reddington.

88.     Plaintiff's claims are barred because the statements at issue were not "of and concerning" Plaintiff.

89.     Plaintiff's claims are barred because the statements made by Ms. Reddington were protected by absolute privilege insofar as she made statements in a quasi-judicial proceeding.

90.     Plaintiff's claims are barred because the statements made by Ms. Reddington were protected by qualified or conditional privileges.

91.     Plaintiff's claims are barred because the statements made by Ms. Reddington constituted "fair comment."

92.     Plaintiff's claims are barred by the doctrine of unclean hands.

93.     Plaintiff's claims are barred because the statements made by Ms. Reddington cannot realistically have caused impairment to Plaintiff's reputation.

94.     Plaintiff's claims are barred pursuant to the "single publication" rule.

95.     Plaintiff's claims are barred to the extent that Mr. Goldman consented to publication of the allegedly defamatory statements.

96.     This Court lacks subject matter to adjudicate Plaintiff's claims because they do not exceed the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

97.     Plaintiff's claims are barred because Ms. Reddington's statements and/or actions did not constitute "wrongful means."

98.     Plaintiff's claims are barred because Ms. Reddington's statements and/or actions were not made solely out of malice.

99.     Plaintiff's claims are barred because Ms. Reddington's statements and/or actions did not cause or contribute to any damages suffered by Plaintiff.

100.    To the extent Plaintiff suffered an injury, he failed to take reasonable, necessary, appropriate and feasible steps to mitigate his alleged damages, and to the extent of such failure to mitigate, Mr. Goldman should be barred from recovering some or all of the alleged damages he seeks.

101.    Plaintiff's claims are barred because Ms. Reddington's statements and/or actions were constitutionally protected exercise of public petition and participation.  N.Y. Civ. R. § 76-a(1)(a).

## COUNTERCLAIM FOR STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION

Defendant - Counterclaimant, Catherine Reddington ("Ms. Reddington"), hereby asserts the following counterclaim against Plaintiff - Counterclaim Defendant Alex Goldman ("Mr. Goldman"), and in support thereof, alleges as follows:

## INTRODUCTION

1.      This is an action for damages arising out of Mr. Goldman's re-victimization of Ms. Reddington by subjecting her to a baseless, retaliatory, and emotionally draining lawsuit because she dared to speak out about the violent sexual assault that Mr. Goldman committed against Ms. Reddington on April 23, 2017 and her experiences as a sexual assault victim.

2.      Mr. Goldman's sexual assault of Ms. Reddington occurred in his bedroom following a Syracuse University fraternity party during the early morning hours of April 23, 2017, while Ms. Reddington was physically helpless, mentally incapacitated, and incapable of consenting.   As a result of Mr. Goldman's sexual assault, Ms. Reddington sustained physical and emotional injuries that continue to impact her to this day.

3.      More than one year after Mr. Goldman brutally sexually assaulted her, Ms. Reddington wrote on social media in public forums about her experiences being victimized by Mr. Goldman and the disregard that she felt law enforcement authorities displayed in mishandling the investigation of her sexual assault complaint.   In response, Mr. Goldman filed and pursued the instant lawsuit, seeking damages of six million dollars, with the intent of intimidating, punishing, and silencing Ms. Reddington.

4.      In November 2020, with the passage of an amendment to the state's Civil Rights Law, New York State expanded its definition of an "action involving public petition and participation" to encompass Ms. Reddington's statements that Mr. Goldman challenges in his lawsuit.   Mr. Goldman's claims in the instant complaint thereby constitute a strategic lawsuit against public participation ("SLAPP") and are barred because they lack a substantial basis in fact and law and cannot be supported by a substantial argument for the extension, modification, or reversal of existing law.   Yet Mr. Goldman has continued to pursue his claims, even after the close

of discovery and months after the passage of the revised Anti-SLAPP statutes, for the purpose of harassing, intimidating, punishing, and maliciously inhibiting Ms. Reddington from speaking about her experiences and the important public issues they implicate.

## PARTIES, JURISDICTION, AND VENUE

5.      Ms. Reddington is a natural person who, at all relevant times, was over age 18.  Ms. Reddington resides in Nassau County, New York.

6.      Mr. Goldman is a natural person who, at all relevant times, was over age 18.  Upon information and belief, Mr. Goldman resides in Hudson County, New Jersey.

7.      This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, as Defendant - Counterclaimant and Plaintiff - Counterclaim Defendant are residents of different states - New Jersey and New York, respectively - and as the amount of damages at issue exceeds $75,000.00 (seventy-five thousand dollars) exclusive of interest and costs.

8.      Venue is proper in this district, pursuant to 28 U.S.C. § 139l(b), and this Court has personal jurisdiction over Plaintiff - Counterclaim Defendant, who asserted his own claims in this district and has voluntarily submitted to its jurisdiction.  *See, e.g.*, *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997) (holding plaintiff, "by virtue of bringing suit, waives venue and personal jurisdiction objections to a defendant's counterclaims.").

## FACTS

9.      On April 22, 2017, while both students at Syracuse University, Mr. Goldman and Ms. Reddington attended a party at Mr. Goldman's fraternity house at Syracuse University, where they both consumed alcohol prior to and during the party.

10.     At approximately 12:30 am on April 23, 2017 Ms. Reddington and Mr. Goldman left the party and went to Mr. Goldman's room together. While in Mr. Goldman's room, Mr. Goldman offered Ms. Reddington a beer, which she drank.

11.     Ms. Reddington became physically helpless after drinking the beer in Mr. Goldman's room, in that she was unable to care for herself, unable to physically control her body, and physically unable to communicate or respond to events happening to her.

12.     Ms, Reddington experienced psychological dissociation as a result of trauma inflicted by Mr. Goldman during the events that followed.

13.     Ms. Reddington recalls being on the floor in Mr. Goldman's room with her clothes caught in the bottom of a rolling chair and unable to think clearly, while Mr. Goldman hovered over her.  Mr. Goldman then dragged her across the floor of his bedroom, at first by one and then both of her arms and put her onto his bed.

14.     Because Ms. Reddington was physically helpless and incapacitated, she was not able to prevent, resist, or overcome Mr. Goldman's physical exertion over her. Ms. Reddington also experienced psychological dissociation as a result of Mr. Goldman's conduct, in that her mind began shutting down to avoid the reality of what Mr. Goldman was doing to her. This dissociation further rendered her mentally incapacitated and temporarily incapable of appraising or controlling her conduct.

15.     While on Mr. Goldman's bed, Mr. Goldman forcibly positioned Ms. Reddington's body on top of his own and kissed her and tightly grabbed her buttocks. Ms. Reddington did not kiss him back or otherwise participate in or consent to this contact, but instead felt her body repeatedly fall over to the side as Mr. Goldman was kissing and fondling her.

16.     While she was on the bed, Mr. Goldman put Ms. Reddington down onto her back and physically tried to force her legs to spread, despite Ms. Reddington's efforts to keep her legs closed together.

17.     Mr. Goldman forcibly turned Ms. Reddington face down on the bed and straddled her, with his legs on either side of her body. Mr. Goldman pulled down Ms. Reddington's shorts and inserted unknown objects into her anus.

18.     At another point while Ms. Reddington was on Plaintiff's bed, Mr. Goldman pinned Ms. Reddington's arms down onto the bed against her will, and she felt Mr. Goldman insert an unknown object, and then his penis, into her vagina and penetrate her.

19.     At another point while she was on Plaintiff's bed, Ms. Reddington awoke to feeling Mr. Goldman penetrating her vagina with his penis, and she felt a cloth object, which she believed to be a bandana that she was wearing earlier that night, over her eyes.  Plaintiff's thrusting caused her head to repeatedly strike the wall near the edge of the bed.

20.     Due to her physical helplessness and mental incapacitation, as well as the force of his own body strength that Mr. Goldman used, Ms. Reddington was not able to prevent, resist, or overcome Mr. Goldman's actions, including penetrating her vagina and her anus. She did not consent to any sexual contact by Mr. Goldman.

21.     When she awoke the next morning, Ms. Reddington felt bruised, battered, unsteady on her feet, and extremely confused about what had happened to her during the previous hours while in Mr. Goldman's room. She had pain and difficulty walking and sitting. The leotard she had been wearing had been torn and the crotch of her leotard was stained by what appeared to be a large amount of blood.

22.     As a result of the assault by Mr. Goldman, Ms. Reddington suffered physical injuries, including lacerations to her labia, pain, gassiness, and bleeding to her vagina, a splinter in her shoulder, painful contusions to her head, pain and bleeding to her anus, and pain and bruising on her body.

23.     Ms. Reddington also suffered (and continues to suffer) severe emotional pain as a result of Mr. Goldman's assault of her, including post-traumatic stress disorder (PTSD), severe anxiety, and depression. Ms. Reddington continues to undergo treatment for her psychological injuries, including her severe PTSD, as a result of Mr. Goldman's attack.

24.     Ms. Reddington reported her assault both to Syracuse Police Department and to Syracuse University's Office of Student Rights and Responsibilities.  Ms. Reddington also sought medical attention in connection with the assault.

25.     Syracuse University conducted an investigation pursuant to its Title IX procedures and found Mr. Goldman "Responsible" for violating Syracuse University's Policy on Sexual Assault, Sexual Harassment, Stalking or Relationship Violence.  The University sanctioned Mr. Goldman with expulsion in November 2017 - a decision that was upheld during the University's appeal process.

26.     As a result of the meritless SLAPP that Mr. Goldman has improperly brought, pursued, and continued against Ms. Reddington, Ms. Reddington has been unable to begin healing psychologically from the brutal sexual assault by Mr. Goldman, and she has suffered significant and immeasurable loss, including but not limited to incurring significant time and financial expense for medical and psychological treatment, incurring significant time and financial expense for legal work, requiring extra semesters to complete her Syracuse University degree, missing or

foregoing valuable professional opportunities, and suffering from ongoing trauma, fear, disillusionment, mistrust, stress, and lost enjoyment of her life.

## AS FOR THE FIRST CAUSE OF ACTION
### (Strategic Lawsuit Against Public Participation)

27.     Ms. Reddington repeats and realleges each and every allegation in the preceding paragraphs 1 through 26 as if fully set forth herein.

28.     In June 2018 Ms. Reddington published statements on social media platforms Facebook and LinkedIn, which are public forums, about her experiences being sexually assaulted by Mr. Goldman and her negative interactions with law enforcement officials assigned to investigate her sexual assault complaint. Ms. Reddington also posted a statement in the "reviews" section of the public Facebook page for the New Jersey Institute of Technology: "A school that accepts recently expelled rapists, despite it being marked on their transcript," and she posted to Facebook an exchange involving a third party and Bohler Engineering, along with her own commentary.  These statements are attached to Plaintiff's Complaint in this action as Exhibits C, D, E, and F.

29.     Ms. Reddington made her statements on social media because she wanted to express her experiences and opinions regarding an important matter of public interest – sexual assault and the investigation and aftermath of sexual assault cases – as an exercise of her constitutional right of free expression.  In particular, Ms. Reddington spoke to empower other sexual assault survivors, to shed light on the systemic injustice that she felt she experienced as a sexual assault victim, to prevent others from being victimized by Mr. Goldman, and to help herself heal.

30.     Within days of posting her public statements on social media, on June 25, 2018,

Mr. Goldman filed this lawsuit against Ms. Reddington, entitled *Alex Goldman v. Catherine Reddington*, Case No. 1:18-cv-03662-RPK-ARL, asserting claims for defamation (libel *per se*) and tortious interference with prospective economic advantage and business relations, premised upon Ms. Reddington's Facebook and LinkedIn posts, without any substantial basis in law and fact. Mr. Goldman's complaint also premised his defamation claims upon text messages that Ms. Reddington had allegedly sent to two different Syracuse University classmates about being sexually assaulted by Mr. Goldman – a text exchange she allegedly had with one classmate right after Mr. Goldman's expulsion in November 2017, and a text exchange she allegedly had with another classmate in May 2018. He also based a tortious interference claim upon Ms. Reddington's initial 2017 sexual assault complaint to Syracuse University.

31.     On November 10, 2020, the State of New York amended its Civil Rights Law, namely expanding the scope of Civil Rights Law section 70-a, entitled, "Actions involving public petition and participation; recovery of damages," and Civil Rights Law section 76-a, entitled, "Actions involving public petition and participation; when actual malice to be proven."

32.     For purposes of its anti-SLAPP laws, New York now defines an "action involving public petition and participation" as a claim based upon "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. R. § 76-a(1)(a).

33.     The social media and text statements made by Ms. Reddington that form the bases of Mr. Goldman's lawsuit fall within these definitions, making Mr. Goldman's claims a strategic lawsuit against public participation ("SLAPP").

34.     Civil Rights Law section 76-a, as now revised, expressly provides that a person named as a defendant in a SLAPP may bring an anti-SLAPP counterclaim to seek damages, costs, and attorney's fees.  Legal fees and costs shall be recovered from a plaintiff upon "a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civ. R. § 70-a(1)(a).  Compensatory and punitive damages may be awarded on an additional showing that the plaintiff "commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights."  N.Y. Civ. R. § 70-a(1)(b), (c).

35.     The truth or falsity of Ms. Reddington's challenged statements is material to Mr. Goldman's causes of action, in that his claims for defamation (libel *per se*) and tortious interference with prospective economic advantage and business relations both require Mr. Goldman to prove the falsity of Ms. Reddington's challenged statements regarding the sexual assault.

36.     There is no basis in law and fact for Mr. Goldman's defamation and tortious interference claims in that Mr. Goldman cannot establish by clear and convincing evidence the falsity of Ms. Reddington's challenged statements regarding the sexual assault, particularly given that:

- Ms. Reddington recalls details of Mr. Goldman sexually assaulting her anally and vaginally;

- Mr. Goldman has steadfastly insisted that he has no recollection whatsoever of the hours that Ms. Reddington was in his room in the early morning of April 23, 2017;

- Ms. Reddington left Mr. Goldman's room with torn and stained clothing and

injuries to her body, genitals, and anus;

- Ms. Reddington promptly reported the sexual assault to law enforcement, medical authorities, and Syracuse University authorities;

- Forensic testing has revealed the presence of Mr. Goldman's sperm inside the crotch of the shorts Ms. Reddington was wearing while in Mr. Goldman's room;

- Mr. Goldman was expelled by Syracuse University after being found "Responsible" for a violation of the school's Policy on Sexual Assault, Sexual Harassment, Stalking or Relationship Violence following a full investigation of Ms. Reddington's sexual assault complaint; and

- Another former Syracuse University student testified under oath that Mr. Goldman sexually assaulted her and that she shared that information with people known to Ms. Reddington, and Ms. Reddington was aware of that information at the time she made her Facebook and LinkedIn posts.

37.     There is no basis in law and fact for Mr. Goldman's defamation and tortious interference claims in that Mr. Goldman cannot establish by clear and convincing evidence that Ms. Reddington made her statements with knowledge of their falsity or with reckless disregard of whether such statements were false, particularly given the facts cited herein.

38.     Additionally, Mr. Goldman's lawsuit against Ms. Reddington cannot be supported by a substantial argument for the extension, modification, or reversal of existing law.

39.     Even after the passage of the revised anti-SLAPP law in November 2020 and the close of discovery revealing an abundance of evidence corroborating Ms. Reddington's challenged statements and a dearth of evidence suggesting that Ms. Reddington lied or providing sufficient

reason to doubt the truth of her statements, Mr. Goldman has continued to prosecute this meritless SLAPP.

40.     Mr. Goldman brought this suit in an effort to harass, intimidate, punish, and maliciously inhibit Ms. Reddington from exercising her right of free speech to discuss her experience of Mr. Goldman sexually assaulting her and the subsequent law enforcement investigation, and he now continues this baseless SLAPP solely in the same vein.

41.     Accordingly, pursuant to N.Y. Civ. R. § 70-a(1), Ms. Reddington seeks punitive damages, compensatory damages, and attorney's fees and costs attributable to this SLAPP, which lacks substantial basis in fact and law and cannot be supported by a substantial argument for the extension, modification, or reversal of existing law.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Reddington respectfully requests that the Court grant her judgment and relief as follows:

a. Judgment entered in favor of Defendant - Counterclaimant Catherine Reddington and against Plaintiff - Counterclaim Defendant Alex Goldman;

b. An award of actual, compensatory, and consequential damages against Plaintiff - Counterclaim Defendant Goldman for all damages Defendant - Counterclaimant Reddington sustained as a result of Plaintiff - Counterclaim Defendant Goldman's commencement and/or continuation of this suit, in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon;

c. An award of punitive damages against Plaintiff - Counterclaim Defendant Goldman for his improper commencement and continuation of this suit in an amount to be determined at trial;

d. An award of costs and attorney's fees from Plaintiff - Counterclaim Defendant for his commencement and continuation of this suit in an amount to be determined at trial; and

e. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Ms. Reddington hereby demands a trial by jury on all issues so triable.

Date: September 14, 2021                    Respectfully Submitted,

*/s/ Sandra L. Musumeci*
Sandra L. Musumeci
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue, 6th Floor
New York, New York 10016
Phone: 212-660-1000
Fax: 212-660-1001
Email: smusumeci@rshc-law.com

Matthew P. Kennison (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
121 W. Washington, Suite 402
Ann Arbor, Michigan 48104
Tel: 734-773-4911
Fax: 734-773-4901
Email: mkennison@rshc-law.com

*Attorneys for Catherine Reddington*

4852-2685-4893, v. 1