UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

ALEX GOLDMAN,                                  :
                                               :        Case No. 1:18-cv-03662-RPK-ARL
                   Plaintiff,                   :
                                               :
-v.-                                            :        **<u>ORAL ARGUMENT REQUESTED</u>**
                                               :
CATHERINE REDDINGTON,                           :
                                               :
                   Defendant.                   :
------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Seth J. Zuckerman

ZUCKERMAN LEGAL GROUP
14 Penn Plaza, Suite 814
New York, New York 10112
(212) 563-5655
seth@zuckermanlegalgroup.com

*Attorneys for Plaintiff
Alex Goldman*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................... ii

**PROCEDURAL HISTORY** ...................................................................................... 1

**ARGUMENT** ........................................................................................................... 6

   **I.**    **MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD** ....................... 6

   **II.**   **JUDGMENT ON THE PLEADINGS IS NECESSARY AS THE REVISED NEW YORK ANTI-SLAPP STATUTE IS NOT RETROACTIVE** ........................ 6

       **a.**    **Under New York Law, Statutes Are Presumptively Not Retroactive** ............. 6

       **b.**    **There Is No Indication That The Legislature Intended The Anti-SLAPP Amendments To Be Retroactive** ........................................ 8

       **c.**    **The New York Court Decisions in *Gottwald I* and *Gottwald II* Are Controlling State Substantive Law** ............................................ 12

       **d.**    **Subsequent to *Gottwald I* and *Gottwald II*, New York State Appellate Courts Have Held That The Revised Definition of "Public Petition and Participation" Does Not Apply Retroactively** ........................................ 14

       **e.**    **The "Commenced or Continued" Provision Does Not Save Defendant's Anti-SLAPP Claims** ................................................ 15

       **f.**    **New York State Substantive Law Is Controlling** .......................................... 16

   **III.**  **THE NEW YORK ANTI-SLAPP STATUTE IS INAPPLICABLE IN FEDERAL COURT** ...................................................................................... 18

       **a.**    **The Anti-SLAPP Laws Conflict With The Federal Rules And Do Not Apply** ...................................................................................... 18

   **IV.**  **EITHER THE NEGLIGENCE OR GROSS IRRESPONSIBILITY STANDARD SHOULD APPLY** .................................................................... 21

   **V.**   **DEFENDANT'S AFFIRMATIVE DEFENSE MUST ALSO BE DISMISSED** ........................................................................................ 22

**CONCLUSION** ......................................................................................................... 23

**Cases**

*Abbas v. Foreign Policy Group, LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) ................................................................... 20

*Anagnost v. Tomecek,*
    390 P.3d 707 (2017) ...................................................................................... 17

*Bank of N.Y. v. First Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010) ........................................................................... 6

*Becker v. Huss Co.,*
    43 N.Y.2d 527 (1978) ...................................................................................... 7

*Bremner v. Bush,*
    244 A.D.3d 1044, 1046-47 (2d Dep't 2025) ................................................ 16

*Burton v. Porcelain,*
    223 A.D.3d 775 (2d Dep't 2024) .................................................................. 16

*Carbone v. Cable News Network, Inc.,*
    910 F.3d 1345 (11th Cir. 2018) .................................................................... 20

*Carroll v. Trump,*
    No. 20-cv-07311 (LAK), Dkt. 73 (S.D.N.Y. Mar. 11, 2022) ......................... 19

*Chapadeau v. Utica Observer-Dispatch,*
    38 N.Y.2d 196, 199 (1975) ........................................................................... 21

*Coleman v. Grand,*
    158 F.4th 132 (2d Cir. 2025) ................................................................ 5, 6, 19

*Eustache v. Board of Ed. of City School Dist. City of N.Y.,*
    236 A.D.3d 590 (1st Dep't 2025) ................................................................. 16

*Freedom Mortg. Corp. v. Engel,*
    37 N.Y.3d 1, 169 N.E.3d 912 (2021) ........................................................... 12

*Gasperini v. Ctr. for Humanities, Inc.,*
    518 U.S. 415 (1996) ...................................................................................... 18

*GEOMC Co., Ltd. v. Calmare Therapeutics Inc.,*
    918 F.3d 92, 98-99 (2d Cir. 2019)) .............................................................. 22

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
    22 F.4th 83 (2d Cir. 2021) ................................................................ 16, 17

*Gottwald v. Sebert*,
    203 A.D.3d 488 (1st Dep't 2022) ................................................................ *passim*

*Gottwald v. Sebert*
    40 N.Y.3d 240 (2023) ................................................................ *passim*

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010) ................................................................ 6

*Huggins v. Moore*,
    94 N.Y.2d 296, 301-02 (1999) ................................................................ 21

*Intercon Solutions, Inc. v. Basel Action Network*,
    791 F.3d 729 (7th Cir. 2015) ................................................................ 20

*Kesner v. Buhl*,
    No. 20-cv-3454 (PAE), 2022 WL 718840 (S.D.N.Y. Mar. 10, 2022) ................................................................ 19

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ................................................................ 20

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ................................................................ 18, 19, 20

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ................................................................ 7

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
    91 N.Y.2d 577 (1998) ................................................................ 7, 8

*Matter of Gleason (Michael Vee, Ltd.)*,
    96 N.Y.2d 117 (2001) ................................................................ 8

*Matter of Regina Metro. Co., LLC v. New York State Div. of Hous. &*
    *Community Renewal*,
    35 N.Y.3d 332 (2020) ................................................................ 7

*Murphy v. Bd. Of Educ. of N. Bellmore Union Free Sch. Dist.*,
    104 A.D.2d 796 (2d Dep't 1984) ................................................................ 9

*Nat'l Acad. Of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    Civ. No. 20-CV-7269 (VEC), 2021 WL 3271829 (S.D.N.Y. Jul. 30, 2021) ................................................................ 18, 20

*Nuara v. State of N.Y. Worker's Comp. Bd.*,
 979 N.Y.S.2d 453 (Sup. Ct. Albany Cty. 2020) ............................................................. 8

*Palin v. New York Times Co.*,
 510 F. Supp.3d 21 (S.D.N.Y. 2020) ............................................................................ 21

*Palin v. New York Times Co.*,
 113 F.4th 245 (2d Cir. 2024) ...................................................................................... 21

*Patel v. Contemporary Classics of Beverly Hills*,
 259 F.3d 123 (2d Cir. 2001) ......................................................................................... 6

*Retained Realty, Inc. v. McCabe*,
 376 Fed. Appx. 52 (2d Cir. 2010) ............................................................................... 18

*Robbins v. 315 W. 103 Enterprises LLC*,
 App. Div. Case No. 150616/21, 2022 WL 1177440 (1st Dep't Apr. 21, 2022). ........ 11, 13

*Rogers v. Dupree*,
 349 Ga. App. 777 (2019) ........................................................................................... 17

*Saks v. Franklin Covey Co.*,
 316 F.3d 337 (2d Cir. 2003) ....................................................................................... 22

*Sellers v. M.C. Floor Crafters, Inc.*,
 842 F.2d 639 (2d Cir. 1988) ......................................................................................... 6

*Sherrod v. Breitbart*,
 843 F. Supp. 2d 83 (D.D.C. 2012), *aff'd*, 720 F.3d 932 (D.C. Cir. 2013) ...................... 17

*VIP Pet Grooming Studio, Inc. v. Sproule*,
 224 A.D.3d 78 (2d Dep't 2024) ........................................................................ 14, 15, 16

**Statutes**

28 U.S.C. § 1332 ............................................................................................................ 1

CPLR § 205(a) ............................................................................................................. 11

N.Y. Civil Rights Law § 70-a ............................................................................... *passim*

N.Y. Civil Rights Law § 76-a ............................................................................... *passim*

N.Y. Civil Rights Law § 76-a(1)(a) ................................................................... 15, 16, 22

RPAPL § 1301 ............................................................................................................. 11

## Other Authorities

2015 Senate Bill S498 (Jan. 7, 2015)...................................................................................... 10

2017 Senate Bill S94 (Jan. 4, 2017)........................................................................................ 10

2019 Senate Bill S15 (Jan. 9, 2019)........................................................................................ 10

2020 N.Y. Sess. Law News of N.Y. Ch. 250 (A. 5991-A) (McKinney) ................................... 7, 8

2021 Senate Bill S692 (Jan. 6, 2021)...................................................................................... 10

2022 Senate Bill S9293 (May 12, 2022).............................................................................. 10, 11

2023 Senate Bill S1789 (January 17, 2023) ......................................................................... 10, 11

2025 Senate Bill S4546 (February 6, 2025) ......................................................................... 10, 11

N.Y. State Assembly, Bill No. A05991 ...................................................................................... 9

Press Release, Governor Andrew M. Cuomo, Governor Cuomo Signs Legislation to Stop
 Frivolous Lawsuits Meant to Intimidate, Bully, or Suppress Free Speech
 (Nov. 10, 2022) ................................................................................................................ 9, 10

Press Release, N.Y. State Leg., Senate and Assembly Majorities Advance Anti-SLAPP
 Legislation to Protect Free Speech (July 22, 2020) ............................................................ 9

## Rules

Fed. R. Civ. P. 8 ...................................................................................................................... 20

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 6, 20

Fed. R. Civ. P. 12(c) ........................................................................................................... 1, 6, 22

Fed. R. Civ. P. 12 ............................................................................................................ 18, 19, 20

Fed. R. Civ. P. 56 ............................................................................................................ 18, 19, 20

Plaintiff Alex Goldman ("Plaintiff" or "Mr. Goldman"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of Plaintiff's Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendant Catherine Reddington's ("Defendant" or "Ms. Reddington") counterclaim and affirmative defense brought under New York's anti-SLAPP law must be dismissed, as the 2020 amendments to the anti-SLAPP law only apply prospectively and do not apply retroactively. Additionally, the revised New York anti-SLAPP law should not apply in this federal lawsuit as it conflicts with the Federal Rules of Civil Procedure.

## PROCEDURAL HISTORY

In early June 2018, after already targeting Mr. Goldman's academic career at Syracuse University by filing a false complaint that led to his expulsion, Defendant Catherine Reddington made a series of knowingly false statements on social media regarding Plaintiff Alex Goldman. In Ms. Reddington's social media posts, she falsely referred to Mr. Goldman as a "rapist" and proceeded to wage a campaign to have Mr. Goldman both expelled from the New Jersey Institute of Technology and fired from his summer internship at Bohler Engineering. Unfortunately for Mr. Goldman, Ms. Reddington's mission was successful and Mr. Goldman was fired from his internship. Ms. Reddington did not limit her malicious campaign to her publicly-shared social media accounts – she also texted Mr. Goldman's friends calling him "a violent rapist."

Following the publication of Ms. Reddington's knowingly false social media posts, which caused Mr. Goldman's firing, Mr. Goldman filed the Complaint in the instant action in which he asserted two causes of action: (1) defamation, and (2) tortious interference with prospective economic advantage and business relations. *Zuckerman Declaration, Ex. A*. The case was filed in federal court based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332. At

the time that Mr. Goldman filed the Complaint in June 2018, New York's then-existing anti-SLAPP law applied narrowly to lawsuits challenging speech commenting on or opposing applications for public permits.

In October 2018, Defendant filed a motion to dismiss the action (ECF No. 33). Judge Mauskopf denied Defendant's motion on September 27, 2019 (ECF No. 44). In the decision denying Defendant's motion, Judge Mauskopf analyzed the requisite level of fault required for defamation in this matter and considered whether the gross irresponsibility standard may apply (if the issue was "within the sphere of legitimate public concern") or whether negligence was the applicable standard. Although Judge Mauskopf did not make a final determination on this point, the court's decision makes clear that since Mr. Goldman is not a public figure, the actual malice standard under New York defamation law therefore does not apply to this case. *See* ECF No. 44, at 14.

Following the court's denial of Defendant's motion to dismiss, on October 11, 2019, Defendant filed an answer to the complaint. *Zuckerman Decl., Ex. B*. The parties then proceeded with discovery. Defendant waited until after her deposition, in August 2020, before seeking leave to amend her answer and file a counterclaim for assault and battery.

In November 2020, the New York legislature revised the state's anti-SLAPP laws. Before the amendment took effect on November 10, 2020, the anti-SLAPP laws had not been revised in over thirty years and the law was rarely invoked as the definition of public petition and participation was limited to applications for public permits or similar government entitlements. The 2020 amendments took what was once an extremely narrow law and expanded the law's protections to the point of being nearly boundless. The amended statute's definition of public petition and participation now broadly encompasses "any communication in a place open to the

public or a public forum in connection with an issue of public interest" as well as "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." *N.Y. Civil Rights Law § 76-a.* The revised anti-SLAPP law provides that in an action "involving public petition and participation," the plaintiff is now required to demonstrate that the cause of action has a substantial basis in law. *N.Y. Civil Rights Law §§ 70-a, 76-a.* A plaintiff that fails to meet that heightened standard can now also be liable to the defendant for attorneys' fees and damages. *N.Y. Civil Rights Law § 70-a.*

In addition to expanding the types of claims that are covered by anti-SLAPP, the amended statute raises the requisite level of fault to a showing of actual malice for any SLAPP lawsuit regardless of whether the plaintiff is a "public figure." Thus, the anti-SLAPP law is now broadly applicable to an expansive class of defamation plaintiffs and imposes upon those plaintiffs the burden-shifting, burden-heightening, liability, and damages provisions of N.Y. Civil Rights Law §§ 70-a & 76-a. Following the law's revision, defendants in a wide variety of cases and in diverse procedural postures rushed to amend their responses to include reference to the freshly amended statute.

In January 2021, Defendant filed a second motion seeking leave to amend her answer and file an anti-SLAPP counterclaim. In essence, nearly three years after this litigation was commenced, Defendant sought to modify the applicable legal standard from either negligence or gross irresponsibility to actual malice. It goes without saying, but when Plaintiff filed the instant lawsuit in 2018, he was unaware the legislature would revise the anti-SLAPP statute in 2020, and thus applying a yet-to-be changed statute to this case would be punitive to Plaintiff.

Subsequently, Magistrate Judge Lindsay issued a report and recommendation which proposed denying Defendant's first motion to amend to add a counterclaim for assault and battery but granting Defendant's second motion to amend to add an anti-SLAPP counterclaim (ECF No. 116). Mr. Goldman timely filed objections to Magistrate Judge Lindsay's recommendation (ECF No. 119), however this Court followed Magistrate Judge Lindsay's recommendations (ECF No. 127).

Defendant subsequently filed an amended answer and asserted an affirmative defense and counterclaim based on the revised New York anti-SLAPP laws (ECF No. 128). *Zuckerman Decl., Ex. C.* Mr. Goldman served an answer to the counterclaim (ECF No. 130). *Zuckerman Decl., Ex. D.*

Thereafter, Defendant filed a motion for summary judgment as to Mr. Goldman's two causes of action. Notably, Defendant's motion for summary judgment presumes that the revised New York anti-SLAPP law applies and seeks summary judgment under the anti-SLAPP law's requisite level of fault of actual malice.[1]

Following Defendant's filing of a motion for summary judgment, on March 10, 2022, the Supreme Court of the State of New York, Appellate Division, First Department issued a decision that fundamentally changed the landscape of anti-SLAPP generally and this action in particular. The First Department found that New York's anti-SLAPP law (Civil Rights Law §§ 70-a and 76-a), as amended in November 2020, only has prospective effect and is not retroactive. *Gottwald v. Sebert*, 203 A.D.3d 488 (1st Dep't 2022) (hereafter referred to as "*Gottwald I*"). The *Gottwald I* decision, which was the first decision of a New York appellate court to address the

---

[1] As discussed during the pre-motion conference on April 6, 2022, should the instant Motion for Judgment on the Pleadings be granted, then supplemental briefing regarding Defendant's pending Motion for Summary Judgment will be necessary to address the correct defamation standard to be applied.

retroactivity of the new anti-SLAPP law, relies on long-standing New York and Supreme Court law in finding that the amendments are presumptively not to be retroactively applied unless specifically indicated. As a result, the revised New York anti-SLAPP law is not retroactive and does not apply to claims, such as this action, which were pending prior to the November 2020 amendments.

Following the Appellate Division, First Department's decision, Mr. Goldman immediately notified the Court of this supplemental authority and sought leave of the Court to file the instant motion. Plaintiff also requested denial of Defendant's pending Motion for Summary Judgment, which applies the no-longer-applicable anti-SLAPP standard of actual malice.

Plaintiff originally submitted a motion for judgment on the pleadings April 22, 2022 (ECF No. 155). However, both parties consented to a stay of proceedings pending the Second Circuit's forthcoming decision in *Coleman v. Grand,* 158 F.4th 132 (2d Cir. 2025), pertaining to the retroactivity of the 2020 anti-SLAPP amendments. On June 1, 2022, the court ordered a stay of both Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Summary Judgment. *See* ECF No. 158. Since both parties and the court believed that the Second Circuit ruling in *Coleman v. Grand* could be relevant to the issues here, the parties consented to stay the pending motions until the Second Circuit issued its decision.

While *Coleman v. Grand* was pending before the Second Circuit, the New York Court of Appeals granted leave and decided the appeal in *Gottwald v. Sebert*, 40 N.Y.3d 240 (2023) (hereafter referred to as "*Gottwald II*"). In *Gottwald II*, the Court of Appeals found that the 2020 statutory amendments to the anti-SLAPP statute did not apply retroactively but applied to the action without retroactive effect. *Id.*

Despite waiting over three years for a decision in *Coleman*, the Second Circuit decided *Coleman* on November 3, 2025, on a very narrow fact-specific ground, and not on the argument pertaining to retroactivity of the anti-SLAPP law or its application in federal court. Following the Second Circuit's decision in *Coleman*, this court issued an order for parties to this case to refile their motions.

<u>**ARGUMENT**</u>

**I.      MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Accordingly, to "survive a Rule 12(c) motion, the [counterclaims] 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). As with motions to dismiss, the "district court must accept all allegations in the [counterclaims] as true and draw all inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Judgment on the pleadings is appropriate where all material facts are undisputed and "a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

**II.     JUDGMENT ON THE PLEADINGS IS NECESSARY AS THE REVISED NEW YORK ANTI-SLAPP STATUTE IS NOT RETROACTIVE**

**a.      Under New York Law, Statutes Are Presumptively Not Retroactive**

New York law on retroactivity mirrors the dictates of the United States Supreme Court, which has stated:

The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to confirm their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, 'the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.' (citation omitted)

*Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).

The New York Court of Appeals has similarly maintained that statutes are presumptively *not* retroactive and that retroactivity is generally strongly disfavored. *See Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998) (there is a "fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it."). The New York Court of Appeals elaborated on this point in *Matter of Regina Metro. Co., LLC v. New York State Div. of Hous. & Community Renewal,* 35 N.Y.3d 332 (2020), stating that "retroactive legislation is viewed with great suspicion" and the presumption against retroactivity is particularly strong where it would alter a litigant's "substantive" rights, such as by creating a new defense to an action or by creating monetary liability for past conduct. *Id.* at 365-68. Retroactive application in such circumstances implicates due process concerns because it has the "effect [of] upsetting reliance interests and triggering fundamental concerns about fairness." *Id.* at 365.

The revised anti-SLAPP statute states that "this act shall take effect immediately." 2020 N.Y. Sess. Law News of N.Y. Ch. 250 (A. 5991-A) (McKinney). While that phrase may "evince a sense of urgency," the Court of Appeals has consistently maintained that this language alone is not enough to require application to pending litigation. *See Becker v. Huss Co.*, 43 N.Y.2d 527 (1978); *Majewski*, supra. Because the recent amendments to the anti-SLAPP law were enacted

after this case commenced, they can only apply here if the amendments are given retroactive effect. *See Majewski*, 91 N.Y.2d at 581-82. Defendant has argued that the revised anti-SLAPP laws constitute "remedial" legislation and thus should be applied retroactively. However, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law.'" *Majewski*, 91 N.Y.2d at 584; *see also Nuara v. State of N.Y. Worker's Comp. Bd.*, 979 N.Y.S.2d 453, 458 (Sup. Ct. Albany Cty. 2020) (the "remedial" designation is not "talismanic," and regardless of how a statute is characterized, "the key in determining temporal reach of a statute lies in ascertaining the intent of the legislature"). In *Matter of Gleason (Michael Vee, Ltd.),* 96 N.Y.2d 117, 122 (2001), the Court of Appeals distilled the issue succinctly, finding that a law's amendment was remedial where it was made "to clarify what the law was *always meant to do and say*." (emphasis added). Here, the amendment represented a fundamental change in the substance and purpose of the law – far from providing a clarification of the law's original purpose, the amendment turned the anti-SLAPP law into a wholly novel instrument.

      **b.**      **There Is No Indication That The Legislature Intended The Anti-SLAPP Amendments To Be Retroactive**

Here, not only is there no evidence that the Legislature intended the amendments to the anti-SLAPP law to be retroactive, there is also ample evidence demonstrating that the amendments were intended to be prospective only.

*First*, nowhere in the amended statutes of N.Y. Civil Rights Law §§ 70-a & 76-a does the language state or even suggest that the amendments shall be retroactive. 2020 N.Y. Sess. Law News of N.Y. Ch. 250 (A. 5991-A) (McKinney). The only statement by the Legislature with respect to timing was that "this act shall take effect immediately." *Id*. As discussed in Section

I(a) *supra*, that statement alone says nothing about whether the statutes should apply to pending cases. In fact, the Supreme Court of the State of New York, Appellate Division, Second Department has held that such language specifically *negates* a retroactive intent because it inherently means that the amendment applies on a prospective basis only. *Murphy v. Bd. Of Educ. of N. Bellmore Union Free Sch. Dist.*, 104 A.D.2d 796, 797 (2d Dep't 1984) ("where a statute directs that it is to take effect immediately, it does not have any retroactive operation or effect").

*Second*, the legislative history of the amendment confirms that the purpose was to impose a new standard of proof on a more expansive class of defamation plaintiffs, and to provide potential fee-shifting and damages awards if a plaintiff fails to meet the heightened standard. These changes were made in an attempt to create disincentives and deter ***future*** plaintiffs from filing unsubstantiated defamation lawsuits intended solely to harass. The Assembly's June 2020 "Memorandum in Support of Legislation" for its version of the bill, A.B. 5991, states that the bill's principal amendments—extending the scope of the law and permitting provision of costs and attorneys' fees to a prevailing defendant—were intended to deter against the "threat—and financial reality-- of abusive litigation," and to "discourage SLAPP lawsuits…from being instituted."[2] Likewise, the Senate and Assembly, in a joint press release announcing passage of the amended anti-SLAPP law, stated that its purpose was to "discourage these types of [SLAPP] lawsuits."[3] Lastly, then-New York Governor Andrew Cuomo, in a press release announcing the

---

[2] *See* N.Y. State Assembly, Bill No. A05991,
https://nyassembly.gov/leg/?default_fld&leg_video&bn=A05991&term=2019&Summary=Y&Actions=Y&Committee%26nbspVotes=Y&Floor%26nbspVotes=Y&Memo=Y&Text=Y&LFIN=Y&Chamber%26nbspVideo%2FTranscript=Y

[3] Press Release, N.Y. State Leg., Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020), https://nyassembly.gov/Press/files/20200722a.php.

signing of the bill, stated that the purpose of the amended anti-SLAPP law was to "deter plaintiffs from bringing such lawsuits in the first place."[4]  The Legislature and the Governor's stated goal of discouraging and deterring these types of lawsuits from being filed *in the future* is inherently forward-looking and demonstrates prospective intent.  These stated goals, of deterring future plaintiffs with the prospect of a higher standard, and imposition of penalties if they fail to meet it, could not and would not have any effect on plaintiffs who filed a lawsuit *before* the amendments ever existed.

*Third*, Defendant has asserted that the Legislature intended the amendments to be retroactive since the Legislature removed language from the drafts of the amended anti-SLAPP laws which originally stated that the statutes would only "apply to actions commenced on or after such date."  This point actually illustrates just the opposite.  The New York state Legislature is undoubtedly aware of the deeply rooted presumption against retroactivity.  In fact, the senate co-sponsor of the bill, former State Senator Brad Hoylman, sponsored a slew of bills between 2015 and 2021 which contained explicit language on retroactive application and rendered the Legislature's intent unmistakable.  Those bills include the language "this act shall take effect immediately and shall apply to all pending and future proceedings."[5]  The Legislature could have included such language specifically authorizing retroactivity, as it regularly does, to be certain that there would be no doubt as to its intention.  The conscious decision by the

---

[4] Press Release, Governor Andrew M. Cuomo, Governor Cuomo Signs Legislation to Stop Frivolous Lawsuits Meant to Intimidate, Bully, or Suppress Free Speech (Nov. 10, 2020), https://www.pressreleasepoint.com/print/1771777

[5] *See, e.g.*, 2021 Senate Bill S692 (Jan. 6, 2021) Available at https://www.nysenate.gov/legislation/bills/2021/s692; 2019 Senate Bill S15 (Jan. 9, 2019) Available at https://www.nysenate.gov/legislation/bills/2019/s15; 2017 Senate Bill S94 (Jan. 4, 2017) Available at https://www.nysenate.gov/legislation/bills/2017/S94; 2015 Senate Bill S498 (Jan. 7, 2015) Available at https://www.nysenate.gov/legislation/bills/2015/s498/amendment/original.

Legislature to remain silent and not include such retroactive language is far more illustrative of legislative intent than is any removal of proposed language to the draft of the statute.[6]

*Fourth*, it could not have been lost on the Legislature that requiring retroactive application of the anti-SLAPP laws would open the proverbial flood gates, ushering in an unrelenting number of new cases brought by defendants of long-closed cases hoping to obtain damages and attorneys' fees for prior dismissals. *See*, *e.g.*, *Robbins v. 315 W. 103 Enterprises LLC*, 2022 WL 1177440 (1st Dep't Apr. 21, 2022) (following dismissal of a defamation action commenced in 2017, defendant in the original action brought a separate anti-SLAPP lawsuit in January 2021 seeking costs and damages against the original plaintiff following the amendments to the anti-SLAPP statute). If it was indeed the Legislature's intent to quell an unnecessary tidal wave of defamation-related litigation with the November 2020 amendments, designating anti-SLAPP laws as retroactive would be entirely incongruous as it would have precisely the opposite effect.

*Finally,* the legislature has considered proposed changes to the 2020 anti-SLAPP amendments to include retroactive application, but these proposals have remained dormant in committee since 2021. Bills such as S4546 and similar proposed legislation from previous sessions that seek to clarify that the amendments be "applied to cases pending on the effective date of the law" have gained little momentum for action, despite *Gottwald* being controlling substantive law since 2022.[7] If anything, the *Gottwald I* and *Gottwald II* decisions in 2022 and

---

[6] An April 21, 2022, decision by the First Department reinforces that point: "the new law does not contain a clear expression of the legislative purpose for their retroactive application." *Robbins v. 315 W. 103 Enterprises LLC*, App. Div. Case No. 150616/21, 2022 WL 1177440, at \*1 (1st Dep't Apr. 21, 2022).

[7] See, e.g. Senate Bill S9293 (May 12, 2022) Available at https://www.nysenate.gov/legislation/bills/2021/S9239; Senate Bill S1789 (January 17, 2023) Available at https://www.nysenate.gov/legislation/bills/2023/S1789; Senate Bill S4546 (February 6, 2025) Available at https://www.nysenate.gov/legislation/bills/2025/S4546

2023, respectively, should have catalyzed quick legislative intervention, had the New York State Legislature originally intended the amendments to apply retroactively. *See, e.g., Freedom Mtge. Corp. v. Engel*, 37 N.Y.3d 1, 169 N.E.3d 912 (2021) (after the Court of Appeals held that lenders could reset the statute of limitations by voluntarily discontinuing foreclosure actions, the Legislature swiftly responded by enacting the Foreclosure Abuse Prevention Act of 2022, which amended CPLR § 205(a) and RPAPL § 1301 to prohibit this practice). Rather, the legislature's years of ambivalence toward bills applying retroactivity to the 2020 anti-SLAPP amendments following *Gottwald I* and *II* suggests acquiescence to a ruling that faithfully serves the amendments' original prospective intent.

      c.      **The New York Court Decisions in *Gottwald I* and *Gottwald II* Are Controlling State Substantive Law**

The November 2020 amendments to the anti-SLAPP laws expanded what was previously a relatively narrow restriction on frivolous, speech-suppressing litigation into an all-encompassing speech-protective regime. Prior to the 2020 amendments, the 1992 New York anti-SLAPP laws defined public petition and participation as limited to "matters involving only public applicants and permittees." As discussed in Section II (a) and (b) *supra*, the 2020 amendments were silent with respect to the retroactive application of the laws. The first New York appellate court to address this discrete question was the Supreme Court of the State of New York, Appellate Division, First Department, in *Gottwald I. Gottwald v. Sebert*, 203 A.D.3d 488 (1st Dep't 2022).

On March 10, 2022, the Appellate Division, First Department found that New York's anti-SLAPP laws only have prospective effect. *Id.* In its unanimous (5-0) decision reversing the lower court's granting of defendant's motion for leave to assert an anti-SLAPP counterclaim, the Appellate Division conducted a retroactivity analysis and found that there was "insufficient

evidence supporting the conclusion that the legislature intended its 2020 amendments … to apply

retroactively to pending claims such as the defamation claims" at issue. *Id*. In reaching that

conclusion, the Court rejected the contention that the legislature intended the statute to apply

retroactively, and predicted the way in which the Court of Appeals would likely rule on the issue

by citing to earlier decisions of the Court of Appeals which emphasized the presumption against

retroactivity:

> In light of the above principles and the factual evidence that the amendments to New York's anti-SLAPP law were intended to better advance the purposes of the legislation by correcting the narrow scope of the prior anti-SLAPP law, we find that ***the presumption of prospective application of the amendments has not been defeated.*** The legislature acted to broaden the scope of the law almost 30 years after the law was originally enacted, purportedly to advance an underlying remedial purpose that was not adequately addressed in the original legislative language. ***The legislature did not specify that the new legislation was to be applied retroactively.*** The fact that the amended statute is remedial, and that the legislature provided that the amendments shall take effect immediately, does not support the conclusion that the legislature intended retroactive application of the amendments.

*Id.* The court's decision in *Gottwald I* succinctly and unequivocally states: "the 2020

amendments expanding the scope of Civil Rights Law § 76-a do not apply retroactively to cover

[…] pending defamation claims." *Id*. *Gottwald I* was later unanimously affirmed by another

panel in the Appellate Division, First Department. *Robbins*, 2022 WL 1177440.

In 2023, the New York Court of Appeals, granted leave to consider the Appellate

Division, First Department's decision above. *Gottwald II*, 40 N.Y.3d 240. The Court of Appeals

agreed, finding that "the legislature did not 'expressly prescribe the statute's proper reach'" and

therefore, pursuant to the "judicial default rules," the court looks to the text of the statute to

determine whether it was intended to have retroactive effect. *Id.* at 258. Upon analysis, the

Court of Appeals stated, "[t]he language chosen here makes clear that the intended application is

prospective." *Id.* The majority opinion continued "[h]ere, we do not find anything approaching

the required expression of clear legislative intent,  While the statute directs that it 'shall take effect immediately,' we have previously held that, for purposes of determining retroactive application, 'the meaning of [that] phrase is equivocal' and is not 'enough to require application to pending litigation.'"  *Id.* at 259.  With the above, the Court of Appeals determined that the amended anti-SLAPP laws did not apply retroactively. However, the Court of Appeals also held that the plaintiff in *Gottwald II* was a limited public figure, so the actual malice standard applied regardless, and the Court did not need to address whether the provision for that same evidentiary standard in the amended Civil Rights Law § 76-a applied retroactively to actions pending at the time of the 2020 enactments.  *Id.* at 257.

To be clear, the Court of Appeals in *Gottwald II* also held that the 2020 amendments to Civil Rights Law § 70-a apply to actions "commenced or continued" after the effective date—but only to the extent the action was already within the scope of the *former* anti-SLAPP statute when commenced.  *Gottwald II*, 40 N.Y.3d at 258-59.  The Court did not hold that the broadened *definition* of public petition and participation under the amended § 76-a applies retroactively to pending actions that were outside the scope of the former statute.  *Id.*  As the Appellate Division, Second Department subsequently confirmed, "[o]nly actions within the scope of the former anti-SLAPP statute, if continued after the effective date of the 2020 anti-SLAPP amendments, are subject to the remedial provisions [of] Civil Rights Law §§ 70-a and 76-a as amended."  *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 89-90 (2d Dep't 2024).  This distinction is dispositive here: because the parties in this action were not public applicants or permittees at the time of Defendant's defamatory statements or at the time this action was commenced in 2018, this action was never within the scope of the former anti-SLAPP statute.  The "commenced or continued" provision of § 70-a is accordingly inapplicable.

**d. Subsequent to *Gottwald I* and *Gottwald II*, New York State Appellate Courts Have Held That The Revised Definition of "Public Petition and Participation" Does Not Apply Retroactively**

Following *Gottwald II*, New York State appellate courts have consistently interpreted that without retroactivity, SLAPP lawsuits must be viewed under the former iterations of anti-SLAPP claims of Civil Rights Law §§ 70-a and 76-a, which, as noted, limited anti-SLAPP relief only to matters involving public petition and participation brought by public applicants and permittees. *See* former § 76-a(1)(a), (b); *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78 (2d Dep't 2024). "Only actions within the scope of the former anti-SLAPP statute, if continued after the effective date of the 2020 anti-SLAPP amendments, are subject to the remedial provisions Civil Rights Law §§ 70-a and 76-a as amended." *VIP Pet Grooming*, 224 A.D.3d at 89-90.

Therefore, the broadened definition of public petition and participation under Civil Rights Law § 76-a does not apply retroactively to this action. The complaint here is governed by the prior statutory definition of public petition and participation, which was limited, at the time of this action's commencement in 2018, to matters involving only public applicants and permittees. *See* former § 76-a(1)(a), (b).

**e. The "Commenced or Continued" Provision Does Not Save Defendant's Anti-SLAPP Claims**

Defendant may argue that under *Gottwald II*'s "commenced or continued" framework, the anti-SLAPP provisions apply to this action because it was "continued" after the November 10, 2020, effective date of the amendments. This argument fails for a straightforward reason: the "commenced or continued" provision applies only to actions that were already within the scope of the *former* anti-SLAPP statute when commenced. *See VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 89-90 (2d Dep't 2024) ("Only actions within the scope of the former

anti-SLAPP statute, if continued after the effective date of the 2020 anti-SLAPP amendments, are subject to the remedial provisions [of] Civil Rights Law §§ 70-a and 76-a as amended."); *see also Burton v. Porcelain*, 223 A.D.3d 775 (2d Dep't 2024) (the broadened definition of public petition and participation in the amended § 76-a does not apply retroactively and the complaint is governed by the prior statutory definition); *Bremner v. Bush*, 244 A.D.3d 1044, 1046-47 (2d Dep't 2025) (the parties were not public applicants or permittees at the time the action was commenced, and because the 2020 anti-SLAPP amendments do not retroactively apply, the defendant's contention that the anti-SLAPP amendments apply is without merit); *Eustache v. Board of Ed. of City School Dist. City of N.Y.*, 236 A.D.3d 590 (1st Dep't 2025) (the amended definition of an "action involving public petition and participation" does not apply retroactively to … actions commenced prior to the amendments' effective date).

The former anti-SLAPP statute's definition of public petition and participation was limited to matters involving "public applicants and permittees." *See former* § 76-a(1)(a), (b). Neither Mr. Goldman nor Ms. Reddington was a public applicant or permittee at the time of Ms. Reddington's defamatory statements, nor were they at the time this action was commenced in 2018. Because this action was never within the scope of the former anti-SLAPP statute, the "commenced or continued" provision of § 70-a does not bring this action within the ambit of the amended anti-SLAPP law. Accordingly, Defendant cannot invoke the amended anti-SLAPP law's heightened standard of fault, burden-shifting provisions, or fee-shifting and damages provisions, including for any period after November 10, 2020.

### f. New York State Substantive Law Is Controlling

A federal court sitting in diversity must look to the highest court of the state in which it sits for the final word on the meaning of state law. *Glob. Reinsurance Corp. of Am. v. Century*

*Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021). The Second Circuit has made it clear that when its precedent "conflicts with a more recent decision of the New York Court of Appeals as to a matter of New York law, [it] will follow the outcome it believes the New York Court of Appeals would reach, without giving binding authority to [its] precedent." *Id*. The same is true "even when there is no decision by the New York Court of Appeals": the court "still must apply what [it] find[s] to be New York law after giving proper regard to relevant rulings of other New York courts." *Id.* This is because, as the Second Circuit acknowledges, "even a development short of a decision of the highest court, if it indicates the court would decide a state-law question differently than our precedent, might call that precedent into question." *Id*.

Other jurisdictions throughout the country have likewise found that revised anti-SLAPP statutes are not retroactive. *See, e.g., Rogers v. Dupree*, 349 Ga. App. 777, 778 n.1 (2019) ("significantly revised" Georgia anti-SLAPP not retroactive); *Anagnost v. Tomecek*, 390 P.3d 707, 712-13 (2017) (Oklahoma anti-SLAPP law not retroactive because "[a]fter-enacted legislation that would effectively act as a complete bar to the plaintiff's claim and permit newly recoverable damages are an enlargement of substantive rights and generally operate only prospectively."); *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 (D.D.C. 2012), *aff'd*, 720 F.3d 932 (D.C. Cir. 2013) (D.C. anti-SLAPP law not retroactive "[b]ecause the statute is substantive—or at the very least, has substantive consequences—and there is no clear legislative intent of retroactivity").

The data this Court must consider is unequivocally clear that the revised anti-SLAPP law is not retroactive and therefore does not apply to this matter.

**III. THE NEW YORK ANTI-SLAPP STATUTE IS INAPPLICABLE IN FEDERAL COURT**

  **a.  The Anti-SLAPP Laws Conflict With The Federal Rules And Do Not Apply**

This Court, sitting as it does in diversity, applies "state substantive law and federal procedural law" pursuant to the dictates of the *Erie* doctrine. *Retained Realty, Inc. v. McCabe*, 376 Fed. Appx. 52, 55 (2d Cir. 2010) (summary order) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Because Federal Rules of Civil Procedure 12 and 56 answer the same question as New York's anti-SLAPP provision, they "govern ... in federal court, unless Rules 12 and 56 violate the Rules Enabling Act." *Nat'l Acad. Of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, Civ. No. 20-CV-7269 (VEC), 2021 WL 3271829, at *13 (S.D.N.Y. Jul. 30, 2021). It is undisputed that Rules 12 and 56 comply with the Rules Enabling Act, therefore § 70-a of New York's anti-SLAPP law is inapplicable in federal court. *Id.* (dismissing counterclaim premised on New York's Anti-SLAPP law).

The anti-SLAPP law as amended conflicts with the procedural standards dictated by the Federal Rules as it raises the burden of proof on the plaintiff. C.V.R. § 70-a provides, in pertinent part:

> Costs and attorney's fees may be recovered upon a demonstration that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

The requirement of a "substantial basis" is more stringent than the pleading standard articulated by the Federal Rules and therefore is inapplicable. *Nat'l Acad. of Television Arts & Scis., Inc.,* Civ. No. 20-CV-7269 (VEC), 2021 WL 3271829 at *12 ("Applying the Second Circuit's reasoning in [*La Liberte*], the Court concludes that the 'substantial basis' standard articulated in New York's anti-SLAPP law similarly conflicts with the standards under Federal Rules of Civil Procedure 12 and 56."). This shifting of the burden from the movant to the non-

18

movant clearly conflicts with Rule 56, which instead imposes a "no genuine issue of material fact" standard for a movant to prevail, and imposes no burden on the non-moving party.

Notably, the Second Circuit has not yet ruled on whether the revised New York anti-SLAPP statute applies in federal court. In *Coleman v. Grand*, 158 F.4th 132 (2d Cir. 2025), the Second Circuit decided the case on narrow, fact-specific grounds and did not reach the question of the anti-SLAPP law's retroactivity or its applicability in federal court. Therefore, the question remains governed by the Second Circuit's reasoning in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), which held that the California anti-SLAPP statute was inapplicable in federal court because it conflicted with Federal Rules of Civil Procedure 12 and 56. The Second Circuit opined in *La Liberte* that the California anti-SLAPP statute and the Federal Rules both answer the question—the circumstances under which a claim may be dismissed before trial—but conflicted because they apply different standards. *Id.* In *La Liberte*, the anti-SLAPP statute at issue subjected any claim to dismissal "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* at 85. The New York anti-SLAPP statute's "substantial basis" standard imposes the same type of heightened burden on the non-movant that the Second Circuit found to conflict with the Federal Rules in *La Liberte*. Accordingly, *La Liberte*'s reasoning applies with equal force to New York's anti-SLAPP statute, and the revised anti-SLAPP law is inapplicable in this federal diversity action.

Other courts in this Circuit also have found that the New York anti-SLAPP law does not apply in federal court. *See Carroll v. Trump*, No. 20-cv-07311 (LAK), Dkt. 73, at *10-16 (S.D.N.Y. Mar. 11, 2022) (the amended anti-SLAPP law conflicts with Federal Rules of Civil Procedure, including Rule 56, and is therefore inapplicable in federal court), *Kesner v. Buhl*, No.

20-cv-3454 (PAE), 2022 WL 718840, at \*11 (S.D.N.Y. Mar. 10, 2022) (dismissing Defendant's anti-SLAPP counterclaim and affirmative defense and holding that § 70-a's damages provision cannot be applied to a diversity action in federal court since the law's "substantial basis" standard conflicts with Federal Rule of Civil Procedure 12(b)(6)), and *Nat'l Acad. Of Television Arts & Scis., Inc.*, Civ. No. 20-CV-7269 (VEC) 2021 WL 3271829, at \*12.

Similarly, other circuits have considered the issue and also rejected the application of state anti-SLAPP statutes in federal courts. *See Klocke v. Watson*, 936 F.3d 240, 242-46 (5th Cir. 2019) (rejecting Texas' anti-SLAPP statute as it conflicted with Rules 12 and 56); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347-54 (11th Cir. 2018) (rejecting Georgia's anti-SLAPP statute as it conflicted with Rules 8, 12 and 56); *Intercon Solutions, Inc. v. Basel Action Network*, 791 F.3d 729, 729-32 (7th Cir. 2015) (rejecting the application of Washington's anti-SLAPP statute in federal court). Most notably, Justice Kavanaugh, before his elevation to the Supreme Court, decided an instructive D.C. Circuit matter considering the same issue presented here and in *La Liberte*. In his opinion, Justice Kavanaugh succinctly held that, "[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015).

Therefore, in addition to the revised anti-SLAPP being prospective only and not retroactive, Mr. Goldman is also entitled to judgment on the pleadings as the revised anti-SLAPP law is inapplicable in federal court.

**IV.    EITHER THE NEGLIGENCE OR GROSS IRRESPONSIBILITY STANDARD
        SHOULD APPLY**

Since the anti-SLAPP law does not apply here, neither should the actual malice standard.
Under New York defamation law, the applicable fault standard for a private-figure plaintiff
depends on whether the allegedly defamatory speech is "arguably within the sphere of legitimate
public concern." *Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975).  Where
the speech involves a matter of public concern, the private-figure plaintiff must establish that the
defendant "acted in a grossly irresponsible manner without due consideration for the standards of
information gathering and dissemination ordinarily followed by responsible parties."  *Id.*  Where
the speech does not involve a matter of public concern, the applicable standard is ordinary
negligence.  *See Huggins v. Moore*, 94 N.Y.2d 296, 301-02 (1999).

Mr. Goldman is not a public figure. In deciding Defendant's Rule 12(b)(6) motion in
2019, Judge Mauskopf analyzed the distinction between the negligence and gross irresponsibility
standards and considered whether the issue was "within the sphere of legitimate public concern"
such that the gross irresponsibility standard may apply, or whether negligence was the applicable
standard.  *See* ECF No. 44, at 14.  Although Judge Mauskopf did not make a final determination
on this point, the court's decision makes clear that since Mr. Goldman is not a public figure, the
actual malice standard under New York defamation law does not apply to this case.  *Id.*

*Palin v. New York Times Company*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020), *vacated and
remanded*, 113 F.4th 245 (2d Cir. 2024)—a case relied upon by Defendant—recognized the very
distinction between the level of fault required if the anti-SLAPP law does not apply and the level
required if it does apply.  In *Palin*, the court noted that the plaintiff, as a public figure, was
required to prove actual malice *before* the revisions to the New York anti-SLAPP law were
implemented, so any subsequent change in law did not alter the plaintiff's substantive burden.

That same analysis was utilized in *Gottwald II*.  That reasoning does not apply here since

Mr. Goldman is not a public figure.  Without the anti-SLAPP law's heightened standard, the

applicable fault standard is either negligence or gross irresponsibility, not actual malice.

## V.       DEFENDANT'S AFFIRMATIVE DEFENSE MUST ALSO BE DISMISSED

Along with her anti-SLAPP counterclaim, Defendant also asserts an anti-SLAPP

affirmative defense that states: "Plaintiff's claims are barred because Ms. Reddington's

statements and/or actions were constitutionally protected exercise of public petition and

participation.  N.Y. Civ. R. § 76-a(1)(a)." *See Zuckerman Decl., Ex. C*.  This affirmative defense

is legally insufficient and must be dismissed.  On a Rule 12(c) motion, the standard for evaluating

the sufficiency of an affirmative defense requires that the defense be both factually plausible and

legally valid.  *See GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98-99 (2d Cir.

2019) (holding that the plausibility standard of *Twombly* applies to determining the sufficiency

of affirmative defenses, and that an affirmative defense is properly stricken where it is a "legally

insufficient basis for precluding a plaintiff from prevailing on its claims").  An affirmative

defense is defined as "a defendant's assertion raising new facts and arguments that, if true, will

defeat the plaintiff's or prosecution's claim, *even if all allegations in the complaint are true*." *Saks

v. Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003) (emphasis added).

Defendant's affirmative defense raises no new facts or arguments that will defeat Mr.

Goldman's claims.  The revised anti-SLAPP law raises the standard of fault and expands the

availability of monetary relief.  The amended anti-SLAPP law does not create a defense to the

Complaint if all the allegations in the Complaint are true.  Moreover, as demonstrated throughout

this memorandum, the revised anti-SLAPP law does not apply to this action—it is not retroactive

and is inapplicable in federal court.  Therefore, Defendant's anti-SLAPP affirmative defense must also be dismissed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings should be granted and Defendant's counterclaim and affirmative defense should be dismissed.

Dated: New York, New York
March 12, 2026

Respectfully submitted,

Zuckerman Legal Group

By:     */s/ Seth J. Zuckerman*
Seth J. Zuckerman

14 Penn Plaza, Suite 814
New York, New York 10122
Tel: (212) 563-5665
seth@zuckermanlegalgroup.com

*Attorneys for Plaintiff Alex Goldman*

<u>**CERTIFICATE OF COMPLIANCE**</u>

As required by Local Rule 7.1(c), I certify that the Memorandum of Law in Support of Plaintiff Alex Goldman's Motion for Judgment on the Pleadings contains 6942 words, excluding the parts of the document that are exempted by Local Rule 7.1(c). I certify that the count was obtained from the word-count feature of the word-processing program (Microsoft Word) used to prepare the document.

Dated: New York, New York
March 12, 2026

Zuckerman Legal Group

By: */s/ Seth J. Zuckerman*
Seth J. Zuckerman

14 Penn Plaza, Suite 814
New York, New York 10122
Tel: (212) 563-5665
seth@zuckermanlegalgroup.com

*Attorneys for Plaintiff Alex Goldman*